## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

GATEGUARD, INC.,

        *Plaintiff*,                          Civil Action No.  1:19-cv-02472-RA

     v.

MVI SYSTEMS LLC;
SAMUEL TAUB,

        *Defendants*.

---

**PLAINTIFF GATEGUARD, INC'S MEMORANDUM OF LAW IN OPPOSITION TO: DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Ariel Reinitz
FisherBroyles, LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
(646)494-6909
Ariel.Reinitz@FisherBroyles.com
*Attorneys for Plaintiff*
*GateGuard*

## TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Preliminary statement ....................................................................................................1

Relevant Facts ...............................................................................................................2

Argument .......................................................................................................................3

    I.    Summary Judgment is Premature .......................................................................4

    II.   The FAC States a Claim for Misappropriation of Trade Secrets .......................5

        A.   The FAC Provides Sufficient Detail Regarding the Trade Secrets ................5

        B.   The Listing of Features on GateGuard's Website is Not "Disclosure" of its Trade Secrets ........................................................................................................10

        C.   GateGuard's Customer Lists Are Protectible Trade Secrets ........................10

    III.   The Court Has Jurisdiction over the Ownership of the Pending Patent Application .....11

    IV.   Taub Entered Into A Binding Agreement With GateGuard .........................................11

    V.   The FAC States a Claim for Tortious Interference with Business Relationships .............12

    VI.   The FAC States a Claim for Fraud ................................................................14

    VII.  Taub Entered Into Relationship(s) with GateGuard ......................................15

    VIII. Taub Converted GateGuard's Property .........................................................16

Conclusion .................................................................................................................16

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Cas. Co v. Nordic Leasing, Inc.*, 42 F. 3d 725, 728 (2nd Cir. 1994) ...................................4

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) .................................................3

*Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) ................................................................................2

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11,
     2016) ...................................................................................................................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .................................................................2

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC,* 69 F. Supp. 3d 342, 352 (S.D.N.Y. 2014)...3

*Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir.2003) .............................................................13

*Celotex Corp. v. Catreett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986) .....3

*Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2nd Cir. 1994)......................................4

*Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2nd Cir. 1993) .....................4

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ................................................................................3

*Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1224 (2nd Cir. 1994) .............3

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)................................4

*In re Optimal U.S. Litigation*, 813 F. Supp. 2d 351, 381 (S.D.N.Y. 2011)................................13

*Kirch v. Liberty Media Corp.,* 449 F.3d 388, 400 (2d Cir.2006) .................................................13

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 353 (S.D.N.Y. 2014)
     ...........................................................................................................................................3

*Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) ..................................................13

*Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) ......................9

*Next Commc'ns, Inc. v. Viber Media, Inc.*, 2016 WL 1275659, at *3 (S.D.N.Y. Mar. 30, 2016); .9

*North Atlantic Instruments v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999).......................................10

*Serova v. Teplen*, No. 05 Civ. 6748(HB), 2006 U.S. Dist. LEXIS 5781, 2006 WL 349624, at *8
     (S.D.N.Y. Feb. 16, 2006).....................................................................................................13

*Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244,258 (E.D.N.Y. 2015) ...........................9

*Specht v. Netscape Communications Corporation*, 306 F.3d 17 (2nd Cir. 2002) .......................11

*Syrup Assocs., Inc. v. Coastal Dev. Mass., LLC*, 18-CV-8133 (JPO), at *4 (S.D.N.Y. May. 15,
     2019).....................................................................................................................................4

*Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)..................4

**Statutes**

35 U.S.C. § 256.................................................................................................................10

Fed. R. Civ. Proc. 56(c)....................................................................................................3

Plaintiff GateGuard, Inc. ("GateGuard") respectfully submits this Memorandum of Law in Opposition to: Defendants MVI Systems LLC and Samuel Taub's (collectively, "MVI") Motion to Dismiss the FAC or alternatively, Motion for Summary Judgment.

## PRELIMINARY STATEMENT

Defendant MVI's current motion is premised on several significant errors. First, MVI mischaracterizes GateGuard's position with respect to the agreement entered into between Defendant Taub and GateGuard. In MVI's words, GateGuard's claims for trade secret misappropriation arise from Taub's "mere visit" to GateGuard's website. On this basis, MVI argues GateGuard's claims should be dismissed.

Were GateGuard's claims built solely upon Taub's "mere visit" to GateGuard's site, dismissal would be appropriate. But a plain reading of the FAC demonstrates that *GateGuard has <u>never</u> suggested that any agreement arose out of Taub's "mere visit" to GateGuard's website*.

What the FAC *does* says is: (1) Taub visited GateGuard's site, *<u>and then</u>* (2) Taub accessed an interactive form, (3) Taub was presented with GateGuard's Terms of Service, (4) Taub completed the form, and (5) Taub submitted his completed form, indicating his acceptance of the ToS. On this basis, Taub did enter into an agreement with GateGuard, as further described in the FAC.

MVI offers similar "straw man" arguments with respect to GateGuard's trade secrets. These arguments are equally unpersuasive and are easily rebutted based on a reading of the FAC. Accordingly, MVI's motion to dismiss must be denied.

MVI also inexplicably moves for summary judgment at this (early) stage of litigation. The parties have yet to exchange discovery and numerous issues of fact remain. This motion is therefore premature and must also be denied.

## **RELEVANT FACTS**

GateGuard is a technology startup company that began developing technologies for multi-tenant apartment buildings in 2014. In 2016, Plaintiff released its first set of products including an artificial intelligence ("AI") video intercom device.

After the launch of GateGuard's products, Defendant Samuel Taub ("Taub") accessed GateGuard's website and completed an interactive form that included acceptance of Plaintiff's Terms of Service ("ToS"). In doing so, Taub (a) acknowledged GateGuard's sole ownership of all intellectual property rights associated with GateGuard's technology and (b) agreed to protect the confidentiality GateGuard's proprietary information.

Over the course of several communications between Taub and GateGuard's founder, Ari Teman ("Teman"), Taub represented himself as a security integrator interested in serving as a reseller for GateGuard. Upon confirming that Taub had accepted the ToS and further confirming his acknowledgement that the confidentiality of GateGuard's proprietary information would be maintained, Teman disclosed various technical and business trade secrets to Taub. These trade secrets included proprietary technical designs, architectures, and algorithms, as well as confidential prospective customer lists, pricing information, and sales strategies.

Instead of serving as a reseller of Plaintiff's device, Taub utilized GateGuard's trade secrets as the technical and business foundation for Defendant MVI Systems LLC, a technology company that now offers products nearly identical to GateGuard's. Defendants also used

2

GateGuard's trade secrets to "poach" GateGuard's existing and prospective customers, causing GateGuard tremendous losses and business disruption.

In addition to using Plaintiff's trade secrets to build a competing company, Defendants have applied for and received a US patent based solely on technology developed by GateGuard. This patent filing includes a sworn statement by Taub, falsely identifying himself as the sole, original inventor of the technology. Taub signed this statement and filed the patent application despite knowing it described technology developed solely by GateGuard (which Teman had confidentially disclosed to Taub *seven months prior*).

## ARGUMENT

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). This rule "does not require 'detailed factual allegations.'" Id. (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Under Rule 8, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotation omitted). To survive dismissal, a complaint need only allege a plausible set of facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *BWP Media USA Inc. v. Hollywood Fan Sites, LLC,* 69 F. Supp. 3d 342, 352 (S.D.N.Y. 2014) (*quoting Iqbal*, 556 U.S. at

3

678). Notably, the *Twombly* plausibility standard "does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant[,] or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (quotations & other citations omitted).

A motion for summary judgment may be granted where the movant successfully demonstrates there are no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catreett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986); Fed. R. Civ. Proc. 56(c). When deciding a summary judgment motion, a trial court "…is carefully limited to discerning whether there are genuine issues of material fact to be tried, not deciding them. [The trial court's] duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1224 (2nd Cir. 1994). The district court must view all evidence in the manner most favorable to the non-movant as well as draw all reasonable inferences in favor of the non-movant. *Am. Cas. Co v. Nordic Leasing, Inc*., 42 F. 3d 725, 728 (2nd Cir. 1994) (citing *Consarc Corp. v. Marine Midland Bank, N.A*., 996 F.2d 568, 572 (2nd Cir. 1993)). "If…there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Centers Corp*., 43 F.3d 29, 37 (2nd Cir. 1994).

I.    **Summary Judgment is Premature**

The parties' respective Rule 56.1 statements and their accompanying briefs demonstrate that numerous issues of material fact exist in this case.

4

Additionally, "…summary judgment is rarely "granted against a [non-movant] who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). "The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Id.* (quoting *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)) *Syrup Assocs., Inc. v. Coastal Dev. Mass., LLC*, 18-CV-8133 (JPO), at *4 (S.D.N.Y. May. 15, 2019) (internal quotation marks omitted).

In this action, the parties have not exchanged discovery beyond Rule 26(a)(1) initial disclosures. Additionally, much of the evidence pertinent to this case is uniquely in the possession of MVI. GateGuard has not yet had the opportunity to conduct discovery and considerable issues of material fact exist. MVI's motion for summary judgment is therefore premature and should be denied.

## II.    The FAC States a Claim for Misappropriation of Trade Secrets

### A.  The FAC Provides Sufficient Detail Regarding the Trade Secrets

MVI alleges that the FAC provides insufficient detail regarding the misappropriated trade secrets. (MVI Mot. at 6.) However, this conclusion is only supported by a few selective quotes which MVI characterizes as "commonly known…terms." (MVI Mot. at 6-7.)

When considered in its entirety, the FAC is more than sufficient to meet GateGuard's pleading burden. The FAC is replete with detail regarding GateGuard's trade secrets. For example, the FAC details that such trade secrets include:

1) "…proprietary machine vision algorithms and applications for real- time processing of visual content captured in public areas... When implemented

5

together with additional biometric accessibility features, GateGuard's
intercom enabled tenants and authorized individuals to access a building by
simply approaching the door. Additionally, by combining artificial
intelligence ("AI") techniques with GateGuard's proprietary image processing
technologies, GateGuard's intercom and platform were able to automatically
identify and track instances of illegal subletting." (FAC ¶ 38.)

2) " …a proprietary "backend" software platform that automated numerous
   aspects of the tenant enrollment process, in addition to enabling property
   owners and managers to monitor event logs and configure other aspects of the
   system." (FAC ¶ 40.)

3) "…applications that enable and improve interactions with visitors, selectively
   provide building access to specific individuals (children, service providers,
   etc.), and coordinate package/delivery management." (FAC ¶ 41.)

4) "…proprietary security features….were developed and incorporated into
   GateGuard's intercom device to prevent unauthorized discovery of
   GateGuard's technical trade secrets... For example, GateGuard developed and
   implemented a unique tamper-proof locking mechanism to ensure its intercom
   panel is not opened or tampered with. GateGuard also developed and
   implemented a proprietary alarm feature that initiates alerts when the device is
   moved, uninstalled, disconnected, opened, or otherwise tampered with." (FAC
   ¶ 54.)

5) "…proprietary technologies include circuit board designs, communication
   interface/port configurations, power supply/relay designs, sensor integrations,

water/HVAC/electric monitoring capabilities, and other proprietary

component configurations, applications, and other technical features." (FAC ¶

94.)

6) "…Advanced configurations through which GateGuard could integrate

additional cameras and other sensors (e.g., those deployed in other areas) to

improve the performance and user experience of the system… [P]roprietary

biometric accessibility features (including image processing algorithms and

applications) that enable tenants and others to access a building by simply

approaching the door, presenting a biometric information (e.g., a fingerprint),

etc… [P]roprietary image processing technologies that utilize artificial

intelligence ("AI") to identify and track instances of illegal subletting." (FAC

¶ 96.)

7) "…proprietary… refinements to the optical sensor integrated within its

intercom panel… to improve performance when operating under conditions

common in large American cities." (FAC ¶ 97.)

8) "…detailed information regarding additional features, designs, configurations,

and plans GateGuard had developed and was in the process of implementing

towards a 'second generation' product. These features include additional

sensors (including a QR code scanner), connected package lockers/closets and

related controls, and other components and configurations necessary to

implement the referenced functionality. These features had not yet been

incorporated into GateGuard's products and their operation was not known to

the public." (FAC ¶ 101.)

7

9)  "…proprietary "backend" software…developed… to enable property owners and managers to enroll users, monitor event logs and other operations, and configure aspects of the system….[T]hese technologies included numerous unique features and interfaces that dramatically improved the tenant enrollment process and other functions, each of which had been developed by GateGuard with substantial effort and expense." (FAC ¶ 103.)

10) "… the identities of GateGuard's first customers, new customers GateGuard had recently acquired, prospective customers who were considering GateGuard's products, pricing/subscription information associated with such customers, the status of GateGuard's open customer orders, GateGuard's sales pitch and internal promotional materials, and other confidential information pertaining to GateGuard's business operations." (FAC ¶ 108.)

The FAC further details the efforts GateGuard invested in developing and protecting its trade secrets and the value the trade secrets held to GateGuard:

1)  "For over two years, GateGuard devoted thousands of hours of effort and hundreds of thousands of dollars towards the development of a suite of innovative technologies engineered to meet the needs of modern tenants, property owners, and property managers." (FAC ¶ 3.)

2)  "…For example, GateGuard personnel, customers, prospective customers, and any other relevant parties are required to execute detailed agreements in which they acknowledge and accept GateGuard's sole ownership of the trade secrets, agree to maintain the confidentiality of the trade secrets, and agree not to

copy, reverse engineer, or create derivative works based on the trade secrets. One such agreement is GateGuard's Terms of Service ("ToS")..." (FAC ¶ 53.)

3) "…GateGuard invested substantial efforts and resources to obtain and analyze large volumes of public and private real estate data…GateGuard identified several proprietary criteria indicative of a property owner's expected interest in adopting GateGuard's technologies. Using these criteria, GateGuard then identified a small number of property owners in the New York Metropolitan area who were most likely to consider adopting GateGuard." (FAC ¶ 59-60.)

4) This information was of immense value to GateGuard, as it enabled the company to focus its limited manpower and resources towards potential customers likely to be receptive to GateGuard's offerings. (FAC ¶ 62.)

In view of the above, by any standard the FAC describes the trade secrets at issue with sufficient specificity. In any event, at the motion to dismiss stage, "specificity as to the precise trade secrets misappropriated is not required." *Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008). See also *Next Commc'ns, Inc. v. Viber Media, Inc.*, 2016 WL 1275659, at *3 (S.D.N.Y. Mar. 30, 2016); *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016); *Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244,258 (E.D.N.Y. 2015).

Accordingly, the FAC sufficiently states claims for trade secret misappropriation.

**B. The Listing of Features on GateGuard's Website is Not "Disclosure" of its Trade Secrets**

MVI takes the position that a listing of technical features on GateGuard's website (such as "remote unlock" and "face recognition") is tantamount to the public disclosure of the specific technical details of each feature. (MVI Mot. at 9: "…the very act of posting secret information on a public forum inherently destroys any secrecy.") MVI cites no authority to support its position, likely because such an untenable position is indefensible. The mere mention of the term "face recognition" provides no meaningful information regarding the specific (or even general) manner in which such "face recognition is actually achieved (e.g., via complex image processing algorithms, software applications, imaging devices, etc.). Nowhere does GateGuard claim that the feature listing on its website constitutes any form of trade secret. MVI's argument is nothing more than a "straw man."

**C. GateGuard's Customer Lists Are Protectible Trade Secrets**

"A customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected at the owner's instance against disclosure to a competitor, provided the information it contains is not otherwise readily ascertainable."" *North Atlantic Instruments v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999).

GateGuard's customer lists meet this standard. The FAC indicates that "GateGuard invested substantial efforts and resources to obtain and analyze large volumes of public and private real estate data. Based on these efforts, GateGuard identified several proprietary criteria indicative of a property owner's expected interest in adopting GateGuard's technologies. Using these criteria, GateGuard then identified a small number of property owners in the New York

10

Metropolitan area who were most likely to consider adopting GateGuard… This information was of immense value to GateGuard, as it enabled the company to focus its limited manpower and resources towards potential customers likely to be receptive to GateGuard's offering" (FAC ¶¶ 59-62.) The FAC further notes that "the identities of GateGuard's current and prospective customers are maintained confidentially and not disclosed or promoted publicly." (FAC ¶ 67.)

Accordingly, GateGuard's customer lists were developed through substantial effort and were not otherwise readily ascertainable. Therefore, GateGuard's customer lists constitute trade secrets.

### III.    The Court Has Jurisdiction over the Ownership of the Pending Patent Application

The FAC requests correction of *inventorship* of U.S. Patent No. 10,158,831 (the " '831 Patent") pursuant to 35 U.S.C. § 256.

With respect to U.S. Patent Application No. 16/166,546 (the " '546 Application"), GateGuard does not (yet) seek correction of inventorship pursuant to 35 U.S.C. § 256 (applicable only to issued patents). Rather, GateGuard seeks declaratory judgment of its *ownership* of the '546 Application. (FAC ¶ 194). The court does have jurisdiction over such claim.

### IV.    Taub Entered Into A Binding Agreement With GateGuard

Citing to *Specht v. Netscape Communications Corporation*, 306 F.3d 17 (2nd Cir. 2002), MVI argues that Taub's "…mere "visiting" of GateGuard's web portal on November 16, 2016 did not contractually bind him to GateGuard in any manner." (MVI Mot. at 13).

11

GateGuard agrees. However, ***nothing in the FAC suggests that GateGuard's claims arise out of Taub's mere visit to GateGuard's website***. Here again, MVI's position rests on an incomplete reading on GateGuard's pleadings.

In discussing Taub's interaction with GateGuard's website, the FAC describes, in full, that (emphasis added):

74. On or about November 16, 2016, Taub accessed GateGuard's website.
75. While navigating the website, Taub further accessed an interactive web form ***through which he was presented with GateGuard's Terms of Service ("ToS")***.
76. Having been presented with GateGuard's ToS, ***Taub proceeded to complete the referenced form*** by providing his name, phone number, email address, and other information.
77. Taub then proceeded to ***submit the completed form, indicating his acceptance of the ToS***.

Accordingly, nothing in the FAC supports or suggests that Taub's agreement with GateGuard arises out of his "mere visit" to GateGuard's website. The FAC is explicit that Taub (1) visited GateGuard's site, **_and then_** (2) accessed an interactive form, (3) was presented with GateGuard's ToS, (4) Taub completed the form, and (5) Taub submitted his completed form, indicating his acceptance of the ToS.

MVI's position that "Taub received nothing" under the agreement is also unpersuasive. The FAC in its entirety describes exactly how, upon accepting the ToS, Taub initiated communication with Teman and gained access to GateGuard's trade secrets.

Accordingly, the FAC sufficiently states claims for breach of contract.

## V.    The FAC States a Claim for Tortious Interference with Business Relationships

MVI alleges that the FAC fails to state a claim for tortious interference because various "details" pertaining to specific business relationships are not identified. (MVI Mot. at 14.)

However, the FAC does, in fact identify such relationships. See, e.g., FAC ¶ 108 ("Teman disclosed [to Taub]… the identities of GateGuard's first customers, new customers GateGuard had recently acquired, prospective customers who were considering GateGuard's products, pricing/subscription information associated with such customers, the status of GateGuard's open customer orders,…"), ¶ 109 ("Teman detailed the efforts and resources GateGuard had invested to target and acquire the referenced current/prospective customers."),  ¶ 142 ("…MVI has used GateGuard's confidential customer and prospective customer information, and aggressively pursued such customers to choose MVI's offerings over GateGuard."), ¶ 143  ("MVI has used GateGuard's confidential customer pricing/subscription information to 'undercut' GateGuard's agreements by offering such customers preferential or free pricing."), ¶ 147  ("…as a result of Taub and MVI's actions, GateGuard has lost numerous key customers."), ¶ 148  ("Losing such customers and the revenues they represent has caused substantial business disruption to GateGuard.").

"Under New York law, the elements of tortious interference with business relations are: (1) [plaintiff] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013), quoting *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 400 (2d Cir.2006) (quoting *Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir.2003)). (internal citations omitted.)

As outlined above, the FAC details how (1) GateGuard had business relationships with third parties (its customers), (2) MVI knew of the relationships (by virtue of Teman's disclosure to Taub of the identities of GateGuard's customers, pricing information, status of orders, etc.),

13

(3) MVI acted dishonestly and unfairly, and (4) injury was caused to GateGuard's relationships (GateGuard lost customers to MVI).

Accordingly, the FAC sufficiently states claims for tortious interference with business relationships.


**VI.    The FAC States a Claim for Fraud**

To state claim for common law fraud under New York law, a plaintiff must demonstrate "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which plaintiff reasonably relied; and (5) which caused injury to plaintiff." *In re Optimal U.S. Litigation*, 813 F. Supp. 2d 351, 381 (S.D.N.Y. 2011). "The elements of fraud under New York law are essentially the same as those for a claim of securities fraud under Section 10(b) and Rule 10b-5." *Serova v. Teplen*, No. 05 Civ. 6748(HB), 2006 U.S. Dist. LEXIS 5781, 2006 WL 349624, at *8 (S.D.N.Y. Feb. 16, 2006).

MVI alleges that the FAC fails to state a claim for fraud because prongs (4) and (5) (above) are not met. (MVI Mot. at 15-16.) Accordingly, MVI admits that prongs (1)-(3) above are met.

With respect to prong (4) (plaintiff's reliance), the FAC details GateGuard's reliance on Taub's misrepresentations. See, e.g., FAC ¶ 11 ("In reliance on Taub's acceptance of the ToS and his interest in serving as a GateGuard reseller, GateGuard's founder, Ari Teman ("Teman"), engaged Taub in a series of communications, including phone and video calls, emails, and other correspondence. During these communications, Teman disclosed to Taub numerous technical and business trade secrets developed by GateGuard."), ¶ 91 ("In reliance on Taub's acceptance

of the ToS…, and his representation of himself as a security integrator interested only in reselling GateGuard's products, Teman disclosed certain technical and business trade secrets to Taub."). Accordingly, GateGuard reasonably relied on Taub's misrepresentations.

With respect to prong (5) (resulting injury to plaintiff), the misappropriation of GateGuard's trade secrets has caused considerable injury as detailed throughout the FAC. Additionally, GateGuard are legally cognizable trade secrets as outlined above. Accordingly, Taub's fraud, which enabled him to gain access to GateGuard's trade secrets, caused injury to GateGuard.

Accordingly, the FAC sufficiently states claims for fraud.

## VII.    Taub Entered Into Relationship(s) with GateGuard

MVI attempts to sidestep various claims by asserting that Taub "never had any formal or implied duty" to GateGuard. (MVI Mot. at 16).

Here, too, MVI conveniently overlooks the bulk of the FAC. As outlined in detail above, the FAC is explicit that Taub "…was presented with GateGuard's Terms of Service ("ToS")" and took further action "indicating his acceptance of the ToS." (FAC ¶¶ 75-77.) The FAC also details how "Taub identified himself to Teman as a security integrator who was interested in acting as a reseller of GateGuard's products. (FAC ¶ 86.)

Accordingly, Taub did have formal relationship(s) with GateGuard and further had formal or implied duties to GateGuard.

## VIII.   Taub Converted GateGuard's Property

MVI alleges that GateGuard's claim for conversion is insufficient solely on the basis of MVI's assertion that GateGuard has no proprietary trade secrets. (MVI Mot. at 16).

As detailed above, MVI's assertion rests on several erroneous premises and the FAC sufficiently states claims for trade secret misappropriation. Accordingly, MVI's position with respect to the conversion claim is equally unpersuasive.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Dismiss/Motion for Summary Judgment in its entirety.  In the alternative, should the Court decide to grant part or all of the Motion, GateGuard requests leave to amend its pleadings.


New York, NY
August 1, 2019

                                        RESPECTFULLY SUBMITTED,

                                        */s/ Ariel Reinitz*
                                        Ariel Reinitz
                                        FISHERBROYLES, LLP
                                        445 Park Avenue, Ninth Floor
                                        New York, NY 10022
                                        (646)494-6909
                                        Ariel.Reinitz@FisherBroyles.com
                                        *Attorneys for Plaintiff*
                                        *GateGuard*