UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GATEGUARD, INC.,

    *Plaintiff*,

v.

MVI SYSTEMS LLC; SAMUEL TAUB,

    *Defendants.*

Case No. 1:19-cv-02472 (RA)

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
THE COMPLAINT, ALTERNATIVELY FOR SUMMARY JUDGMENT**

OSTROLENK FABER LLP
Max Moskowitz
Ariel Peikes
845 Third Avenue, 8th Floor
New York, NY 10022
Ph: (212) 596-0500
mmoskowitz@ostrolenk.com
apeikes@ostrolenk.com

{02435832.1}

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   INTRODUCTION ....................................................................................................... 1

II.  STATEMENT OF FACTS……………………………………………………..…...5

III. DISCUSSION……………………………………………………………………..…6

    A.   MVI Did Not Substantively Respond to the Motion to Dismiss………………….6

    B.   Requirements for Responding to a Motion for Summary Judgment……………..7

    C.   The Court Lacks Jurisdiction over the Ownership of MVI's
        Pending Patent Application (Count IV)……………………………………………..9

    D.   Samuel Taub Never Entered into any Binding Agreement with
        Ari Teman and/or GateGuard……………………………………………………..10

IV.  CONCLUSION ..........................................................................................................10

# **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                                               <u>Page</u>

*Alman v. Reed,*
    703 F.3d 887 (6th Cir. 2013)……………………………………………………….…………7

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986)………………………………………………………………………...9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)………………………………………………………………………...6

*Beard v. Banks,*
    548 U.S. 521 (2006)………………………………………………………………………...9

*Berckeley Inv. Group, Ltd. v. Colkitt,*
    455 F.3d 195 (3rd Cir. 2006)………………………………………………………………...7

*Clapper v. Amnesty International USA*,
    568 U.S. 398, 133 S. Ct. 1138 (2013)……………………………………………………….7

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004)………………………………………………………….9-10

*Fabrikant v. French*,
    691 F.3d 193 (2nd Cir. 2012)………………………………………………………………..7

*First Nat'l Bank v. Cities Serv. Co.*,
    391 U.S. 253, 88 S. Ct. 1575 (1968)………………………………………………………..7

*Galesi v Galesi*,
    37 AD3d 249 (1st Dept 2007)……………………………………………………………10

*Kenney v. Floyd*,
    700 F.3d 604 (1st Cir. 2012)…………………………………………………………….…7

*Linn Farms & Timber Ltd. P'ship v. Union Pac. R.R.*,
    661 F.3d 354 (8th Cir. 2011)……………………………………………………………….7

*Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*,
    93 NY2d 584 (1999)……………………………………………………………………10

*Specht v. Netscape Communications Corporation*,
    306 F.3d 17 (2nd Cir. 2002)………………………………………………………………..4

T*ucker v. Union of Needletrades, Indus., & Textile Emples.*,

407 F.3d 784 (6th Cir. 2005)……………………………………………………….7

*Rules*

F.R.C.P. Rule 56..........................................................................................................9

Defendants MVI Systems LLC and Samuel Taub (collectively "MVI") reply to Plaintiff, GateGuard, Inc.'s ("GateGuard") opposition to the pending motion to dismiss, alternatively, for summary judgment as follows.

## I.    INTRODUCTION

GateGuard's opposition to the instant motion to dismiss and for summary judgment does not attach any hard evidence, not even a single page, in support of the First Amended Complaint ("FAC") allegations that underpin its claims for relief, or in rebuttal to the pending motion evidence, declaration and arguments. In MVI's motion, Mr. Taub declared that he never entered into any agreement with GateGuard and has not seen any Terms of Service ("ToS") on GateGuard's web site, when he visited there on November 16, 2016. To date, GateGuard has not attached a copy of the alleged 2016 ToS, nor of any "writing" by Mr. Taub, let alone a "signature" evidencing Taub's (alleged) execution of a "written agreement" with GateGuard. As shown below, GateGuard's written responses to the pending motion, including Mr. Teman's declaration, actually support and militate that MVI's instant motion should be promptly granted.

MVI's Statement of Undisputed Facts ("SUF"), par. 21, states: *"At no time during Ari Teman's conversations with Samuel Taub on November 17, 2016 did Mr. Teman ask or suggest to Mr. Taub that Mr. Taub execute a confidentiality agreement relative to confidential and/or trade secrets of GateGuard."* GateGuard responded: *"Admitted, as Taub had already executed a confidentiality agreement with GateGuard prior to November 17, 2016. (Teman Decl. ¶ 14)."* It seems that GateGuard cannot produce a copy of the alleged agreement or any evidence that Taub "executed" that written agreement.

Further, GateGuard <u>admitted</u> the statement in MVI's SUF, par. 24: "*GateGuard does not now have and never had any physical or electronic record evidencing that it communicated any*

*technical information to Mr. Taub on or after November 18, 2016.*" Hence, the FAC allegations that Mr. Teman sent a series of emails and had an audiovisual communication with Taub after November 17, 2016, through which he communicated to Taub trade secrets, have now been admitted by GateGuard to be falsehoods. See FAC ¶¶ 11, 85, and 93-98. Indeed, Taub and Teman communicated <u>only</u> once, on November 17, 2016, via one telephone call that was followed by an email from Teman to Taub, including the document that is Exhibit U to the Taub Declaration. In response to SUF, par. 25, GateGuard states: "*GateGuard admits the email from Teman sent to Taub on November 17, 2016 contained no trade secrets of GateGuard. Gateguard denies the email contained only publicly known information.*" If the information is not "trade secrets," what is it? Regardless, in response to SUF, par. 31, GateGuard <u>admitted</u> that "face recognition"; "keyless entry" and many other features listed in Exhibits S and T were product features advertised by GateGuard to the public prior to November 17, 2016. Hence, nothing in Teman's November 17, 2016 email disclosed any trade secrets or even merely "confidential" information. Also, GateGuard now admits (at page 10 of its Memorandum): "Nowhere does GateGuard claim that the feature listing on its website constitutes any form of trade secret."

If so, GateGuard is left to "arguing" that Teman disclosed his valuable "trade secrets" <u>just orally</u> over the telephone, on November 17, 2016. That is an impossible proposition. Mr. Taub is not a software developer or a hardware designer. The notion that Teman disclosed GateGuard's highly guarded trade secrets to Taub, a complete stranger to Teman, in words only, including complex technology such as "…proprietary machine vision algorithms"; "…proprietary 'backend' software; "…proprietary …circuit board designs, communications interface/port configurations, power supply/relay designs…" and dozens of other technical trade secrets (as detailed at pages 5-8 of GateGuard's Memorandum) is sheer comedy (Teman's

specialty), actually something that would be considered impossible by persons with even a modest understanding of these technical terms.

Teman's Declaration, par. 14, states that Taub had executed a confidentially agreement with GateGuard prior to November 17, 2016, which leaves as the only possible date November 16, 2016. According to GateGuard's Memorandum (at page 1), on November 16, 2016 Taub accessed an "interactive form" on GateGuard's web site, was presented with GateGuard's ToS, and then Taub completed the form to indicate his acceptance of the ToS. This is the alleged "executed written agreement" on which the present action is predicated.

Taub denies being presented with any GateGuard ToS, and thus far, GateGuard has not produced any document that shows that its website included any ToS on November 16, 2016. More importantly, no legally binding agreement was entered into on November 16, 2016 given that Taub did nothing more than click on the "CONTACT" icon, enter his name and telephone number and left a message "please call me." There was no "meeting of the minds" and furthermore Taub received no "consideration" whatsoever from GateGuard to involuntarily bind himself to the alleged ToS, which ToS GateGuard has not attached to the FAC or produced in rebuttal to the present motion for summary judgment. GateGuard does not need "discovery" from MVI to find its own alleged ToS, which are at the heart of its present action. Taub was not even assured that Teman or anyone at GateGuard would call him back in response to leaving his contact information.

The FAC alleges, in paragraph 83, that by "visiting" GateGuard's web portal on November 16, 2016, Taub agreed he "…will not offer a competing or similar product to GateGuard's such as: intercoms, face recognition access control…," effectively forever. Logically, it is inconceivable that Taub agreed to forfeit his then two year old startup business in

return for nothing, not even a promise of a return telephone call. In this Circuit, *Specht v. Netscape Communications Corporation*, 306 F.3d 17 (2nd Cir. 2002) is clear cut authority that the act of visiting a website, including downloading free software, is not enough to bind that visitor to the full terms of the ToS, which in Specht included an agreement to "arbitrate" any dispute involving the software. In *Specht*, the defendant received "something" as consideration for an alleged "agreement." Here, Taub received nothing on November 16, 2016 to bind him into an "agreement" with GateGuard; no trade secrets and not even a promise of a return telephone call.

GateGuard's Teman seems to have a warped understanding of the legal scope of the ToS that he posts on GateGuard's website. Recently, Teman was arrested and charged with bank fraud, stemming from his apparently mistaken impression that the ToS with GateGuard customers allowed him to create "remote checks" drawn on his customers' bank accounts. See **Exhibit C** to the Moskowitz Second Declaration attached hereto.

Furthermore, Teman has a penchant for charging others with stealing his trade secrets. And when a New York State Supreme Court judge dismissed Teman's claims for theft of trade secrets, Teman sued that judge in a federal court in Florida. See **Exhibit B** attached. Similarly, Teman's claims for "theft of trade secrets," relative to his company JCorps, pending in this District (Judge Hellerstein), were also recently dismissed. See **Exhibit D**.

Equally impossible is the (ridiculous) notion that Mr. Taub read and understood GateGuard's ToS, and agreed, on November 17, 2016, to accept them, despite their (alleged) inclusion of clauses forbidding Mr. Taub to make or provide any smart intercom system of his own designs. On the record before the Court, this action should be dismissed or judgment rendered against GateGuard, and consideration should be given to imposing sanctions if

GateGuard cannot produce any document or electronic record that he EVER transferred or communicated any technical information to Mr. Taub.

## II.   STATEMENT OF FACTS

Samuel Taub accessed GateGuard's web portal on November 16, 2016, left his name, email address and telephone number and asked to be contacted. Mr. Teman of GateGuard called Mr. Taub on November 17, 2016, and they spoke for about 30 minutes. Shortly after the call, Mr. Teman sent Mr. Taub an email with an attachment containing and listing GateGuard's product features. Mr. Taub never followed up or responded to that call.

GateGuard's responses to MVI's SUF establish that there were no emails or audiovisual presentations on November 17, 2016, or at any time thereafter. GateGuard's responses to MVI's SUF also conclusively establish that MVI alleges that Taub executed the "agreement" in this law suit on November 16, 2016, by visiting GateGuard's website and leaving his contact information.

As related in the attached Max Moskowitz Declaration, even today, anyone can access GateGuard's website, click on the CONTACT icon to "request a call" and merely by checking a box "I accept the terms and conditions" and submitting the form, be tricked or tripped to accept outrageous and unenforceable terms that include, for example, daily fines for using an intercom system obtained from other sources. See **Exhibit A**. See also Exhibit Q to the Taub Decl. (GateGaurd's "Terms & Conditions Last Revised Feb 7, 2019")(Doc. No. 27-3).  A person seeking information about GateGuard's products would not actually read fine print ToS, and even if he or she read them, they could not be deemed to have entered into a binding agreement with GateGuard.

### III. DISCUSSION

#### A. MVI Did Not Substantively Respond to the Motion to Dismiss

To survive the motion to dismiss, MVI was required to show that its FAC contained more than conclusory statements, statements that are plausible. Conclusory allegations are "not entitled to be assumed [to be] true." A complaint cannot survive a motion to dismiss if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, (2009).

MVI's FAC allegations are implausible. They purport that Mr. Taub, who at the time had already invested hundreds of thousands of dollars and other resources in the development of his intercom system, signed an agreement obligating him to discontinue and dismantle his business in exchange for nothing at all, except the possibility that he might receive a telephone call from someone at GateGuard. The alleged facts in the FAC are legally insufficient to support the claim that Taub entered into any agreement whatsoever with GateGuard, which is the *sine qua non* of the present action.

Moreover, even if the Court disagrees and posits that there is a "possibility" that Taub had entered into an agreement with GateGuard, still, it is beyond plausible that Mr. Teman would actually disclose trade secrets to a complete stranger who he never met and whose actual identity he had no way of establishing over the telephone. Moreover, the facts as developed to date, including GateGuard's admission that it does not now have, and never had, any physical or electronic records showing the transfer or communication of technical information to Taub, make it impossible that any information (other than what is of record) has been provided to Mr. Taub.

**B.     Requirements for Responding to a Motion for Summary Judgment**

Given that MVI submitted, as part of its Motion for Summary Judgment, the Declaration of Taub averring that he never executed any agreement and that he never saw any GateGuard terms of service, it was incumbent on GateGuard to rebut that information with documentary evidence, not solely by mere denials in the Teman Declaration. That is, the non-moving party (in a summary judgement motion) must carry this burden as to each essential element on which it bears the burden of proof. Thus, once this summary judgment stage arrives, the non-moving party is not saved by mere allegations or denials. See *Clapper v. Amnesty International USA*, 568 U.S. 398, 133 S. Ct. 1138, 1148-49 (2013); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 259, 88 S. Ct. 1575, 1592 (1968). Similarly, a non-movant is not saved by assertions in legal memoranda, arguments, speculation, conclusory statements or characterizations of disputed fact. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3rd Cir. 2006); *Linn Farms & Timber Ltd. P'ship v. Union Pac. R.R.*, 661 F.3d 354, 357 (8th Cir. 2011); *Fabrikant v. French*, 691 F.3d 193, 205 (2nd Cir. 2012); *Alman v. Reed*, 703 F.3d 887, 895-896 (6th Cir. 2013); T*ucker v. Union of Needletrades, Indus., & Textile Emples.*, 407 F.3d 784, 788 (6th Cir. 2005). The non-movant must show evidence. *Kenney v. Floyd*, 700 F.3d 604, 608 (1st Cir. 2012).

In the pending motion, MVI's repeated contentions that it cannot respond to the present motion without obtaining discovery materials from MVI is the true "strawman" in the present case. No one but GateGuard has the alleged "written agreement" <u>executed</u> by Mr. Taub, which underpins GateGuard's present action. Only GateGuard and no one else has evidence, if at all, that GateGuard actually had on its website, on November 16, 2016, the terms of service (ToS) that it recites (and quotes) in its FAC.

Similarly, only GateGuard could have evidence (which actually does not exist) of the secret or confidential information that it disclosed to Mr. Taub on November 17, 2016. MVI has

stated on the record that it received NOTHING and therefore would have no documents to produce to GateGuard evidencing its receipt of any confidential information from Teman. GateGuard's repeated refrain that it needs "discovery" to respond to the present motion is a paradigm strawman argument that should be ignored. And given that GateGuard now admits that it has no records of any communications, not physical and not electronic, that support its allegations that it disclosed any information at all to Mr. Taub, the Court should swat away the argument that the present motion for summary judgment is premature because GateGuard needs to conduct discovery to be able to respond to the pending motion.

In the same vein, GateGuard was obligated to respond with hard evidence to the declaration statements of MVI employees Taub and Smith, who declared that nothing, absolutely nothing in the MVI product originates from or is based on information received from confidential information provided by GateGuard. Instead, GateGuard responded with the refrain that it needs discovery. Given the motion for summary judgment and given Teman's declaration statements that he inspected aspects of the software and hardware of the MVI intercom system, GateGuard was in a position to respond with its own 2016 documents and show specific features or aspects of the MVI intercom system that (allegedly) are implemented using the contents of GateGuard's 2016 trade secret documents or information. It failed to do so, and thereby should be deemed to have failed to respond or rebut or identify pertinent and genuine issues of material fact.

The Federal Rules of Civil Procedure permit responding to a complaint with a motion for summary judgment, which contradicts GateGuard's advocacy herein that in all cases summary judgment is inappropriate without allowing for some exchanges of discovery materials. Similarly with respect to GateGuard's assertion that it disclosed trade secrets, to which MVI submitted

sworn statements that it received absolutely nothing by way of any trade secret of confidential GateGuard information, it was incumbent upon GateGuard to respond with hard evidence of the trade secrets that it allegedly produced or disclosed to Taub. GateGuard failed to produce any hard evidence for the simple reason that it does not exist.

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed .R. Civ. P. 56(a); *Beard v. Banks,* 548 U.S. 521, 529 (2006). A genuine issue of material fact exists only when a disputed fact, if proven, "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If the movant's burden is met, the nonmoving party must then present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56. If such evidence "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250-51. A party opposing summary judgment cannot rest "merely on allegations or denials" in its pleadings, but "must set out specific facts showing a genuine issue for trial." *Beard v. Banks*, 548 U.S. at 529. GateGuard opted not to respond with specific facts, and instead relies on general denials.

### C. The Court Lacks Jurisdiction over the Ownership of MVI's Pending Patent Application (Count IV)

Another GateGuard strawman argument is that the present action does not involve the "inventorship" of the contents of the pending MVI patent application, but rather its "ownership." This is brazenly incorrect. At its core, GateGuard's FAC is alleging that the MVI pending patent application describes "inventions" of Mr. Teman, which he had planned to maintain as trade secrets. The FAC further alleges that Samuel Taub is not the "inventor" of the subject matter described in the pending application, that he derived those inventions form Teman. Taub, in

response, states that he alone invented what is disclosed in the pending patent application. This is a pure "inventorship" dispute, which the case law of record establishes is within the exclusive jurisdiction of the United States Patent and Trademark Office ("PTO"), while the application is pending. See *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352 (Fed. Cir. 2004), footnote 1.

Typically, patent "ownership" disputes arise when a corporate employee invents and files a patent application directed to subject matter that the corporate employer contends it should "own," which is not the case here.

### D. Samuel Taub Never Entered into any Binding Agreement with Ari Teman and/or GateGuard

The immutable law in this state is that no contract can come into existence without "a manifestation of mutual assent to [its] essential terms." *Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584, 590 (1999) (internal quotation marks omitted); see also e.g. *Galesi v Galesi*, 37 AD3d 249 (1st Dept 2007). On the record before the Court, the FAC allegations do not permit concluding that Mr. Taub has bound himself contractually to GateGuard in any legal sense. Mr. Teman's perception that he had come up with an "inventive" legal trick to entrap anyone interested in purchasing or being involved with intercom and similar devices, by luring them to GateGuard's website and then ambushing these visitors with its harsh ToS, should be resoundingly rejected by this Court.

### IV. CONCLUSION

The instant defendants have not received from Mr. Teman and have not incorporated in their products, any proprietary information, including any trade secrets. The instant defendants have not entered into any binding agreement with GateGuard, not on November 16, 2016 nor at

any time thereafter. The instant Defendants have done nothing that constitutes tortious interference with GateGuard's existing or potential business relationships.

Therefore, the causes of action for theft of trade secrets, breach of contract, and tortious interference should be summarily dismissed, or summary judgment should be granted to defendants relative thereto. With that, GateGuard's other counts, requesting ownership of MVI's patent and patent application and the assertions of conversion, unjust enrichment (Count IX), unfair competition (Count X), and breach of implied duties should be dismissed as well.

Oral argument is respectfully requested on this motion.

Dated: August 8, 2019

Respectfully submitted,

/s/ *Max Moskowitz*
Max Moskowitz
Ariel S. Peikes
OSTROLENK FABER LLP
845 Third Avenue
New York, New York 10022
Telephone: (212) 596-0500
Facsimile: (212) 382-0888
E-mail: mmoskowitz@ostrolenk.com
apeikes@ostrolenk.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on August 8, 2019, I caused a true and correct copy of DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS THE COMPLAINT, ALTERNATIVELY FOR SUMMARY JUDGMENT to be served on counsel of record via the ECF filing system pursuant to Federal and Local rules.

                                                 /s/ Max Moskowitz
                                                 Max Moskowitz