THE ENGEL LAW GROUP, PLLC
280 Madison Avenue – Suite 705
New York, NY 10016
(212) 665-8095
aee@elgpllc.com

*Counsel for Defendants MVI Systems and Samuel Taub*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GATEGUARD, INC.,<br><br>       Plaintiff,<br><br>  - against -<br><br>MVI SYSTEMS LLC; SAMUEL TAUB; and MVI INDUSTRIES, LLC<br><br>       Defendants. | Civil Action No.: 19-cv-02472 (JPC)(DPF)<br><br>**DECLARATION OF ADAM ENGEL IN SUPPORT OF DEFENDANT MVI SYSTEMS LLC'S AND SAMUEL TAUB'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S CLAIMS ON SUBSTANTIVE GROUNDS** |

Adam Engel, an attorney duly admitted to the Bar of the United States District Court for the Southern District of New York, hereby declares as follows:

1. I am over 18 years of age, have no personal interest in this lawsuit, and have personal knowledge of the facts set forth herein. I am a principal at The Engel Law Group, PLLC, attorneys for Defendants MVI Systems LLC and Samuel Taub, and submit this Declaration in support of their Motion to Dismiss the Second Amended Complaint in this action.

2. Attached hereto as Exhibit A is a true and correct copy of Plaintiff's first document production, Bates Numbers GG000001 – GG000029. On August 4, 2020, Judge Freeman ordered the Plaintiff to produce a copy of the contract at the heart of its case, including any documents incorporated thereby and therein. Judge Freeman made it clear that this production was meant to cover *only* the version of the alleged contract – identified as the GateGuard ToS in the Defendants' brief – that Plaintiff contends its claims are based on. As

such, the documents produced by the Plaintiff are in the manner of a response to a contention

interrogatory, with no room for argument regarding whether these documents Plaintiff

production are controlling and applicable to the Plaintiff's claims in this case.

3.      Attached hereto as Exhibit B is a true and correct copy of the transcript of the

January 15, 2020 hearing on the Defendant's prior motion to dismiss before Judge Abrams

4.      Attached hereto as Exhibit C is a true and correct copy of the Initial Disclosures

served by GateGuard on my clients or about July 3, 2019 in connection with this action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated: Bondville, Vermont
      October 16, 2020

                                  _____

                                     Adam E. Engel

EXHIBIT A

## GateGuard

### Terms of Service

*Last Revised: Sept Oct 25, 2016, 11:05 AM EST*

HI THERE!

PLEASE READ THESE TERMS CAREFULLY AS THEY CONTAIN IMPORTANT INFORMATION REGARDING YOUR LEGAL RIGHTS, REMEDIES AND OBLIGATIONS.

Touchless Labs LLC, a Delaware Corporation (hereinafter referred to as "GateGuard", "we", "us", or "our") welcomes you ("User(s)" or "you") to our website at: http://GateGuard.xyz (the "Site") which can be used to acquire a facial-recognition and amenities building entry system (the "Service(s)"). You may use the Site and any Services acquired by you from GateGuard in accordance with the terms and conditions hereunder. It is hereby made clear that the term "Site" shall also include any "Services" provided by GateGuard, whether subscribed for through the Site or offline. You may use the Site in accordance with the terms and conditions hereunder.

1. **Acceptance of the Terms**

By using the Site and/or the Services, you agree to comply with and be legally bound by the terms and conditions of these Terms of Service ("Terms"), whether or not you become a registered user of the Services. These Terms govern your access to and use of the Site and/or the Services and constitute a binding legal agreement between you and GateGuard.

By entering, connecting to, accessing or using the Site, you also acknowledge that you have read and understood the terms of our **Privacy Policy** which is available at: http://GateGuard.xyz/legal/privacy.php and you agree to be bound by it and to comply with all applicable laws and regulations regarding your use of the Site.

**VIOLATING THESE TERMS MAY SUBJECT YOU TO CIVIL AND CRIMINAL PENALTIES. IF YOU DO NOT AGREE TO THESE TERMS, YOU HAVE NO RIGHT TO OBTAIN INFORMATION FROM OR OTHERWISE CONTINUE USING THE SITE AND/OR THE SERVICES AND YOU ARE REQUESTED NOT ENTER INTO, CONNECT TO, ACCESS OR USE THE SITE AND/OR THE SERVICES IN ANY MANNER**.

The Site is available only to individuals who (a) are at least eighteen (18) years old (see section 17 below); and (b) possess the legal authority to enter into these Terms and to form a binding agreement under any applicable law.

2. **The Service**

The Service can be used to facilitate the monitoring of building entry, including but not limited to tenants, staff, guests, vendors, government officials, enforcement agents, trespassers, and illegal subletters. The service may also provide amenities such as remove unlock, package scanning, and more.

GateGuard's responsibilities for the Services offered are limited to: (i) enabling people to enter the building by selecting a unit and entering a code, (ii) enabling people to enter the building by having someone remotely unlock the door via mobile device or apartment panel (optional, not included), (iii) enabling the Client to see a log of building entries, and filter by unit, face, person, and time. All services may be modified, updated, added, or removed at any time.

This Site provides comprehensive information regarding GateGuard and may include additional content related thereto such as contact information, videos, text, logos, button icons, images, data compilations, links, other specialized content, documentation, data, related graphics, know-how, specifications materials, designs, data, the "look and feel" of the Site, GUI, interactive features and other features obtained from or through the Site (collectively, the "Content").

ALL RIGHTS IN AND TO THE CONTENT AVAILABLE ON THE SITE ARE RESERVED TO GateGuard. TO THE EXTENT LEGALLY PERMISSIBLE, THE SITE AND THE CONTENT AVAILABLE THEREIN AND THE CONTENT (AS SUCH TERM IS DEFINED BELOW) ARE PROVIDED ON AN "AS IS" BASIS. GateGuard WILL NOT BE LIABLE FOR ANY DAMAGES OR LOSS, INCURRED BY YOU OR ANY OTHER PERSON AS A RESULT OF OR IN CONNECTION WITH SERVICES PROVIDED.

YOU ACKNOWLEDGE, UNDERSTAND AND AGREE THAT GateGuard MAKES NO RECOMMENDATIONS AND SUGGESTS NO ACTION. YOU UNDERSTAND GateGuard IS NOT AN ATTORNEY, LAW FIRM, LAW ENFORCEMENT, OR GOVERNMENT AGENCY. YOU AGREE AND ACKNOWLEDGE YOU WILL NOT TAKE ACTION BASED ON GateGuard INFORMATION. INFORMATION WE PRESENT ON OUR SITE OR OTHERWISE MAKE AVAILABLE TO YOU IS MERELY OPINION AND NOT REPRESENTED AS FACT AND WE ENCOURAGE YOU NOT TO ACT UPON IT WITHOUT DOING YOUR OWN INVESTIGATION AND DUE DILIGENCE.

GateGuard IS NOT RESPONSIBLE FOR AND DISCLAIMS ANY AND ALL LIABILITY RELATED TO ANY AND ALL INFORMATION AND ANY ACTIONS TAKEN ARE AT THE USER'S OWN RISK.

GateGuard may need access to update, repair, replace, or test devices. BY USING THIS SITE YOU GIVE GateGuard FULL PERMISSION TO ACCESS ANY PROPERTY OF YOURS, DIGITAL OR REAL WORLD, IN ANY METHOD, FOR ANY PURPOSE. BY CLICKING ANY LINK OR BUTTON, YOU REITERATE YOUR AGREEMENT.

**3.   <u>Account Registration</u>**

In order to access certain features of the Service you must register and create an account ("Account"). Registration can be done by completing the registration form available on the Site.

Your Account is password protected. In order to protect the security of your personal information available on your Account to the greatest possible, you must

safeguard and not disclose your Account log-in details and you must supervise the use of such Account. You are fully and solely responsible for the security of your computer system and all activity on your Account, even if such activities were not committed by you. You must provide accurate and complete information when creating an Account and you agree not to misrepresent your identity or your Account information. You agree to keep your Account information up to date and accurate. GateGuard reserves the right to suspend or terminate your Account and your access to the Site without refund if you create more than one (1) Account, or if any information provided during the registration process or thereafter proves to be inaccurate, fraudulent, not current or incomplete. GateGuard also reserves the right, at its sole discretion, to remove or reclaim any username at any time, for any other reason. If you wish to either change your user name or password to log-in to the Site, you may use Site menus or you can send us an e-mail of your request to: support.team@GateGuard.xyz. Your Account will terminate within reasonable time following termination of your subscription to the Services, in accordance with terms set forth herein, and from that date of termination you will no longer be able to access your Account (see further details with respect thereto in the Privacy Policy).

CANCELLING YOUR ACCOUNT MAY CAUSE THE LOSS OF CERTAIN INFORMATION YOU PROVIDED TO US AND/OR THE CAPACITY OF YOUR ACCOUNT. WE DO NOT ACCEPT ANY LIABILITY FOR SUCH LOSS.

4. <u>**Use Conditions and Restrictions**</u>

There are certain conditions which are strictly required and certain conducts which are strictly prohibited, when using the Site. Please read the following conditions and restrictions carefully. Failure to comply with any of the provisions set forth herein may also expose a User to civil and/or criminal liability.

You may not (and you may not permit any third party to) unless otherwise explicitly permitted under these Terms: (a) use the Site and/or the Content for any illegal, immoral, unlawful and/or unauthorized purposes; (b) use the Site and/or Content for non-personal or commercial purposes without GateGuard's express prior written consent; (c) remove or disassociate, from the Content and/or the Site any restrictions and signs indicating proprietary rights of GateGuard or its licensors, including but not limited to any proprietary notices contained in such materials (such as ",", or "), and you represent and warrant that you will abide by all applicable laws in this respect; (d) interfere with or violate Users' rights to privacy and other rights, or harvest or collect personally identifiable information about Users without their express consent, whether manually or with the use of any robot, spider, crawler, any search or retrieval application, or use other manual or automatic device, process or method to access the Site and retrieve, index and/or data-mine information; (e) interfere with or disrupt the operation of the Site or the servers or networks that host the Site, or disobey any laws, regulations, requirements, procedures, or policies of such servers or networks; (f) falsely state or otherwise misrepresent your affiliation with any person or entity, or express or imply that GateGuard endorses you, your site, your business or any statement you make, or present false or inaccurate information about the Site; (g) take any action that imposes, or may impose, an unreasonable or disproportionately large load on our platform infrastructure, as determined by us; (h) bypass any measures we may use to prevent or restrict access to the Site; (i) copy, modify, alter, adapt, replicate, make available, translate, port, reverse engineer, decompile, or disassemble any portion of the Content made available by GateGuard on or through the Site, or publicly display, reproduce, create derivative works from, perform, distribute, or otherwise use such Content; (j) copy, distribute, display, execute publicly, make available to the public, reduce to human readable form, decompile, disassemble, adapt, sublicense, make any

commercial use, sell, rent, transfer, lend, process, compile, reverse engineer, combine with other software, translate, modify or create derivative works of any material that is subject to GateGuard's proprietary rights, including GateGuard's Intellectual Property (as defined below), in any way or by any means, unless expressly permitted in the Terms and/or under any applicable laws which expressly permits such actions; (k) make any use of the Content on any other site or networked computer environment for any purpose, without GateGuard's prior written consent; (l) create a browser or border environment around GateGuard Content (no frames or inline linking is allowed); (m) sell, license, or exploit for any commercial purposes any use of or access to the Site and/or Content; (n) frame or mirror any part of the Site without GateGuard's prior express written authorization; (o) create a database by systematically downloading and storing all or any of the Content from the Site; (p) interfere with or damage the Site, including, without limitation by transmitting or otherwise making available in connection with the Site any virus, worm, trojan horse, time bomb, web bug, spyware, or any other computer code, file, or program that may or is intended to damage or hijack the operation of any hardware, software, or telecommunications equipment, or any other actually or potentially harmful, disruptive, or invasive code or component; (q) use the Site for any purpose for which the Site is not intended; (r) infringe and/or violate any of the Terms; (s) provide to us any content which is unlawful for you to possess, post or upload in the country in which you are resident, or which it would be unlawful for GateGuard to use or possess in connection with the Site (including but not limited to any content which is defamatory, libelous, pornographic, indecent, harassing, threatening, abusive or fraudulent or any content which infringes upon third party privacy rights); (t) Use the Site to infringe the rights of any person or entity, including without limitation, their intellectual property, privacy, publicity or contractual rights; (u) use the Site to transmit, distribute, post or submit any information concerning any other person or entity, including without limitation, photographs of others without their permission, personal contact information or credit, debit, calling card or account numbers; (v) impersonate any person or entity, or falsify or otherwise misrepresent yourself or your affiliation with any person or entity, including forging any TCP/IP packet header or any part of the header information in any email or newsgroup posting, or in any way use the Site or to send altered, deceptive or false source-identifying information; (w) provide any information we give you to any third party without our written consent; (x) share any information provided to you by us or otherwise in connection with the Site or Service with any site that provides listings of, including by not limited to: shared housing, sublets, real estate, "bed and breakfasts", hotels, apartments, housing, dorms, couch surfing, emergency housing, shelter, law enforcement, real estate news, without prior written consent from us; (y) to the extent permitted by law, share any information provided to you with any law enforcement or government or court entity of any kind in any jurisdiction without prior written consent from us; or (z) advocate, encourage, or assist any third party in doing any of the foregoing.

Without derogating from the forgoing you acknowledge and agree that you will not share Content or any other information provided to you by us or otherwise made available in connection with the Site with any employee, contractor, agent, partner, vendor, investor, affiliate, attorney or law firm, investigator, or anyone with any relationship with any listing website or service, including, without limitation, Airbnb (including any company owned or affiliated with or operated by Airbnb, Inc., including but not limited to: Airbnb Payments, Inc., Airbnb Ireland, Airbnb Payments UK Ltd), VRBO, Homeaway, Craigslist, booking.com, or any other site where short term rentals or rentals of any kind are available or. If you violate this provision, you agree to pay $10,000 per host or listing or results page or table shared, and any and all legal fees to recover from you, successfully or not, and any damages claimed by them against us,

GG000004

and any legal fees we are required to pay to defend such claim. You further agree that you will not share Content or any other information provided to you by us or otherwise in connection with the Site with any employee, contractor, agent, partner, vendor, investor, affiliate, attorney or law firm, investigator, or anyone with any relationship with any law enforcement agencies, any press, any violators of housing law, any government officer, any government employees or contractors or any politician, without our consent. GateGuard has the right to investigate and prosecute violations of any of the above to the fullest extent permitted by the law.

5. **Orders and Fees**

You may purchase subscriptions to Services by submitting orders via the Site. All orders are subject to acceptance by GateGuard. The applicable fees shall be as stipulated in the price list made available by GateGuard on the Site from time to time, and subject to the additional payment terms stipulated at: http://GateGuard.xyz/legal/payment.php, from time to time. GateGuard reserves the right to amend the price list and payment terms from time to time in its sole discretion, in which case any further purchase of additional Services or renewal of Services shall be subject to the price list and payment terms in effect at the time of additional purchase or renewal.

5.B. **Amenities and Services**

You agree that GateGuard may sell through the site, apps, panels, wifi, and any other contact method or platform additional services directly to your tenants. These may include, but are not limited to, such things as insurance, rent payment services, internet connectivity, delivery services, cleaning services, online platforms, etc. GateGuard is not responsible to share any revenue from these services. The Client has no veto rights over such services.

5.D. **Internet Connectivity Requirement**

You agree that GateGuard's entry system requires broadband internet access capable of uploading video clips at high speed. You agree to provide internet access and bring a CAT5 Ethernet cable and power supply (grounded outlet, and UPS) to any door to which you will have us install GateGuard. You agree that if you ask us to handle such installation you will be billed at our Hourly Installation Rate (see Pricing).

You agree to have redundant power (UPS, Uninterrupted Power Supply) and that any internet or power failures and any damaging resulting from such are not the responsibility of GateGuard. You may order an Uninterupted Power Supply to be installed with GateGuard.

You agree that GateGuard may install WiFi routers, repeatersher method and has the right to install any equipment necessary to provide such connectivity., and necessary wiring, throughout your building to provide connectivity to remote panels (such as for Rent Regulated tenants who demand an in-apartment door monitor (not included in price)). You agree that GateGuard may bring internet to the building and sell or resell connectivity to the tenants from this network. You agree not to restrict or limit in any way GateGuard's ability to connect internet to the building. GateGuard may bring internet to the building via: Fiber Optic line, DSL, Cable, Cellular, Satellite, or any other method and install any devices, equipment, wiring, cameras, or other such technology as required to provide connectivity, monitoring, and security for GateGuard equipment as GateGuard sees fit.

GG000005

**5.D.  PropertyPanel.xyz Requirement**

You agree that GateGuard will run on the PropertyPanel.xyz (by PropertyPanel, Inc., a DELAWARE corporation) platform and an account at PropertyPanel.xyz may be required to use the service at the time PropertyPanel.xyz goes live. You understand that the monthly subscription fees for PropertyPanel.xyz are not included in any payments for GateGuard.xyz. You understand that failure to maintain a PropertyPanel.xyz login may prohibit you from accessing and using GateGuard's dashboard as it runs on PropertyPanel.xyz.

**5.E.  Panel & Equipment Ownership**

You agree that you are purchasing only a license to use a GateGuard panel and equipment and that should you stop paying for monitoring services, GateGuard has the right to remove any and all GateGuard equipment and/or shut of any and all GateGuard services and other services provided by GateGuard.

GateGuard reserves the right to terminate service and remove equipment at its own discretion, for any reason. This is primarily disclaimed for the potential case where the rate of abuse or failure, such as due to vandalism by tenants or unreliable power or internet sources, makes supporting that installation too costly, burdensome, or unreliable to GateGuard to provide excellent service.

**5.F. Insurance & Repair**

In the event someone or something damages a GateGuard Panel so that is inoperable GateGuard will replace the panel, with a $400 deductible. GateGuard will do this up to 2 times, after which the deductible raises to $600. Should the panel fail on its own, due to an internal fault, GateGuard will replace it within the first year at no cost, and for $400 in years 2 and onward.

GateGuard will make every effort to replace panels within 1 business day, but cannot guarantee replacement time due to the many variables involved withy why a replacement may be needed, location, and installation requirements.

**5.G. Installation only included in price in NYC**

As of now, GateGuard installation is only included in the pre-sale price in New York City. We will make every effort to locate licensed, experienced installers in other cities for you, and help them in understanding the installation process but we cannot guarantee their work. Should you need installation in other cities, please ask and let us know how we can be helpful.

**5.H. Software Changes**

You understand we may change, update, modify, reduce, increase, or otherwise alter the software on the Panels and Site and Apps and Services and any software. This includes but is not limited to: remove or add services, change the interface, add or remove buttons and options, change the method of access, change the methods of storage, encryption, and usage.

**5.I. Hardware Changes**

GG000006

You understand we may change, update, modify, reduce, increase, or otherwise alter the hardware. You agree that renderings of the hardware on the website may be differ slightly or drastically what is installed. You agree that we may, at any time, replace hardware installed, such as but not including: replacing panels, cameras, wiring, components, power sources, internet connectivity hardware, lighting, etc. You agree that GateGuard may do so at any time and does not require prior permission to enter a property and replace, add, remove, or alter hardware and/or software.

### 5.H. <u>Insurance</u>

You agree to carry insurance against cyber attacks ("cyber insurance"), property damage, and other damage to the devices. You agree that should anyone damage a GateGuard panel or other equipment, GateGuard may place a claim with your insurance company to recoup the costs incurred in replacing and/or repairing any devices or equipment, including but not limited to hardware costs and hourly staff costs at our Hourly Installation Rate.

### 5.J. <u>Insurance</u>

You agree that this service is in development and while every effort will be made to install within 90 days of your order, delays from our suppliers and developers may occur, as well as delays in scheduling installation and in internet access and power being brought to the door. We cannot and do not guarantee an installation date.

### 6. <u>Privacy Policy</u>

We respect your privacy and are committed to protect the information you share with us. We believe that you have a right to know our practices regarding the information we collect when you connect to, access or use the Site.Our policy and practices and the type of information collected are described in our **Privacy Policy** available at http://GateGuard.xyz which is incorporated herein by reference. You agree that GateGuard may use personal information that you provide or make available to GateGuard in accordance with the Privacy Policy. If you intend to connect to, access or use the Site you must first read and agree to the Privacy Policy.

The Site may allow you to upload or otherwise make available to GateGuard your own information, including materials such as text, images, photos or videos. Please be sure that while sharing information you respect the intellectual property and privacy rights of third parties who have any rights with respect to information you make available to GateGuard. GateGuard will not bear any liability for any loss, damage, cost or expense that you may suffer or incur as a result of or in connection with any such receipt of such information or materials.

To the extent that you share with us any information pertaining to third parties, whether general information or personnel information: (i) you hereby represent that you have received from the applicable data subjects any required consent under any applicable privacy laws, for use of such information for the purpose for which you share such information with us, in accordance with the Privacy Policy, as may be amended from time to time; and (ii)you grant GateGuard a perpetual, non-exclusive, royalty-free, and worldwide license to use, publicly display, communicate, distribute, host, publish, reproduce, make modifications or derivatives work of and store, any such information, as may be required in connection with the operation of the Site or provision of Services by GateGuard.

### 6.B. <u>Monitored Information.</u>

**GG000007**

You acknowledge that GateGuard collects and monitors, automatically and/or manually people, property, and objects entering and approaching your property. You agree that all data collected by GateGuard and its devices and services becomes property of GateGuard.

**7.  Confidential Information.**

You shall not disclose to third parties nor use for any purpose other than for the proper use of the Site any Confidential Information received from GateGuard in whatever form under these Terms or in connection with the Services without the prior written permission of GateGuard. "Confidential Information" shall mean all data and information, not made available to the general public, oral or written, that relates to GateGuard, the Site and/or the Services, including without limitation these Terms and any agreement between you and GateGuard or the identity of individuals involved in the making, ownership, investment in, or operation of GateGuard. You shall limit access to Confidential Information to those of your personnel for whom such access is reasonably necessary for the proper use of the Services under these Terms. Such personnel shall be bound by written confidentiality obligations not less restrictive than those provided for herein. You shall be responsible for any breach of these Terms by any of your personnel. You shall protect the Confidential Information with the same degree of care, but no less than a reasonable degree of care, to prevent unauthorized disclosure or use of Confidential Information, as you exercise in protecting your own proprietary information. The aforementioned limitations shall not apply to Confidential Information which you can demonstrate: (i) was in your possession prior to disclosure hereunder provided that, immediately upon disclosure, you have brought this fact to the attention of GateGuard; or (ii) was in the public domain at the time of disclosure or later became part of the public domain without breach of the confidentiality obligations herein contained; or (iii) was disclosed by a third party without breach of any obligation of confidentiality; or (iv) is disclosed pursuant to administrative or judicial action, provided that you shall use your best efforts to maintain the confidentiality of the Confidential Information. If only a portion of the Confidential Information falls under any of the above alternatives, then only that portion of the Confidential Information shall be excluded from the use and disclosure restrictions of these Terms.

**8.  Intellectual Property Rights**

The Site, the Services the Content, and any other proprietary assets of GateGuard and any and all intellectual property rights pertaining thereto, including, but not limited to, inventions, patents and patent applications, trademarks, trade names, service marks, copyrightable materials and trade secrets, whether or not registered or capable of being registered (collectively, "Intellectual Property"), are owned by and/or licensed to GateGuard and are protected by applicable copyright and other intellectual property laws and international conventions and treaties. All rights not expressly granted to you hereunder are reserved by GateGuard and its licensors. The Terms do not convey to you an interest in or to GateGuard Intellectual Property but only a limited, revocable right of use in accordance with the Terms. Nothing in the Terms constitutes a waiver of GateGuard's Intellectual Property under any law. No licenses is granted to you by implication or otherwise under any Intellectual Property rights owned or controlled by GateGuard or its licensors, except for the licenses and rights expressly granted under these Terms. You will not use, copy, adapt, modify, prepare derivative works based upon, distribute, license, sell, transfer, publicly display, publicly perform, transmit, broadcast or otherwise exploit the Site and/or Content, except as expressly permitted in these Terms.

You agree that you will not offer a competing or similar product to GateGuard such as: intercoms, lobby kiosks, face recognition access control, building information screens, real estate management software, and that any and all creations you make similar to these or to GateGuard becomes our property.

To the extent you provide any feedback, comments or suggestions to GateGuard ("Feedback"), GateGuard shall have an exclusive, royalty-free, fully paid up, worldwide, perpetual and irrevocable license to incorporate the Feedback into any GateGuard current or future products, technologies or services and use same for any purpose all without further compensation to you and without your approval. You agree that all such Feedback shall be deemed to be non-confidential. Furthermore, you warrant that your Feedback is not subject to any license terms that would purport to require GateGuard to comply with any additional obligations with respect to any GateGuard current or future products, technologies or services that incorporate any Feedback.

**9.   Trademarks and Trade names**

GateGuard's marks and logos and all other proprietary identifiers used by GateGuard in connection with the Site ("GateGuard Trademarks") are all trademarks and/or trade names of GateGuard, whether or not registered. All other trademarks, service marks, trade names and logos which may appear on the Site belong to their respective owners ("Third Party Marks"). No right, license, or interest to GateGuard Trademarks and the Third Party Marks is granted hereunder, and you agree that no such right, license, or interest may be asserted by you with respect thereto and therefore you will avoid using any of those marks, except as permitted herein.

You hereby agree that we may use your logos, brands, name, and intellectual property in any way we wish, including for marketing, investigation, promotional, and any other purpose.

**10. Changes to the Site**

GateGuard reserves the right to modify, correct, amend, enhance, improve, make any other changes to, or discontinue, temporarily or permanently this Site (or any part thereof, including but not limited to the Services or Content) without notice, at any time. In addition, you hereby acknowledge that the Content provided via this Site may be changed, extended in terms of content and form or removed at any time without any notice to you. You agree that GateGuard shall not be liable to you or to any third party for any modification, suspension, or discontinuance of this Site or the Content included therein.

**11. Links to Third Party Sites**

The Site may contain links to third-party websites or resources or embed third-party services. Those linked sites and services are provided solely as a convenience to you. These linked sites and services are not under the control of GateGuard and it is not responsible for the availability of such external sites or services, and does not endorse and is not responsible or liable for any content including but not limited to content advertising, products or other information on or available from such linked sites and services or any link contained in linked sites or service. You acknowledge and agree that GateGuard is not responsible or liable for: (i) the availability or accuracy of such websites or resources; or (ii) the content, products, or services on or available from such websites or resources. Links to such websites or resources do not imply any endorsement by GateGuard of such websites or resources or the content, products, or services available from such websites or resources. You acknowledge sole responsibility for and assume all risk arising from your use of any such websites or resources or the content, products or services on or available from such websites or resources. Most of such linked sites and services provide legal documents, including terms of use and privacy policy, governing the use thereof. It is always advisable and we encourage you to read such documents carefully before using those sites and services, inter alia, in order to know what kind of information about you is being

collecting.

**12. <u>Disclaimer of Warranties</u>**

TO THE FULLEST EXTENT LEGALLY PERMISSIBLE, THE SITE, CONTENT ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS, WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED. WITHOUT LIMITING THE FOREGOING, GateGuard, INCLUDING ITS VENDORS, OFFICERS, DIRECTORS, EMPLOYEES, AFFILIATES, SUBSIDIARIES, LICENSORS, AGENTS AND SUPPLIERS ("GateGuard REPRESENTATIVES") EXPLICITLY DISCLAIMS ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, QUIET ENJOYMENT OR NON-INFRINGEMENT, AND ANY WARRANTIES ARISING OUT OF COURSE OF DEALING OR USAGE OF GateGuard. THE SITE'S AVAILABILITY AND FUNCTIONALITY DEPENDS ON VARIOUS FACTORS, SUCH AS COMMUNICATION NETWORKS, HARDWARE, SOFTWARE AND GateGuard's SERVICE PROVIDERS AND CONTRACTORS. WE DO NOT WARRANT OR GUARANTEE (I) THAT THE SITE OR IS OR WILL BE SECURE, TIMELY, ACCURATE, COMPLETE, UNINTERRUPTED, WITHOUT ERRORS, OR FREE OF VIRUSES, DEFECTS, WORMS, OTHER HARMFUL COMPONENTS OR OTHER PROGRAM LIMITATIONS, (II) THAT WE WILL CORRECT ANY ERRORS OR DEFECTS IN THE SITE, (III) AND/OR MAKE ANY REPRESENTATION REGARDING THE USE, INABILITY TO USE OR OPERATE, OR THE RESULTS OF THE USE OF THE SITE AND/OR CONTENT AVAILABLE THEREON OR THROUGH THE SITE (INCLUDING THAT THE RESULTS OF USING THE SITE WILL MEET YOUR REQUIREMENTS). GateGuard MAKES NO WARRANTY THAT THE SITE OR CONTENT, INCLUDING, BUT NOT LIMITED TO, REPORTS, ALERTS OR DATA WILL MEET YOUR REQUIREMENTS OR BE AVAILABLE ON AN UNINTERRUPTED, SECURE, OR ERROR-FREE BASIS. GateGuard MAKES NO WARRANTY REGARDING THE QUALITY OF ANY INFORMATION OR CONTENT OR THE ACCURACY, TIMELINESS, TRUTHFULNESS, COMPLETENESS OR RELIABILITY OF ANY INFORMATION OR CONTENT OBTAINED THROUGH THE SITE OR IN CONNECTION WITH THE SERVICES.

WE ARE NOT RESPONSIBLE AND HAVE NO LIABILITY FOR ANY ITEM OR SERVICE PROVIDED BY ANY PERSON OR ENTITY OTHER THAN GateGuard. WE ARE NOT RESPONSIBLE FOR ANY CONSEQUENCES TO YOU OR OTHERS THAT MAY RESULT FROM TECHNICAL PROBLEMS (INCLUDING WITHOUT LIMITATION IN CONNECTION WITH THE INTERNET SUCH AS SLOW CONNECTIONS, TRAFFIC CONGESTION, OVERLOAD OF SERVERS, DELAYS OR INTERRUPTIONS) OR ANY TELECOMMUNICATIONS OR INTERNET PROVIDERS.

YOU AGREE THAT USE OF THE SITE, THE SERVICES AND/OR THE CONTENT IS ENTIRELY AT YOUR OWN RISK. YOU FURTHER AGREE THAT GateGuard AND THE GateGuard REPRESENTATIVES ARE NOT RESPONSIBLE FOR ANY DAMAGE CAUSED BY YOUR OR ANYONE"S USE OF THE GateGuard SERVICES, SITE, INFORMATION, ALERTS, OR REPORTS.

INASMUCH AS SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSIONS OR LIMITATIONS AS SET FORTH HEREIN, THE FULL EXTENT OF THE ABOVE EXCLUSIONS AND LIMITATIONS MAY NOT APPLY.

**13. <u>Limitation of Liability</u>**

YOU ACKNOWLEDGE AND AGREE THAT, TO THE MAXIMUM EXTENT

GG000010

PERMITTED BY LAW, THE ENTIRE RISK ARISING OUT OF YOUR ACCESS TO AND USE OF THE SITE AND CONTENT REMAINS WITH YOU. NEITHER GateGuard NOR ANY OTHER PARTY INVOLVED IN CREATING, PRODUCING, OR DELIVERING THE SITE, OR SERVICES WILL BE LIABLE FOR ANY INCIDENTAL, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOSS OF DATA OR LOSS OF GOODWILL, SERVICE INTERRUPTION, COMPUTER DAMAGE OR SYSTEM FAILURE OR THE COST OF SUBSTITUTE PRODUCTS OR SERVICES, OR FOR ANY DAMAGES FOR PERSONAL OR BODILY INJURY OR EMOTIONAL DISTRESS ARISING OUT OF OR IN CONNECTION WITH THESE TERMS, FROM THE USE OF OR INABILITY TO USE THE SITE, OR CONTENT, WHETHER BASED ON WARRANTY, CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR ANY OTHER LEGAL THEORY, AND WHETHER OR NOT GateGuard HAS BEEN INFORMED OF THE POSSIBILITY OF SUCH DAMAGE, EVEN IF A LIMITED REMEDY SET FORTH HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE.

IN NO EVENT WILL GateGuard'S AGGREGATE LIABILITY ARISING OUT OF OR IN CONNECTION WITH THESE TERMS AND YOUR USE OF THE SITE EXCEED THE AMOUNTS YOU HAVE PAID IN THE ONE (1) MONTH PERIOD PRIOR TO THE EVENT GIVING RISE TO THE LIABILITY. YOU AGREE, REGARDLESS OF PAYMENTS, OUR MAXIMUM LIABILITY IS $10,000 OR YOUR LATEST MONTHLY FEE, WHICHEVER IS LOWER. THE LIMITATIONS OF DAMAGES SET FORTH ABOVE ARE FUNDAMENTAL ELEMENTS OF THE BASIS OF THE BARGAIN BETWEEN GateGuard AND YOU. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

## 14. <u>Indemnification</u>

You agree to release, defend, indemnify, and hold GateGuard and its affiliates, including all GateGuard Representatives, harmless from and against any claims, liabilities, damages, losses, and expenses, including, without limitation, reasonable legal and accounting fees, arising out of or in any way connected with (a) your access to or use of the Site or Content; (b) your violation of any provision of these Terms, (c) your violation of any third party rights, including without limitation any intellectual property rights or privacy right of such third party with respect to your use of the Site, or (d) any damage of any sort, whether direct, indirect, special or consequential, you may cause to any third party with relation to the Service or the Site or the Content.

You agree GateGuard is not responsible for breaches, real or digital, that result in damage to your property or business. Always have redundant systems, insurance, and emergency plans.

You understand that GateGuard may use contractors and third-parties to provide services and that you hold these third parties, their affiliates and subsidiaries and contractors and their officers, directors, employees and agents, harmless from and against any claims, liabilities, damages, losses, and expenses, including, without limitation, reasonable legal and accounting fees, arising out of or in any way connected with (a) your access to or use of the Site or Content; (b) your violation of any provision of these Terms, (c) your violation of any third party rights, including without limitation any intellectual property rights or privacy right of such third party with respect to your use of the Site, or (d) any damage of any sort, whether direct, indirect, special or consequential, you may cause to any third party with relation to the Site or the Content.

GG000011

You understand and accept that Friend or Fraud (Friend or Fraud INC in the USA, and Friend or Fraud LTD in Israel) is a provider of technical knowledge and expertise and is not responsible in any way for the Services, Site, or Content of GateGuard. You agree to hold Friend or Fraud, its affiliates and subsidiaries and contractors and its officers, directors, employees and agents, harmless from and against any claims, liabilities, damages, losses, and expenses, including, without limitation, reasonable legal and accounting fees, arising out of or in any way connected with (a) your access to or use of the Site or Content; (b) your violation of any provision of these Terms, (c) your violation of any third party rights, including without limitation any intellectual property rights or privacy right of such third party with respect to your use of the Site, or (d) any damage of any sort, whether direct, indirect, special or consequential, you may cause to any third party with relation to the Site or the Content.

Without derogating from the foregoing, we reserve the right to assume the exclusive defense and control of any matter which is subject to indemnification by you, which will not excuse your indemnity obligations hereunder and in which event you will fully cooperate with us in asserting any available defense. You agree not to settle any matter subject to an indemnification by you without first obtaining our prior express written approval. It is hereby clarified that the defense and indemnification obligations set forth herein will survive these Terms.

## 15. <u>Amendments to the Terms</u>

GateGuard may, at its sole discretion, at any time and without prior notice, change the Terms from time to time, including any other policies incorporated thereto, and including any pricing and fees, so please re-visit this page frequently. In case of any material change, we will make reasonable efforts to post a clear notice on the Site and/or will send you an e-mail (to the extent that you provided us with such e-mail address) regarding such change. Such material changes will take effect after such notice was provided on our Site or sent via e-mail, whichever is the earlier. Otherwise, all other changes to these Terms are effective as of the stated "Last Revised" date and your continued use of the Site on or after the Last Revised date will constitute acceptance of, and agreement to be bound by, those changes. In the event that the Terms should be amended to comply with any legal requirements, the amendments may take effect immediately, or as required by the law and without any prior notice. By continuing to access or use the Site after we have posted a modification on the Site or have provided you with notice of a modification, you are indicating that you agree to be bound by the modified Terms. If the modified Terms are not acceptable to you, your only recourse is to cease using the Site.

## 16. <u>Termination of the Services' operation</u>

At any time, GateGuard may discontinue your use of the Service in its sole discretion with or without any reason or prior notice, in addition to any other remedies that may be available to GateGuard under any applicable law. Additionally, GateGuard may at any time, at its sole discretion, cease the operation of the Site or any part thereof, temporarily or permanently, without giving any prior notice. You agree and acknowledge that GateGuard does not assume any responsibility with respect to, or in connection with the termination of the Site's operation and loss of any data. The provisions of these Terms that, by their nature and content, must survive the termination of these Terms in order to achieve the fundamental purposes of these Terms shall so survive. Without limiting the generality of the forgoing, the Intellectual Property Rights, Disclaimers of Warranties, Limitation of Liability, Indemnification and General sections will survive the termination of the Terms.

GG000012

### 17. <u>Minors</u>

To use the Site you must be over the age of eighteen (18). We reserve the right to request proof of age at any stage so that we can verify that minors under the age of eighteen (18) are not using the Site. In the event that it comes to our knowledge that a person under the age of eighteen (18) is using the Site, we will prohibit and block such User from accessing the Site and will make all efforts to promptly delete any Personal Information (as such term is defined in our Privacy Policy) with regard to such User.

### 18. <u>Governing Law; Jurisdiction; Dispute Resolution</u>

Certain additional legal terms, related to interpretation of these Terms, their governing law and other terms and restrictions related to the resolution of any dispute, claim or controversy between you and GateGuard, shall be as stipulated at: http://GateGuard.xyz /legal/dispute.php from time to time (the "**Dispute Resolution Terms**"). By accepting these Terms or otherwise entering, connecting to, accessing or using the Site, you acknowledge that you have read and understood the Dispute Resolution Terms, which are incorporated herein by reference, and you agree to be bound by and to comply with such Dispute Resolution Terms, and any provision thereof.

### 19. <u>General</u>

**Entire Agreement** - These Terms constitute the entire and exclusive understanding and agreement between GateGuard and you regarding the Site, Content, and these Terms supersede and replace any and all prior oral or written understandings or agreements between GateGuard and you regarding the Site, and/or Content.

**Assignment** - You may not assign or transfer these Terms, by operation of law or otherwise, without GateGuard's prior written consent. Any attempt by you to assign or transfer these Terms, without such consent, will be null and of no effect. GateGuard may assign or transfer these Terms, at its sole discretion, without restriction. Subject to the foregoing, these Terms will bind and inure to the benefit of the parties, their successors and permitted assigns.

**Notices** - Any notices or other communications permitted or required hereunder, including those regarding modifications to these Terms, will be in writing and given by GateGuard (i) via email (in each case to the address that you provide) or (ii) by posting to the Site. For notices made by e-mail, the date of receipt will be deemed the date on which such notice is transmitted and for notices made by posting to the Site the date of receipt will be deemed the date on which such notice is posted.

**Interpretation** - Any heading, caption or section title contained herein is inserted only as a matter of convenience, and in no way defines or explains any section or provision hereof.

**No Waiver; Cumulative Remedies; Severability** - The failure of GateGuard to enforce any right or provision of these Terms will not constitute a waiver of future enforcement of that right or provision. The waiver of any such right or provision will be effective only if in writing and signed by a duly authorized representative of GateGuard. Except as expressly set forth in these Terms, the exercise by either party of

GG000013

any of its remedies under these Terms will be without prejudice to its other remedies under these Terms or otherwise. If for any reason an arbitrator or a court of competent jurisdiction finds any provision of these Terms invalid or unenforceable, that provision will be enforced to the maximum extent permissible and the other provisions of these Terms will remain in full force and effect.

**Third Party Beneficiaries** - These Terms do not and are not intended to confer any rights or remedies upon any person other than the parties. Notwithstanding the foregoing, the parties agree that the third party payment service providers and payment card networks are third party beneficiaries of these Terms for purposes of enforcing provisions related to payments, but that their consent or agreement is not necessary for any changes or modifications to these Terms.

20. **For information, questions or notification of errors, please contact**:

If you have any questions (or comments) concerning the Terms, you are most welcome to send us an e-mail and we will make an effort to reply within a reasonable timeframe: support.team@GateGuard.xyz or http://GateGuard.xyz

GG000014

## GateGuard

## Privacy Policy

*Last Revised: May 10, 2016*

### Our Mission

Touchless Labs LLC ("GateGuard", "we", "our" or "us") is committed to enriching cities by protecting what matters most: homes. This includes safeguarding your information, and treating such information with security and respect. We understand the need to feel safe when sharing information with third parties, and we have developed this privacy policy ("Privacy Policy") to help you understand our practices and how to exercise choice regarding the collection and use of your personal information.

### Scope and other Agreements and Notices

Our Privacy Policy applies to General Information (as defined below) about you that is gathered automatically and to Personal Information (as defined below) that you actively share with us or that we collect directly from you online and offline, as well as information we collect about you from other sources, such as from third party partners and affiliates, which we may append to other information we collect from or about you. This Privacy Policy applies to visitors and users of our website, GateGuard.xyz (our "Site") (including the mobile version of our Site), users of Services (as defined below) that we provide at no charge, users of Services that require payment of a fee (collectively, "Users" or "you").

In addition to this Privacy Policy, other contract terms such as our GateGuard Service Terms and Conditions (the "Terms"), will apply to you, based on the Services you select or use. If you use other Services, additional privacy terms may also be applicable.

**BY ENTERING TO, CONNECTING TO, ACCESSING OR USING OUR SITE AND/OR ANY OF OUR SERVICES YOU AGREE TO THE TERMS AND CONDITIONS SET FORTH IN THIS PRIVACY POLICY IN THEIR ENTIRETY, INCLUDING TO THE COLLECTION AND PROCESSING OF YOUR PERSONAL INFORMATION. IF YOU DO NOT AGREE TO OUR PRACTICES AS DESCRIBED IN THIS POLICY, DO NOT USE OUR SITE AND/OR SERVICES.**

**TO THE EXTENT THAT YOU SHARE WITH US ANY INFORMATION PERTAINING TO THIRD PARTIES, WHETHER GENERAL INFORMATION OR PERSONAL INFORMATION, YOU HEREBY REPRESENT THAT YOU HAVE RECEIVED FROM THE APPLICABLE DATA SUBJECTS ANY REQUIRED CONSENT UNDER ANY APPLICABLE PRIVACY LAWS, FOR USE OF SUCH INFORMATION FOR THE PURPOSE FOR WHICH YOU SHARE SUCH INFORMATION WITH US, IN ACCORDANCE WITH THIS PRIVACY POLICY, AS MAY BE AMENDED FROM TIME TO TIME.**

### GateGuard's Commitment

We are committed to (1) working with our Users to obtain a fair resolution of any complaint or concern about privacy concerns and our Services, and (2) supporting law enforcement and regulatory agencies committed to stopping crimes of identity theft and identity fraud. If you have any question or concern about our privacy practices, you are most welcomed contact us in the manner set forth in the -Contact Us- paragraph below and we will make an effort to reply within a reasonable timeframe.

### Modifications

WE MAY MODIFY OUR POLICY AT ANY TIME AND FROM TIME TO TIME. SO PLEASE RE-VISIT THIS PAGE FREQUENTLY. IN CASE OF ANY MATERIAL CHANGE, WE WILL MAKE REASONABLE EFFORTS TO POST A CLEAR NOTICE ON THE SITE. CHANGES TO THIS PRIVACY POLICY ARE EFFECTIVE AS OF THE STATED "LAST REVISED" AND YOUR CONTINUED USE OF THE SITE OR OUR SERVICES AFTER ON OR AFTER THE LAST REVISED DATE WILL CONSTITUTE ACCEPTANCE OF, AND AGREEMENT TO BE BOUND BY, THE MODIFIED POLICY. EACH TIME YOU USE THE SITE, THE LATEST VERSION OF THE POLICY WILL BE DISPLAYED AND WILL APPLY.

### Users

You need not enroll or register with us to just visit and view our Site. However, if you elect to obtain or use any of our Services you must register or enroll (or be enrolled by an authorized third party) with us, and you must agree to

GG000015

our Terms, which incorporate by reference this Privacy Policy.

**Third Party Websites**

Our Site may be linked to other web sites operated by one or more third-parties (collectively, "Third-Party Sites"). Certain areas of our Site may allow you to interact with Third-Party Sites and, in certain situations, you may be transferred to a Third-Party Site through a link but it may appear that you are still on our Site. The Third-Party Sites may have different privacy policies and terms and conditions and/or business practices than we do, and your use of Third-Party Sites is governed by that Third-Party Site's privacy policy and terms and conditions. Some of our pages also utilize framing techniques to serve content to or from our partners while preserving the look and feel of our site. Please be aware that you are providing your personal information to these third parties and not to GateGuard.

**Information We Collect**

We may collect information about you from a variety of sources, including information we gather from you directly when you register or enroll (or are enrolled by an authorized third party), use our Services, or view our Site or our online advertisements. We may also gather information from other sources as described herein.

Please note: you are not obligated to provide us with any information by law. You hereby agree and acknowledge that you are providing us with information at your own free will, for the purposes set forth herein, and that we may keep such information in a database which will be maintained by us or by our service providers, and, if required, registered in accordance with applicable laws and regulations.

**Information We Collect Directly From You**

Some Personal Information is collected when you register or enroll for the Services, otherwise agree to provide information directly to us, or are enrolled for the Services by an authorized third party. Here are some of the kinds of Personal Information we may collect directly from you or an authorized third party:

- Name

- Contact information (email address, postal address, phone number)

- Social Security Number

- Date of Birth, Age, Gender

- Personal details to verify your identity, such as your mother's maiden name

- Payment and Financial Information, such as a credit card or financial account number

- Government identity information, for example, driver's license information, voluntarily identified by you in your member portal

- Other information you may voluntarily provide for protection on the member portal, such as your insurance information

- Product Preferences and interests

- Communication Preferences

- Contact Information for friends or family members that you wish to register as members or that you suggest we contact. Your family member may contact us at Privacy@SubletSpy.com to request that we remove this information from our GateGuard database.

- Other information that you may voluntarily provide in response to member surveys or studies or as part of enrollment in a new product or service

- When you call or exchange emails with us, we will retain the content of the email messages (or hard copy correspondence) as required or permitted by law and our record and information management policies. We also may retain recordings of our phone messages or phone calls with you.

**Information We Collect When You Visit Our Site or View Our Online Advertisements**

We, and the third parties we engage to perform analytics, advertising or other services, automatically collect certain General Information when you access the Site, via Cookies, Log Files, Web Beacons, and other Tracking Technologies (see the -Definitions- section at the end of this Policy for an explanation of each of these Tracking Technologies).

GG000016

These Tracking Technologies are used to administer and improve our Site and the content on it, including to track user movements around the Site, to gather usage information and statistics about how our Site is used, to permit users to log in or make purchases, to store user preferences, to customize content, and for marketing and advertising purposes.

We may combine the information we have automatically collected from you with other information we collect about you. We do this to improve services we offer you, to improve marketing, analytics, or site functionality, to develop new products and services, and to customize content and advertising to you.

The following are some examples of information we may collect with Cookies, log files, Web Beacons, GIFs, pixel tags, server logs, customer relationship management ("CRM") tools or other technologies that gather information automatically when you visit our Site or view online advertisements:

- Website pages you view

- IP address

- Emails from GateGuard that you open or forward

- GateGuard offers or links you connect to

In connection with the Site, for example during the enrollment process or upon log into your member portal, information about your computer, such as the device id and other accompanying technical attributes and characteristics, may be accessed, retained and used by us or our service provider to confirm device identification, verify your identity, and to authenticate your account. If you access our Site through a mobile device, we also may collect information about your device, such as the device ID or other identifier as permitted by the manufacturer, length of time spent on the Site, installations, clicks and gestures.

## Information We Collect From Other Sources ("Third Party Information")

We may obtain information about you from third party sources, such as the companies we work with to provide service to you (i.e., our service partners), affiliates such as our subsidiaries, parent companies or other related entities, ID Analytics and other companies that we acquire or merge with, data aggregators or public databases. Here are examples of this kind of Third Party Information:

- Name

- Age

- Postal Address

- Phone Number

- Marital status and number of children

- Other information which may help us determine your risk of identity theft such as online behavior, purchase behavior, interests and other consumer and market research data

- Information used to populate our membership registration forms

- Information such as your social security number and date of birth, obtained from our subsidiary, ID Analytics, other affiliates or service partners.

## How We Use and Share Your Information

This summary tells you how we use your information, if we share it and why. It also explains how you can make decisions about these actions and how we will respond to those requests. We will share your personal information with third parties only in the ways that are described in this privacy policy, or otherwise where we have your consent. We do not sell your personal information to third parties. When we share your Personal Information with third parties as described below, we use best efforts to put in place contracts with them that include confidentiality restrictions on their use of your information and that require them to notify us if your Personal Information is lost, stolen or otherwise wrongly disclosed.

GG000017

| Why do we USE your information? | Do we SHARE this information with others? | What information is shared? | Can you limit this sharing? |
|---|---|---|---|
| To understand Site demographics and use of the Internet | Yes. We share with our affiliates and third party service providers to help improve our products, service offerings, Site, and technology | General Information | You may block cookies through your browser settings, which prevents us from collecting certain information about your use of our Site and our Services. We may still collect information about your use of our Services, such as when you log in, and analyze this information to help understand the use of our Site. |
| In the course of providing Services you request, verifying your identity, notifying you of new features, Services, or changes in our business or to process, and fulfilling or billing your orders or requests. | Yes with the following:<br>- other members registered under your account<br>- our Affiliates<br>- third party service providers, for example insurance companies, customer rewards programs, payment verification services, and financial institutions<br>- Government agencies and law enforcement (in helping address identity theft)<br>- consumer reporting agencies | General Information; Personal Information | No. This is necessary to provide the Services, including updates about features and functionalities of the products and services to which you subscribe. The information requested may differ depending on the Service(s) you select. This use of your information is separate and distinct from marketing uses, which you may opt-out of, and which are discussed below. |
| When we, or our affiliates, send you marketing material about services, promotions or other material which may be of interest to you, through e-mail, interactive voice response telephone technology, direct mail or other means. | Yes, with our affiliates and to third party service providers who are under contract with us to provide our direct mail or other marketing efforts | General Information. Personal Information such as Name, Address, Email Address, or Phone Number Third Party Information | Yes, by opting out of communications in your preferences or by using the unsubscribe link at the bottom of any email or replying to request it. |

GG000018

| Why do we USE your information? | Do we SHARE this information with others? | What information is shared? | Can you limit this sharing? |
|---|---|---|---|
| Behavioral or Interest-based Advertising (to send you focused advertising) | Yes, with service providers and network advertisers (as described under "Behavioral or Interest-based Advertising") | General Information Elements of your Personal Information such as Name, Address, Email Address, and Phone Number. Third Party Information | Yes, you may exercise your options to not receive behavioral advertising, including targeted ads about GateGuard products on certain third party sites, as described in -Tracking and Behavioral or Interest-Based Advertising- below. You must address this with the advertising platforms directly. |
| To develop new products and services | Yes, with our affiliates for their own product and service development and with consultants or other third parties under contract with us to develop products and services, such as engineers, web developers and the like | General Information Third Party Information | No |
| As part of our thought leadership on the impact and risk of identity theft, and for education | Yes, with our affiliates and third parties but this information will not be used to identify any single individual | Aggregate information that is derived from your Personal Information, meaning general statistics, summaries and the like | No |
| To investigate misconduct or a crime, to comply with law, or when we believes it is necessary to protect our rights, property or safety or that of others | Yes, with law enforcement, attorneys, officers of the court, arbitrators, mediators and others involved in any judicial proceeding, court order, legal process or the like | General Information Personal Information Third Party Information | No |
| To conduct data analysis and research relating to the risk and prevention | Yes, with our affiliates and third parties under contract with us to protect the | General Information Personal | No |

GG000019

| Why do we USE your information? | Do we SHARE this information with others? | What information is shared? | Can you limit this sharing? |
|---|---|---|---|
| of identity theft and related crimes | information; to law enforcement or other government entity | Information Third Party Information | |
| In connection with our sale, purchase, merger or reorganization | Yes, with the acquiring, purchasing, or other applicable entity, including, without limitation, legal and financial advisors and other persons or entities as appropriate | General Information Personal Information Third Party Information | No |

**Security Standards**

The security of your Personal Information is important to us and we have put into place multi-layered technical, physical and procedural measures to help keep it safe. For example we keep Personal Information encrypted during transit and at rest using strong encryption technology and employ proactive monitoring and other tools to protect against unauthorized access. We work with third parties on an ongoing basis to keep our practices current and undergo annual third party audits that examine our practices on security and privacy.

Despite our mutual efforts, you understand and agree that perfect security does not exist and understand that there is a certain amount of risk inherent in providing and receiving services over the internet. The Services" security also depend upon your commitment to keep your Personal Information safe. You agree to use your Personal Information in a reasonable way and to avoid recklessly disclosing your Social Security number, financial account numbers or other Personal Information to those that could improperly use or disclose it. For example, take care not to visit sites that may transmit malware, or to respond to -phishing- scams, unsolicited emails, or pop-up messages requesting your Personal Information. You may have the opportunity to participate in contests, blogs, promotions or other functions by way of the Site. Use caution when deciding to disclose your information in such a submission as these functions may be provided by a Third-Party Site and subject to terms which are different than those stated in this Privacy Policy.

**Social Media**

Our Site may include Social Media Features, such as the Facebook Like button and widgets, such as the "Share this" button or interactive mini-programs that run on our Site. These features may collect your IP address, which page you are visiting on our Site, and may set a cookie to enable the feature to function properly and for other purposes. Social Media Features and Widgets are displayed on our Site, but are hosted by the third party identified in the widget. These Social Media Features and Widgets are subject to their own privacy policies, not this one, and their privacy practices may differ from those on this Site.

**Testimonials**

We display personal testimonials of customers on our site in addition to other endorsements. With your consent we may post your testimonial along with your name.

**Children's Privacy**

We believe it is important to provide added protection for children on the internet and encourage parents and guardians to work with their children to understand how to be safe online. Our Services and Site are not intended for the use by

GG000020

anyone under the age of eighteen (18) and they are not welcome to use the Site or Services or have them set up or enabled for their use by anyone.

**Marketing**

If you provide us with your email address or mailing address, you may receive marketing messages and materials from us or our affiliates. You have choices on what communications you want to receive from us. Marketing materials for our Services may also be included in messages you receive from our partners or service providers that offer our services as part of a special offer. If you choose not to receive marketing communications that we send, we will honor your request. However, we will continue to communicate with you as needed to provide the Services, respond to your inquiries or otherwise relay service related messages. You may still receive information about our Services through other parties using their own mailing lists.

**Tracking and Behavioral or Interest-based Advertising**

Currently, we do not honor browser requests not to be tracked online (known as -Do Not Track-). You may opt-out, however, of being tracked for purposes of online advertising as discussed in this section.

We partner with third parties to either display advertising on our Site or to manage our advertising on other websites. For example, we use third parties such as network advertisers to display advertisements on our websites and other websites you may visit. Network advertisers are third parties that display advertisements based on your visits to our Site as well as other websites. This enables us and these third parties to advertise more effectively by displaying ads for products and services in which you might be interested. Third party ad network providers, advertisers, sponsors and/or traffic measurement services may use some of the technologies described in this policy, such as cookies, JavaScript, web beacons (including clear GIFs) to measure the effectiveness of their ads and to personalize advertising content to you. This helps us, and them, provide advertising content to you that is more relevant and tailored to your interests. As with links to other websites that may be found on our Site, these Tracking Technologies are governed by each third party's privacy policy, not this one.

We may provide these third-party advertisers with non-personally identifiable information about your usage of our Site and our Services, as well as aggregate or non-personally identifiable information about visitors to our Site and users of our Services. We do not provide these third parties with your Personal Information. If you don't want us to show you interest-based ads or share interest-based behavioral data with third parties, you can opt out (see below). Understand that even after opting out you will still see online ads. Opting out only means that network members from whose ad networks you have opted out will no longer deliver targeted content to you. You may continue to see interest-based advertisements from other parties from whom you have not opted out, or from companies that have not adopted the self-regulatory standards for online behavioral advertising that we follow. You will also continue to receive generic ads that aren"t targeted based on your visits to multiple websites.

You may opt-out of many third-party ad networks, including those operated by members of the Network Advertising Initiative ("NAI") and the Digital Advertising Alliance ("DAA"). For more information and available choices for third-party ad networks operated by NAI and DAA members, please visit their respective websites: www.networkadvertising.org/optout_nonppii.asp (NAI) and www.aboutads.info/choices (DAA). Opting out of these networks does not otherwise limit the collection of Personal or General Information described elsewhere in this Policy.

As noted, we also participate in third party ad networks and use cookies to improve the performance of our advertising on third-party websites, including to display ads about GateGuard products on these sites. You may control our use of the General Information we collect about your activities on our Site to display targeted GateGuard advertising during your visits to third party websites. Opting out of participation in GateGuard"s targeted advertising does not opt you out of our use of General Information for other purposes, such as analytics supporting optimization of our Site or development of new products and services.

 Note: If your browser is configured to reject cookies when you visit the opt-out page, or you subsequently erase your cookies, use a different computer or change web browsers, your opt-out may no longer be effective. Additional information is available on TRUSTe-s, NAI's and DAA's websites accessible by the above links.

**Special Notice to California Consumers**

If you are a California resident, California Civil Code Section 1798.83 permits you to request information regarding the disclosure of your Personal Information to third parties for the third parties' direct marketing purposes. We may share

your Personal Information with our affiliates for direct marketing, but we do not sell it to or share it with unaffiliated third parties. You may request a list of our affiliates by contacting us in the manner set forth in the -Contact Us- paragraph below. You may make one request per calendar year. In your request, please attest to the fact that you are a California resident and provide a current California address for your response. Please allow up to thirty (30) days for a response.

**Your Access to Your Information**

You may access, update and correct the Personal Information you have provided to us on the Site by logging into your member portal and selecting the account or member information options. If you are not a member and want to know what Personal Information we have about you, you need to contact us in the manner set forth in the -Contact Us- paragraph below. Please allow up to thirty (30) days for a response. If you cancel your Services, we may retain your information in accordance with this section. We will retain your information as follows:

- for as long as your membership is active

- as needed to provide you Services

- as required by company policy or legal obligation

- as needed to resolve disputes

- as needed to enforce our agreements

**Contact Us**

If you have any questions about this Policy, please contact us using the contact forms linked from our homepage. We do not accept or respond to cold emails from non-clients and non-vetted contacts that do not use the contact form. You hereby agree that we may use and disclose any suggestions, ideas, concepts, or information (other than your Personal Information) that you provide to us regarding the Privacy Policy, our business, or any other matter, without obligation to you or any third party.

**Definitions Used in this Policy**

**Cookies**. Cookies are small text files that are stored by a user's web browser on the hard drive of a user's computer. Cookies can "remember" what information a user accesses on a particular web page to simplify subsequent interactions with that website by the same user, or cookies can use that information to streamline the user's transactions on related websites. The cookies we use on our Site may be "session" cookies that are erased when you leave the Site, or they may be "persistent" cookies that remain on your computer's hard drive after you leave the Site. We may also use a cookie installed by third parties to provide us with usage information regarding the Site. The cookies we use do not capture your Personal Information. We may also set cookies when you register at the Site, and may do so without notice to or permission from you or any third party. Users can control the use of cookies at the individual browser level. If you reject cookies, you may still use our Site, but features or areas of our Site may not function properly.

**General Information** refers to information about your use of the Site that is gathered automatically. General Information does not identify you individually, but helps us better understand how the Site is used.

**Log Files**. As is true of most web sites, we gather certain information automatically and store it in log files. This information may include internet protocol (IP) addresses, browser type, internet service provider (ISP), referring/exit pages, operating system, date/time stamp, and/or clickstream data.

**Personal Information** means information, or a combination of pieces of information, that reasonably could allow us to identify you. Personal Information includes things like your name, address, date of birth, social security or driver's license number.

**Third Party Information** refers to information that may be gathered on our behalf or which we lawfully obtain from third parties outside of this Site.

**Tracking Technologies** refers to technologies such as Cookies, JavaScript, Web Beacons (including clear GIFs), and Flash Local Storage Objects (Flash LSOs).

**Site** refers to this website, www.GateGuard.xyz

**Services** refers to any services which may be offered by GateGuard, from time to time, whether through the Site and/or offline, including any products or services for which you must register or enroll, as well as any on-line promotions that

GG000022

are associated with our Services, unless we tell you otherwise.

**Web Beacons / GIFs.** We employ (either directly or through one of our third party advertising partners) a software technology called clear gifs (a.k.a. Web Beacons/Web Bugs), that help us better manage content on our Site by educating us on what content is effective. Clear gifs are tiny graphics with a unique identifier, similar in function to cookies, and are used to track the online movements of Web users. In contrast to cookies, which are stored on a user's computer hard drive, clear gifs are embedded invisibly on Web pages and are about the size of the period at the end of this sentence.

We also use clear gifs in our HTML-based emails to let us know which emails have been opened by recipients. This allows us to gauge the effectiveness of certain communications and the effectiveness of our marketing campaigns.

*       *       *       *       *

**GG000023**

# GateGuard INC

Governing Law and Dispute Resolution
Last Revised: Oct 30, 2017, 10:00 PM

Below are certain legal terms which apply to your purchase and use of the Services offered by GATEGUARD INC, a Delaware Corporation (hereinafter referred to as "GateGuard", "Teman" "LookLock", "we", "us", or "our") including through our website at: https://gateguard.xyz or https://teman.com (the "Site"). These terms will apply to your use of the Site and any Services acquired by you from us, whether subscribed to through the Site or offline, unless otherwise agreed in writing between GateGuard and you.

This document is an integral part of our Terms of Service, which are available at: https://gateguard.com/legal/terms.php  ("Terms"), and is incorporated into the Terms by reference. Capitalized terms which are used but are not defined herein, shall have the meaning ascribed to them in the Terms.

**Governing Law** - The Terms and your use of the Site will be governed by and interpreted in accordance with the laws of the State of Delaware and the United States of America, without regard to its conflict-of-law provisions.

**Jurisdiction** - You and we agree to submit to the personal jurisdiction of a state court located in Delaware, USA or a United States District Court located in Delaware for any actions for which the parties retain the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents, or other Intellectual Property rights. You agree that in the event we have prior agreements, which may or may not specify a different jurisdiction, the terms of this agreement override those agreements and terms.

Arbitration - Notwithstanding anything to the contrary contained herein, you and GateGuard agree that any dispute, claim or controversy arising out of or relating to the Terms or the breach, termination, enforcement, interpretation or validity thereof, or to the use of the Site will be settled by binding arbitration, except that GateGuard alone retains the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a its copyrights, trademarks, trade secrets, patents, or other Intellectual Property rights. GateGuard may refuse arbitration at any point and demand a trial. You agree that no arbitration organization that has found in favor of Airbnb may serve as an arbiter. You acknowledge and agree that you are waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Further, unless both you and GateGuard otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding. If this specific paragraph is held unenforceable, then the entirety of this "Dispute Resolution" section will be deemed void. Except as provided in the preceding sentence, this "Dispute Resolution" section will survive any termination of the Terms.

**Arbitration Rules -** The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this "Dispute Resolution" section. (The AAA Rules are available at  www.adr.org/arb_med  or by calling the AAA at 1-800-778-7879.) The Federal Arbitration Act

GG000024

will govern the interpretation and enforcement of this section.

**Arbitration Process -** A party who desires to initiate arbitration must provide the other party with a written Demand for Arbitration as specified in the AAA Rules. The AAA provides a form Demand for Arbitration. The arbitrator will be either a retired judge or an attorney licensed to practice law in the state of Delaware and will be selected by the parties from the AAA's roster of consumer dispute arbitrators. If the parties are unable to agree upon an arbitrator within seven (7) days of delivery of the Demand for Arbitration, then the AAA will appoint the arbitrator in accordance with the AAA Rules. You accept responsibility to pay any AAA filing, administrative and arbitrator fees.

**Arbitration Location and Procedure -** Unless you and GateGuard otherwise agree, the arbitration will be conducted in the county where GateGuard conducts its business. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and GateGuard submit to the arbitrator, unless you or we request a hearing or the arbitrator determines that a hearing is necessary. You agree the maximum liability is $10,000. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration. Arbitrator's Decision - The arbitrator will render an award within the time frame specified in the AAA Rules. The arbitrator's decision will include the essential findings and conclusions upon which the arbitrator based the award. Judgment on the arbitration award may be entered in any court having jurisdiction thereof. The arbitrator's award damages must be consistent with the terms of the "Limitation of Liability" section above as to the types and the amounts of damages for which a party may be held liable. The arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. If you prevail in arbitration you will not be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law. GateGuard will seek, and does not waive all rights it may have under applicable law, to recover attorneys' fees and expenses if it prevails in arbitration.

**Limitations -** You hereby undertake and agree: (i) to never sue us;  (iii) never to countersue us, (iv) to pay us a nonrefundable $5000 service fee for every individual call, email, or other from any attorney you hire or ask to contact us; (v) that we may order a freeze of your financial accounts, personal and business if we feel you are in breach of any agreement or in arrears; (vi) the rights you confer to us remain ours in any jurisdiction in any country and are eternal and irrevocable, even upon cancellation of services, and even if you do not register for our services; (vii) to waive any and all immunity and to not claim immunity that might otherwise be offered to you as an officer of the court or otherwise, whether you are an attorney, law enforcement, or otherwise; or (vii) that we may withdraw fees from your accounts, in any way we'd like, at any time. You further agree to first make all claims for damage to your insurance company before contacting us. You agree to provide us with a full, written report from your insurance company regarding any claims of damage.

YOU ACKNOWLEDGE AND AGREE THAT ANY CAUSE OF ACTION THAT YOU MAY HAVE ARISING OUT OF OR RELATED TO THE SITE MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED. Notwithstanding anything else contained herein, you agree not to seek injunctions against the operating of GateGuard in away. You agree that no damage is caused from GateGuard crawling or scraping any website.

PLEASE NOTE: GateGuard RESERVES THE RIGHT TO AMEND THE TERMS CONCERNING GOVERNING LAW AND DISPUTE RESOLUTION SET FORTH HEREIN, FROM TIME TO TIME IN ITS SOLE DISCRETION. If GateGuard changes such terms after the date you first accepted the Terms (or accepted any subsequent changes to the Terms), you may reject any such change by sending us written notice (including by email) within 30 days of the date such change became effective. By rejecting any change, you are agreeing

GG000025

that you will resolve any dispute between you and GateGuard in accordance with the provisions set forth herein as of the date you first accepted the Terms (or accepted any subsequent changes to the Terms).

EXHIBIT B

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK

2  ------------------------------x

3  GATEGUARD, INC.,

4                  Plaintiff,

5          v.                          19 CV 2472 (RA)

6  MVI SYSTEMS LLC, et al.,

7                  Defendants.

8  ------------------------------x
                                    New York, N.Y.
9                                   January 15, 2020
                                    2:10 p.m.
10

   Before:
11

                       HON. RONNIE ABRAMS,
12

                                       District Judge
13

                          APPEARANCES
14

   FISHER BROYLES, A LIMITED LIABILITY PARTNERSHIP
15      Attorneys for Plaintiff
   BY:  ARIEL REINITZ
16

   THE ENGEL LAW GROUP, PLLC
17      Attorneys for Defendants
   BY:  ADAM ENGEL
18

19

20

21

22

23

24

25

```
 1              (Case called)

 2              THE DEPUTY CLERK:  Counsel, please states your name

 3    for the record.

 4              MR. REINITZ:  Ariel Reinitz for plaintiff GateGuard,

 5    Inc.

 6              THE COURT:  Good afternoon.

 7              MR. ENGEL:  Good afternoon.  Adam Engel for MVI

 8    Systems LLC and Samuel Taub.

 9              THE COURT:  Good afternoon.

10              I scheduled today's proceeding to discuss the

11    defendants' motion to dismiss the first amended complaint.

12    Neither side requested oral argument.  So I wasn't inclined to

13    have it.  I am ready to rule.

14              With that being said, if there's something you want to

15    say, I promise to keep an open mind.  I know it's a little bit

16    awkward.

17              MR. ENGEL:  If you could give us a hint of how you are

18    prepared to rule, we might --

19              THE COURT:  I think I'll just proceed, and I'll rule

20    the way I had planned on ruling.

21              So I am granting defendants' motion in part and

22    denying it in part.  Specifically, Counts One, Two, Three,

23    Five, and Ten survive.  But Counts Four, Six, Seven, Eight,

24    Nine, and Eleven are dismissed.

25              I'm going to just state my ruling for the record.  I'm
```

1    going to do it orally because I just think it's a little more

2    efficient and we can move forward.  I also wanted to say a few

3    things, particularly to plaintiff's counsel.

4         I'm going to assume the parties' familiarity with the

5    facts alleged in the complaint.  At this stage, the allegations

6    are to be accepted as true and construed in the light most

7    favorable to plaintiff.

8         I want to pause here and take a moment to note that

9    the facts alleged in this case are, at the very least, unusual.

10   Defendants I think fairly describe plaintiff's allegations as

11   strange, and defendants present serious and very legitimate

12   arguments as to why some of these allegations might ultimately

13   be untenable.

14        But while I am somewhat skeptical of the allegations'

15   ultimate viability and even veracity, I must, at this stage,

16   accept plaintiff's allegations as true.  So I'm going to do

17   that.

18        But I want to caution both plaintiff's counsel and

19   plaintiff that if you become aware or at any point throughout

20   this litigation become aware that the complaint's allegations

21   lack a proper factual basis, you must promptly notify opposing

22   counsel and the Court and amend the pleadings.  I want to be

23   clear that if you fail to do so, I will not hesitate to issue

24   sanctions.

25        I'll also note, as it is within my discretion, I'm not

1    going to convert defendants' motion to one for summary judgment

2    because of the existing factual disputes and a lack of

3    discovery.  I agree with plaintiff that converting it now would

4    be premature.

5         So with all of that said and with that warning in

6    place, I'll state the familiar legal standard for the record.

7    To survive a motion to dismiss, the plaintiff must plead enough

8    facts to state a claim to relief that is plausible on its face.

9         A claim has facial plausibility when it contains

10   factual content that allows the Court to draw the reasonable

11   inference that the defendant is liable for the misconduct

12   alleged.  Those standards are of course from *Twombly* and *Iqbal*.

13        Plaintiff first alleges misappropriation of technical

14   and business trade secrets under both the federal Defend Trade

15   Secrets Act and New York law.  I'll analyze the two claims

16   together because the requirements for showing misappropriation

17   of a trade secret are similar under state and federal law.

18        Plaintiff's claim that defendants misappropriated its

19   technical trade secret survives the motion to dismiss.  The

20   alleged trade secret, which consists of proprietary

21   connectivity capabilities, image processing technologies to

22   enhance the accessibility and security capabilities of its

23   intercom, a backend software program that automated numerous

24   aspects of the tenant enrollment process, and a unique

25   tamper-proof locking mechanism, and purportedly took several

1    years and hundreds of thousands of dollars for Teman to

2    develop, is described with sufficient particularity in the

3    complaint.

4         Courts in this district have previously concluded that

5    similar descriptions of alleged technical trade secrets are

6    sufficient.  See e.g. *Metidata Solutions v. Veva Systems*, 2018

7    WL 7163349 at 1 and 3.

8         Plaintiff also plausibly asserts that it took

9    reasonable measures to maintain the secret by having its

10   personnel, customers, prospective customers, and any other

11   relevant parties, including Defendant Taub, execute detailed

12   confidentiality agreements.  Confidentiality agreements are a

13   commonly used and accepted means of protecting trade secrets.

14   See e.g., the *Expert Connect* case, 2019 WL 3004161 at 4.

15        Finally, plaintiff plausibly alleges that defendants

16   misappropriated the technical trade secrets by breaching the

17   confidentiality agreement which Taub reconfirmed acceptance of

18   on the phone or allegedly did so.

19        Defendants argue that the terms on plaintiff's website

20   do not constitute an enforceable agreement.  But reading the

21   first amended complaint liberally and in plaintiff's favor, as

22   is required at this stage, the complaint sufficiently alleges

23   that Taub was presented with and indicated his acceptance of

24   the terms.

25        This is enough to create a factual dispute as to

1   whether Taub was a reasonably prudent user on inquiry notice of

2   the terms of the contract on the website to be resolved at a

3   later stage of this litigation.  And part of that was a quote

4   from the *Berkson v. Gogo* case.  That's 97 F.Supp. 3d.

5        Moreover, under the DTSA and New York law,

6   misappropriation can be broader than a contract breach.  By

7   asserting that Taub obtained this information by deceit any

8   claiming to be a potential reseller of plaintiff's products,

9   plaintiff also plausibly alleges that he acquired this

10  information by improper means.

11       Plaintiff's claim that its business trade secrets,

12  including prospective and current customer lists and

13  proprietary sales and promotional sales, business plans, and

14  pricing insights, were misappropriated, however, is not

15  sufficiently pled.

16       Plaintiff has not asserted when or how defendants used

17  its customer lists or pricing information.  Without details

18  such as how the defendants allegedly misused the customer list

19  or identifying any customers who were supposedly contacted or

20  solicited, this claim is too conclusory to withstand

21  defendants' motion.  Plaintiff, however, is granted leave to

22  amend its business trade secret allegations, if it chooses to.

23       Next, pursuant to 35 U.S. Code, Section 256, plaintiff

24  seeks correction of the 831 patent which was granted in

25  December 2018 in order to have Teman added to the patent as the

1    inventor and Taub removed.

2            Defendants oppose this claim solely on the ground that

3    a district court lacks jurisdiction over a pending patent

4    application.  But plaintiff, as I understand it, does not seek

5    to correct the pending 546 patent.  It only seeks to correct

6    the 831 patent which has already been granted to defendants.

7    Thus, plaintiff's Section 256 claim survives the motion to

8    dismiss.

9            Additionally, in the event that the status of the

10   pending 546 patent has changed since the complaint's filing,

11   plaintiff is granted leave to amend this claim.

12           In addition to relief under 256, plaintiff also seeks

13   a declaratory judgment that he is the proper inventor of the

14   831 patent and pending 546 patent.  This claim must be

15   dismissed.

16           With regard to the 831 patent, a request for

17   declaratory relief relating to inventorship is the functional

18   equivalent of actions formally brought pursuant to 256 and

19   thus merely duplicative of the relief sought under 256.

20           As to the pending 546 patent, as already noted, this

21   Court lacks jurisdiction to modify inventorship of a patent

22   before the application is granted.

23           The complaint also includes a number of state law

24   claims.  Two of the state law claims survive defendants' motion

25   to dismiss.  The others do not.

1           First, plaintiff asserts a breach of contract claim.

2    It alleges that defendants breached the terms on plaintiff's

3    website to which Defendant Taub reportedly agreed to, including

4    the provisions that bar copying of content provided by

5    plaintiff or making commercial use of any of plaintiff's

6    proprietary materials.

7           Defendants again raise serious and viable arguments

8    that the website's terms do not constitute a binding agreement

9    because Defendant Taub received nothing in consideration for

10   visiting the website or there was no meeting of the minds.

11          But at this stage, accepting plaintiff's allegations

12   that Taub had notice of the terms when he used the website and

13   filled out the contact form in a manner that could manifest

14   assent to contract terms, this claim survives.  I expect that

15   I'll revisit these issues as the case develops.

16          Plaintiff also alleges unfair competition by

17   misappropriation of its labor, skill, and expenditures.  The

18   possessor of a trade secret states a claim for unfair

19   competition when it alleges that it was harmed by the

20   defendants' misappropriation of labor, skills, or expenditures

21   from the trade secret's owner.

22          Where an unfair competition claim and a

23   misappropriation claim arise from the same factual predicate,

24   the two claims generally rise or fall together.

25          Accordingly, because the Court already concluded that

1  plaintiff's federal and state trade secret misappropriation

2  claims survive defendants' motion to dismiss, so too does

3  plaintiff's unfair competition claim.

4       The complaint's five remaining state law claims do not

5  survive defendants' motion to dismiss.

6       First, conversion.  Plaintiff allege conversion under

7  New York law which requires a showing that the unauthorized

8  assumption and exercise of the right of ownership over goods of

9  another to the exclusion of the owner's rights.

10      The claim's exclusion element inquires whether the

11  defendant exercised an unauthorized dominion over the thing in

12  question to the alteration of its condition or to the exclusion

13  of the plaintiff's rights.

14      But plaintiff only conclusory states that defendants

15  assumed and exercised an unlawful right of ownership over

16  GateGuard's proprietary technology, business intelligence, and

17  substantial skill and expenditures to the exclusion of

18  GateGuard's rights without demonstrating how the good was

19  either altered or excluded from use or alleging it.  Plaintiff

20  only alleges that the product was copied, which is insufficient

21  to establish conversion under New York law.

22      Plaintiff next alleges that defendants committed

23  tortious interference with its business relationships, but the

24  complaint does not demonstrate interference with specified

25  business relationships with a third party.

1          Generalized allegations of impairment to plaintiff's

2     ability to attract new business will not suffice.  That's a

3     quote from *Mobile Data Shred*, 2000 WL 351516 at 7.  This claim

4     is therefore dismissed, but plaintiff will be given leave to

5     amend this claim.

6          Defendants' motion to dismiss is also granted as to

7     plaintiff's fraud claim.  Even assuming that plaintiff has

8     adequately alleged fraud with particularity, under New York

9     law, the alleged losses stemming from a fraud must be the

10    direct, immediate, and proximate result of the

11    misrepresentation.  The damages must also be independent of

12    other causes.

13         Plaintiff only alleges harm stemming from defendants'

14    misappropriation of its trade secrets, not any harm suffered

15    separately as a result of disclosing proprietary information to

16    Defendant Taub.  Accordingly, plaintiff has failed to state a

17    claim for fraud.

18         Plaintiff also alleges unjust enrichment, but this

19    claim is available as a cause of action only in unusual

20    situations when the defendant has not breached a contract nor

21    committed a recognized tort, circumstances create an equitable

22    obligation running from the defendant to the plaintiff.

23         An unjust enrichment claim is therefore not available

24    where it simply duplicates or replaces a conventional tort or

25    contract claim.  Here, the gravamen of plaintiff's unjust

1    enrichment claim is the same as plaintiff's trade secret

2    misappropriation claim.  Accordingly, it is duplicative and

3    must be dismissed.

4           Lastly, plaintiff alleges a breach of the implied duty

5    of good faith and fair dealing.  New York law does not

6    recognize a separate cause of action for breach of the implied

7    covenant of good faith and fair dealing when a breach of

8    contract claim based upon the same facts is also pled.

9           Yet, this claim is based on the same facts,

10   misappropriating and unlawfully using and disclosing

11   GateGuard's trade secrets and confidential information --

12   that's a quote from the complaint at paragraph 251 -- that the

13   breach of contract claim is predicated on.  Thus, the claim

14   must also be dismissed.

15          So that's my ruling.  Just to summarize, the motion is

16   denied as to Counts One and Two for the misappropriation of

17   technical trade secrets under federal and state law; Count

18   Three, for correction of inventorship under 256; Count Five,

19   for breach of contract; Count Ten, for unfair competition.

20          But defendants' motion is granted as to Counts Four

21   for declaratory judgment, Six for conversion, Seven for

22   tortious interference with business relationships; Eight for

23   fraud, Nine for unjust enrichment, and Eleven for breach of the

24   implied duty of good faith and fair dealing.

25          Plaintiff is granted leave to amend the complaint as

1   to the following claims:  Counts One and Two for

2   misappropriation of plaintiff's business trade secrets; Three,

3   for correction of inventorship in the event that the status of

4   the pending 546 patent has changed since the filing of the

5   complaint; Count Seven for tortious interference with business

6   relationships under New York law.  Should plaintiff choose to

7   amend, it must do so within 30 days.

8           That's my ruling.  You'll have the transcript as to my

9   reasoning, but I will issue an order tomorrow just stating

10  exactly what remains and what doesn't.

11          MR. ENGEL:  Your Honor, a clarification on what you

12  just said.  You said the plaintiff is given leave to amend

13  Counts One and Two which I believe were not -- my understanding

14  is those were not --

15          THE COURT:  Sorry.

16          MR. REINITZ:  With respect to the business.

17          THE COURT:  Exactly.  Only with respect to the

18  business trade secrets.

19          MR. ENGEL:  The customer list.

20          THE COURT:  Exactly, and the pricing information.  It

21  was the customer lists and the pricing information.

22          Did you have something else?

23          MR. ENGEL:  I know you just read your ruling.  May I

24  address one of the causes of action?

25          THE COURT:  Go ahead.

1           MR. ENGEL:  As far as the breach of contract goes, I

2     know that the complaint says that my client agreed to the terms

3     of service on the website, but it never says how.

4           To me, that read as a conclusory statement.  I think

5     it's a legal conclusion whether someone assents to certain

6     terms.  They may nod.  They may sign something.  They may email

7     somebody, whatever it is.  It never really says in there, in

8     the complaint, what my client actually did.  I think that would

9     help guide discovery moving forward in the case.

10          Was it just a visit to the website?  I believe that

11    filling out a form -- the complaint never says the form says on

12    it, if you fill out this form and hit submit, you agree to the

13    terms of service.  It never says that in the complaint.  So I'm

14    not sure where or how --

15          THE COURT:  I thought it did say that he filled out

16    the attached form and that he saw the terms.  Right?

17          MR. ENGEL:  It says he saw the terms.

18          THE COURT:  Yes.

19          MR. ENGEL:  It also says he filled out a form.  But it

20    doesn't say that that form says in it that by agreeing or

21    filling out this form, you hereby agree to the terms of

22    service.  It never connects those two things.

23          So there's terms of service maybe on the back end of a

24    website if you happen to click on it.  And I understand

25    your Honor has to take that as a well-pleaded fact that my

1    client has read the terms of service.  But by filling out a

2    form -- I don't see any allegation in the complaint that says

3    filling out that form manifests assent to the terms of service.

4          Maybe I'm somewhat new to the case.  Maybe Mr. Reinitz

5    could direct me to the paragraph.

6          MR. REINITZ:  I'm reading it.  Paragraph 75 of the

7    first amended complaint:  While navigating the website, Taub

8    further accessed an interactive web form, through which he was

9    presented with GateGuard's terms of service."  That's paragraph

10   75.

11         THE COURT:  There is also an allegation with respect

12   to a phone call following --

13         MR. REINITZ:  Right.

14         THE COURT:  Let me just find that paragraph.

15   Paragraph 89 of the complaint reads:  "During the referenced

16   communications, Teman reconfirmed Taub's acceptance of the TOS,

17   terms of service, including the confidentiality, nondisclosure,

18   IP ownership, and other clauses referenced above."

19         Also in paragraph 85 -- I actually think the one I

20   read is probably the best one.

21         MR. ENGEL:  One at a time.

22         THE COURT:  Sure.

23         MR. ENGEL:  So paragraph 75 -- it says he was

24   presented with the terms of service.  Any website that you go

25   to has a terms of service link.  There's a privacy policy in

1      terms of service.

2             THE COURT:  Look at paragraph 77:  "Taub then

3      proceeded to submit the completed form indicating his

4      acceptance of the terms of service."  And then you have the

5      follow-up phone calls.

6             MR. ENGEL:  Read as a whole, the complaint seems to me

7      to read that by filling out that form, you thereby assent to

8      the terms of service.  It does not say anywhere in here that

9      there's a button that says, I hereby agree to the terms of

10     service with a link to that.

11            It doesn't explain a sort of video camera of what

12     happened that led to the permissible legal conclusion that he

13     assented to anything.  That sounds to me like a restatement of

14     the legal theory, that by filling out a form, one accepts the

15     terms of service on a website.

16            Maybe that could be quickly cleared up.  I've drafted

17     many complaints in my day.  And sometimes you sort of fail to

18     connect the dots.  If the website actually has a button or a

19     link to the terms of service and when you fill out the form by

20     saying, listen.  If you engage with us and waste our time and

21     want us to call you back about this, you have to agree to the

22     terms of service, that wouldn't shock me that a website would

23     say that.  But this complaint doesn't describe any website

24     doing that.

25            THE COURT:  Do you want to respond?

1          MR. REINITZ:  Sure.  Obviously this is off the cuff

2     here.  So don't hold me to it.  But as I've reviewed it -- this

3     is an issue for discovery -- the website interface, which is

4     different than it is today -- I think that was an issue raised

5     by prior counsel.

6          The website interface, as it was when Mr. Taub

7     accessed it, there was a form.  The form was providing some

8     contact information.  There may have been a box for a message.

9     I don't recall.

10         It said, by submitting this form, you hereby agree or

11    accept, or whatever the language is, to the terms of service

12    which were provided there as a link.  There may have been a

13    check box; there may not have been.

14         But that interface, within that same interface -- it

15    was on the bottom of the web page.  In order to submit that

16    form, the user would be presented with the terms and would, by

17    submitting them, affirmatively acknowledge that they've

18    accepted the terms

19         MR. ENGEL:  So what was just described, the first

20    thing that was just described -- to me that is what I'm talking

21    about.  Without getting into any of the details or conceding

22    the validity of the contract, that would strike me as a better

23    drafting of this cause of action.

24         While I know your Honor is not going to dismiss it on

25    that, might we sort of agree amongst ourselves that it might

1   make sense to add that allegation?  If the plaintiff intends to

2   re-file or amend the complaint, I think it would be helpful to

3   have that allegation in there, especially since it will be

4   subject to discovery.  I would like to see that affirmatively

5   stated so that we know what we're chasing.

6            THE COURT:  I think that's a good idea.

7            Do you have any objection to clarifying that?

8            MR. REINITZ:  I don't.  Frankly, I'm not sure I fully

9   appreciate the difference.  I'm more than happy -- to the

10  extent we're already going to file an amended complaint, I'm

11  happy to provide that additional detail.

12           THE COURT:  I think that can be clarified.  What I was

13  making reference to earlier of what I agreed was "strange"

14  is -- there are some things that we just need to figure out in

15  discovery, what was the consideration for this purported

16  contract.

17           But just the notion that he is going to disclose all

18  of these secrets to a stranger seems somewhat hard to believe.

19  Again, I'm taking the facts as alleged to be true.  But I am

20  skeptical, which is why I wanted to warn you with respect to

21  sanctions.

22           If this is a situation where you end up wasting

23  counsel's time and the defendants' money, your client should be

24  prepared to face sanctions.

25           MR. REINITZ:  I understand.

1          THE COURT:  I want that message to be heard loud and

2     clear by your client, who I know has litigated a number of

3     different cases.

4          MR. REINITZ:  It is, your Honor.  If I may shift gears

5     for a minute.

6          I don't know if there was another issue you wanted to

7     raise.

8          MR. ENGEL:  Moving forward, I wanted to touch on

9     discovery and the Court's order based on the letter submission

10    from the parties.

11         It struck me that the parties' letter -- sorry.  I

12    don't have the docket number.  The parties submitted a letter

13    that said something to the effect of vacating the entire

14    scheduling order until the motion to dismiss was decided.  And

15    your Honor put in some text that said the parties' request to

16    stay the discovery hearing or the discovery conference is

17    granted until after the motion to dismiss.

18         THE COURT:  I don't remember how I phrased it.  I

19    don't have it in front of me, but I thought the idea was you

20    wanted to see what happened on the motion to dismiss.

21         MR. ENGEL:  I guess it's moot now.

22         THE COURT:  I think that's moot.  The issue now --

23    what I would propose is that you get together and you meet and

24    confer and look at my template.

25         We've never entered a case management plan, or we did?

 1    We did, but then it was followed by the letter that you're

 2    referencing.  Right?

 3              MR. ENGEL:  Right.

 4              MR. REINITZ:  That was followed by the motion to

 5    dismiss.

 6              THE COURT:  So you have the template.  Why don't you

 7    look at it again now.  Why don't you propose to me alternative

 8    dates.  I don't think we need to meet again, unless you think

 9    we need to.

10              The letter was just printed for me.  I could have made

11    this a little bit clearer by just clearly staying discovery

12    pending the motion to dismiss.  But as you noted, I think

13    that's moot.

14              So in terms of next steps, you should meet and confer.

15    You should submit to me a revised case management plan setting

16    forth dates.  You should talk to your clients about whether

17    settlement is a possibility, whether a referral to a magistrate

18    judge or mediation might be productive.

19              Judge Freeman is assigned to this case just for your

20    edification.  We also have an excellent mediation program.  I

21    don't have a preference.  It may be that you feel like you need

22    to do some discovery before that would even be worth while, and

23    I leave that to you.

24              But when I get that letter, assuming the dates you

25    propose are reasonable, I'll sign off on it.  If not, maybe

1   we'll have a telephone conference.

2           MR. REINITZ:  Your Honor, if I may, just to shift

3   gears here for a minute, since we're all here.

4           The best place to start, as far as I'm concerned, will

5   be with respect to 35 U.S. Code, Section 256, the correction of

6   the inventorship.

7           Since the time the complaint was filed and actually

8   since even the motion to dismiss was filed, there has been some

9   activity as far as the U.S. Patent Office is concerned,

10  specifically with respect to the ownership of the granted

11  patent -- I have it here.  I can submit it for the record.

12          The defendant, Mr. Taub -- it's the corporate entity

13  as well, MVI Systems -- filed an assignment to transfer the

14  ownership of the patent to another entity, MVI industries.

15          I don't know if you were involved in that transaction

16  or not.  But it seems to me sort of on paper -- I'm not really

17  sure what it seems to me.  But it does seem that something is

18  going on with respect to the ownership of certainly the patent

19  itself.  I understand there may have been a transaction with

20  respect to other assets of the company.

21          Certainly in the context whether it's an amended

22  complaint, it seems the current defendants may not have the

23  assets we are attempting to secure from them.  I'm not sure if

24  there are any assets anymore.

25          I was curious as to whether -- I don't know if you can

1    speak to that as to what's going on on the corporate side with

2    the defendants.

3            MR. ENGEL:  No.  I'm not the corporate lawyer.  I am

4    aware that there has been, I believe, an asset purchase

5    agreement between MVI Systems LLC and MVI Industries, Inc. or

6    LLC.  I forget.  That's really all I know about that.

7            MR. REINITZ:  My concern, your Honor, to be blunt, is

8    there is one or more fraudulent conveyances going on here

9    starting simply with the patent itself.  The patent, on the

10    face of it, as far as the patent office is concerned, when we

11    filed the case, was owned by MVI Systems.  That's who we're

12    attempting through the complaint to correct the inventorship of

13    and to ultimately secure the ownership of that patent.

14            The assignment here as recorded with the USPTO is

15    dated August 21 of this year.  So that's after the complaint is

16    filed, after even the motion to dismiss is filed.  Mr. Taub

17    transferred -- as the CEO of MVI Systems, assigned the patent

18    to another entity.

19            So I'm not sure -- I open that to your Honor, if there

20    are additional defendants that we need to add to the complaint

21    here in order to secure even just the rights to the patent

22    itself.

23            MVI Systems, as I understand it, may have no more

24    assets.  It may have transferred all their assets to a new

25    entity.  That entity itself -- either that was a fraudulent

1    conveyance or that entity will need to be added as a defendant

2    in this case in order for us to secure a judgment.

3            THE COURT:  In the case management plan, there's a

4    section that says you have this amount of time to amend the

5    complaint to add new parties or new causes of action.

6            So if there are parties you want to add, you can do

7    that once I make the decision on the dates in the case

8    management plan.  If I'm on trial or for some other reason I

9    may end up referring this for GPT to Judge Freeman.

10           I'm not sure if I'll do that yet.  In any event, you

11   should submit the proposed case management plan.  And I'll

12   either sign it or I'll refer it to her, and she'll handle it.

13           Thank you all for coming in today.

14           MR. ENGEL:  Thank you, your Honor.

15           (Adjourned)

16

17

18

19

20

21

22

23

24

25

EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

GATEGUARD, INC.,

        _Plaintiff_,                         Civil Action No.  1:19-cv-02472-RA

    v.

MVI SYSTEMS LLC;
SAMUEL TAUB,

        _Defendants_.

_____

## INITIAL DISCLOSURES OF PLAINTIFF GATEGUARD, INC.

Plaintiff GateGuard, Inc. ("GateGuard") hereby makes the following initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

GateGuard's disclosures are based on investigation and discovery of the facts and circumstances related to the claims in this litigation as of the date herein. GateGuard's investigation and discovery in this action are continuing. GateGuard reserves the right to amend, supplement, or modify these disclosures, as appropriate. GateGuard reserves the right to call any witness or present any exhibit or item at trial not listed here but identified through discovery, investigation, or otherwise. GateGuard also reserves all objections regarding the use of these Initial Disclosures for any purpose.

GateGuard is not disclosing documents or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. GateGuard does not intend these disclosures to constitute a waiver or limitation on any of its privileges, immunities, or other rights, including (1) the right to object on the grounds of competency, privilege, relevance, and materiality, hearsay, or any other proper grounds; (2) the right to object

to the use of any such information, for any purpose, in whole or in part, in any subsequent

proceedings in these actions or any other action; and (3) the right to object, on any and all

grounds (including on the grounds of burden or proportionality), to any other discovery request

or proceeding involving or relating to the subject matter of these disclosures. In addition, to the

extent any materials referenced herein contain confidential or proprietary information as

reasonably determined by GateGuard, GateGuard reserves the right to withhold such materials

from production until the parties have executed a protective order which is satisfactory to

GateGuard and has been entered by the Court.

By making these disclosures, GateGuard does not represent it is identifying every

document, tangible thing, or witness possibly relevant to all issues that may eventually be raised.

GateGuard's disclosures represent a good faith effort to identify information it reasonably

believes is required to be disclosed pursuant to Rule 26(a)(1).

Subject to the foregoing objections and qualifications, GateGuard makes the following

Initial Disclosures.

**I. Rule 26(a)(1)(A)(i):** The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

In addition to the named Defendants, GateGuard identifies the following individuals as

the persons who may have discoverable information supporting GateGuard's claims, excepting

from this disclosure any information possessed by any individual that GateGuard may use solely

for impeachment.

Ari Teman
CEO, GateGuard
5 Penn Plaza #2372,
New York, NY 10001
212-203-3714

2

<u>Subject of information</u>: GateGuard's technical and business development, GateGuard's operations; GateGuard's interactions with the named Defendants.

Jeff Katz
c/o GateGuard
5 Penn Plaza #2372,
New York, NY 10001
212-203-3714
<u>Subject of information</u>: GateGuard's technical and business development, GateGuard's operations.

Viktor Kaninets
c/o GateGuard
5 Penn Plaza #2372,
New York, NY 10001
212-203-3714
<u>Subject of information</u>: GateGuard's technical development.

Arya Xu
c/o GateGuard
5 Penn Plaza #2372,
New York, NY 10001
212-203-3714
<u>Subject of information</u>: GateGuard's technical development.

All individuals identified in the documents produced by the parties in this matter.
<u>Subject of information</u>: Presently unknown; generally the parties' claims and defenses.

Experts identified by the parties.
<u>Subject of information</u>: Damages and other information related to the parties' claims and defenses.

This information reflects GateGuard's current understanding and knowledge of the relevant facts and is subject to change as investigation into this case continues. GateGuard reserves the right to supplement these disclosures as the case progresses and/or from information gathered in connection with discovery. GateGuard reserves the right to call any and all additional fact witnesses revealed during investigation or discovery that have relevant information regarding this lawsuit.

**II. Rule 26(a)(1)(A)(ii):** A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

All documents, electronically stored information, and tangible things in the GateGuard's possession, custody, or control that GateGuard may use to support its claims or defenses are located at 5 Penn Plaza #2372, New York, NY 10001, or at off-site storage locations that can be accessed from these facilities, and will be disclosed in accordance with the Federal Rules of Civil Procedure, the Local Rules of this District, any order of the Court, and any agreement of the parties.

GateGuard is currently aware of the following categories of documents, electronically stored information, and tangible things in its possession, custody, or control that it may use to support its claims or defenses in this lawsuit, unless solely for impeachment.

- Documents and materials concerning GateGuard's technical development
- Documents and materials concerning GateGuard's business development
- Documents and materials concerning GateGuard's operations
- Communications between Teman and the named Defendants

By including any source herein, GateGuard does not concede that the information is in fact relevant, discoverable, or admissible, and GateGuard reserves all objections as to relevance, burden, proportionality, admissibility, and otherwise. GateGuard does not waive their right to withhold production of any document in its possession that is protected by the attorney-client privilege, the work product doctrine, or any other claim of privilege or immunity, or where production of such a document would be otherwise unlawful or prohibited. This information reflects GateGuard's current understanding and knowledge of relevant facts and is subject to change.

4

**III. Rule 26(a)(1)(A)(iii):** A computation of damages:

Without waiving its right to supplement this disclosure during discovery, and subject to expert testimony, the damages known to date are those asserted and detailed in GateGuard's First Amended Complaint, including compensatory damages, in addition to any damages allowed by law, including without limitation exemplary damages, punitive damages, civil penalties, and fees, costs, and disbursements, including reasonable attorneys' fees; permanent or temporary injunctive relief and declaratory relief; and other, further, or different relief as the Court deems just and reasonable.

**IV. Rule 26(a)(1)(A)(iv):** Any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment:

GateGuard is unaware of any applicable insurance agreements.

New York, NY
July 3, 2019

/s/ Ariel Reinitz
Ariel Reinitz
FISHERBROYLES, LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
(646)494-6909
Ariel.Reinitz@FisherBroyles.com
*Attorneys for Plaintiff*
*GateGuard*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2019, I served by electronic mail a true and correct copy of the foregoing Initial Disclosures upon counsel for all parties.

*/s/ Ariel Reinitz*
Ariel Reinitz