```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                             :
                                        Docket #19-cv-02472-
 GATEGUARD, INC.,                  :  LGS-GWG

                    Plaintiff,     :

   - against -                     :

 MVI SYSTEMS LLC, et al.,          :    New York, New
York
                                        August 4, 2020
                    Defendants.    :
                                        TELEPHONE CONFERENCE
----------------------------------- :
                    PROCEEDINGS BEFORE
            THE HONORABLE JUDGE DEBRA C. FREEMAN,
                UNITED STATES MAGISTRATE JUDGE
APPEARANCES:

For Plaintiff:          FISHER BROYLES, LLP
                        BY:  ARIEL REINITZ, ESQ.
                        445 Park Avenue, 9th Floor
                        New York, New York 10022
                        646-494-6909


For Defendant,          MOSKOWITZ & BOOK, LLP
MVI Industries, LLC:    BY:  DAVID ALAN STEIN, ESQ.
                        345 Seventh Avenue, 21st Floor
                        New York, New York 10001
                        212-221-7999


For Defendants,         THE ENGEL LAW GROUP, PLLC
MVI Systems LLC         BY:  ADAM E. ENGEL, ESQ.
and Samuel Taub:        280 Madison Avenue, Suite 705
                        New York, New York 10016
                        212-665-8095


Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

```
 1                        PROCEEDINGS                    3

 2              HONORABLE DEBRA C. FREEMAN (THE COURT):    This is

 3    Judge Freeman, and this is the GateGuard case, which is 19-

 4    cv-2472. Could I have your appearances for the record,

 5    please, starting with plaintiff?

 6              MR. ARIEL REINITZ:  Good morning, your Honor.

 7    Ariel Reinitz of Fisher Boyles for plaintiff, GateGuard.

 8              THE COURT:  Okay. On defendants' side? No?

 9              MR. DAVID STEIN:  I wasn't sure, your Honor, which

10    defendant should speak first. This is David Stein of Moskowitz

11    & Book on behalf of defendant, MVI Industries.

12              THE COURT:  Okay. Do I have anyone else or any

13    other -- oh, who just joined the call?

14              MR. ADAM ENGEL:  Good morning, your Honor.  This

15    is Adam Engel for MVI Systems and Samuel Taub.

16              THE COURT:  All right. Do I have any other

17    defendants' counsel on the phone? Who are we missing?

18              MR. ENGEL:  Is David Stein on the line?

19              MR. STEIN:  I am, Adam, yes.

20              THE COURT:  You're also for MVI I?

21              MR. STEIN:  No, I am --

22              THE COURT:  Oh, you announced yourself already.

23    I'm sorry.

24              Mr. Engel, you came in late. We have Mr. Reinitz

25    and Mr. Stein. Is that everybody?
```

```
 1                        PROCEEDINGS                    4

 2              MR. REINITZ:  That is, your Honor.

 3              MR. STEIN:  I believe so.

 4              THE COURT:  Okay, do I have my clerk on, Pam

 5   Martin?

 6              THE CLERK:  Yes, Judge; I'm here.

 7              THE COURT:  Okay, so that's the last person on.

 8   Okay. So you've got a lot of letters and motions and things

 9   on the dockets, all swirling around.  And I was a little

10   bit dismayed to see a motion, at least a Notice of Motion

11   filed today, and a letter for a conference filed yesterday.

12   You knew this was on the calendar; I don't know why you're

13   still filing things when you knew that we were going to

14   have a conference that's going to cover these sorts of

15   things. It's referred to me for general pretrial

16   supervision.  That includes discovery disputes, it includes

17   scheduling, it includes whether there would be a stay of

18   discovery, it includes motions to amend.  And so, you know,

19   more open motions now. And the last one that was filed is a

20   Notice of Motion saying there's an accompanying brief.  And

21   you must not even have gotten around to that or must not

22   have fully uploaded yet, because there's no accompanying

23   brief. So I gather you still have more that you intend to

24   be filing, and I wish you would really stop and let us have

25   this conference and figure things out so that we can get a
```

```
 1                          PROCEEDINGS                        5
 2   clean start here and clear the docket of all of these many
 3   applications that are cluttering it at the moment.
 4          Okay, so it seems to me that there's a logical
 5   order to address what you all have. There is a pending
 6   motion to dismiss -- right? That's still pending?
 7          MR. STEIN:  It is, your Honor.
 8          THE COURT:  And the first question is whether the
 9   amendment should be allowed; and if the amendment is
10   allowed, whether it would moot the Motion to Dismiss. That
11   would sort of, you know, clean things up.  We would either
12   know that the Motion to Dismiss is continuing on or we
13   would know that it is not continuing on.  So I think the
14   amendment is probably the first issue to address.  And then
15   whether there should be a stay in whole or in part follows
16   after we understand the lay of the land. If there is a
17   Motion to Dismiss pending, if there is not; if there's a
18   new pleading, if there is not.  So, you know, and discovery
19   should follow, as well, because if the amended pleading is
20   allowed and if it changes the scope of anything, we should
21   understand that for discovery purposes and understand the
22   extent to which prior requests still make sense or the
23   extent to which anything needs to be redone.
24          So let's tackle the issue of amendment first.
25   When I do a Scheduling Order -- and I did not do it in this
```

```
 1                          PROCEEDINGS                    6

 2  case -- I don't generally have a deadline for amendments as

 3  of right; I generally say, look, this is going to be your

 4  deadline for Motions to Amend, and if you drew up a

 5  proposed amended pleading and you send it to your adversary

 6  and your adversary doesn't object -- you know, if there

 7  were a motion, they wouldn't file an opposition. There

 8  doesn't have to be consent; but as long as there's no

 9  objection, I'll take it for filing. But if there's going to

10  be an opposition, somebody's going to say no, this would be

11  futile; or, no, I don't agree, you know, this would be

12  prejudicial or whatever it is, then the deadline that I

13  have is for filing Motions to Amend, and I put in a

14  briefing schedule for that, and we deal with the amendment

15  on a fully briefed record.

16          Here I gather there is an interpretation of Judge

17  Abram's Order as a deadline by which amendments can be made

18  without leave of Court, just automatically; and that

19  deadline was because of the issues with the Electronic Case

20  Filing system filed a sliver beyond the date in that Order.

21          So the first question is -- I mean, I'm willing to

22  ignore the, you know, the filing it in the wee hours

23  because of ECF problems -- but the first thing I want to

24  understand, does everybody agree that this was a deadline

25  for amendments as of right, that there was no need for a
```

1                           PROCEEDINGS                        7

2   motion? Because if everyone agrees to that --

3            MR. ENGEL:  (indiscernible)

4            THE COURT:  -- if everyone agrees to that and I

5   overlook the slight delay, then there's an amendment.

6            MR. ENGEL:  Your Honor, this is Adam Engel for MVI

7   Systems. No, we absolutely do not agree with that. You

8   know, as I explained, I believe in my June 11th letter, our

9   read of it is that that deadline typically -- in the

10  beginning of a case, the first Case Management Order, when

11  there has been no amendment as of right, that may -- it may

12  be interpreted that way, it might make sense in that

13  context. But here I believe there was already an amendment

14  as of right that led to the First Amended Complaint.  That

15  was then dismissed in early January by Judge Abrams' Order.

16  After that we entered into this Case Management Order and

17  that it has the June 15th deadline.  So I think --

18           THE COURT:  Which docket number was that? I see

19  the original Case Management Order at Docket 49, which had

20  deadlines for amendments -- oh, maybe that is the deadline,

21  maybe that is the --

22           MR. ENGEL:  That's 49, yes, your Honor.

23           THE COURT:  Oh, it is, okay. So I'm looking at the

24  right one. I was looking at the wrong deadline. Okay.  So

25  that is -- it says, "No amendments to the pleadings may be

```
 1                         PROCEEDINGS                    8

 2   made after June 15 without leave of Court.  So how do you

 3   read that as meaning that you need leave of Court?

 4            MR. ENGEL:  Okay, I think, like I was saying,

 5   there's -- I think that that -- the Case Management Order

 6   usually comes out early in the case and before the party

 7   has already amended their pleading. So I think it may

 8   almost be a moot point because after this Order was filed

 9   and, you know, agreed to by the parties and accepted by the

10   Court, after that date, the plaintiff already did file a

11   Second Amended Complaint.  They already took advantage of

12   that. So even if it was as of right -- and I think that the

13   Second Amended Complaint was allowed for two reasons: One,

14   because of this order -- I think they got to at least do it

15   once; and because the Court granted leave to amend in her

16   decision on the Motion to Dismiss. So I certainly don't

17   think this should be interpreted to mean that they can file

18   unlimited amendments.

19            THE COURT:  So back me up on this. Hold on a

20   second. It's a lengthy docket. Back me up on the procedural

21   history. On Motions to Dismiss and granting leave to amend,

22   there was an earlier Motion to Dismiss that was directed to

23   what -- objected by whom to what claim, was it in its

24   entirety? Was it directed --

25            MR. ENGEL:  It was not in its entirety; it was to
```

```
 1                          PROCEEDINGS                    9
```

2  some of the claims -- I don't have the docket number in

3  front of me. It was to the First Amended Complaint.

4          THE COURT:  Okay, and then certain claim or claims

5  were in fact dismissed with leave to amend.  And then there

6  came another amendment that addressed the supposed defects

7  that Judge Abrams had identified, right?

8          MR. ENGEL:  Correct.

9          THE COURT:  And so that was an amendment that she

10 had expressly allowed by that decision.  And that was the

11 Second Amended Complaint or the Third Amended Complaint?

12         MR. ENGEL:  Second Amended Complaint.

13         THE COURT:  That was the Second Amended Complaint.

14 Okay, so now we have a Second Amended Complaint that was

15 allowed to address the defects, and Judge Abrams had said

16 you have leave to amend. So leave to amend had already been

17 granted.

18         MR. ENGEL:  Correct.

19         THE COURT:  Then there is another Motion to

20 Dismiss, and this other Motion to Dismiss is by a different

21 party or is addressed to different claims or is what?

22         MR. ENGEL:  So the Second Amended Complaint

23 brought in MVI Industries. MVI Systems and Samuel Taub were

24 the first two defendants who filed the first Motion to

25 Dismiss, the First Amended Complaint. Then we -- I

```
 1                          PROCEEDINGS                    10

 2   represent MVIS and Taub, and we filed the Motion to Dismiss

 3   the Second Amended Complaint, and MVII filed a separate

 4   Motion to Dismiss the Second Amended Complaint.  So --

 5             THE COURT:  Okay.  So when you filed --

 6             MR. ENGEL:  -- both parties moved --

 7             THE COURT:  Okay, so the parties that moved to

 8   dismiss the First Amended Complaint and then moved again to

 9   dismiss the Second Amended Complaint, did you move to

10   dismiss the claims that were supposedly, where the

11   deficiencies were supposedly cured, saying they're not

12   cured; was it a partial motion?

13             MR. ENGEL:  It was a full motion because what

14   happened during the Motion to Dismiss hearing with Judge

15   Abrams is I pointed out that, you know, even though she

16   didn't dismiss the contract claim, I pointed out some

17   weaknesses and, you know, sort of in open court everyone

18   sort of agreed that the Complaint would be better if it was

19   a fuller explanation of how this contract allegedly came to

20   be.  And those amendments, I think, further undermine the

21   contract claims and also undermine some of the related

22   trade secrets and unfair competition and other claims.

23             So what we ended up doing is we moved to dismiss

24   all of the claims, as did MVII. And it's MVII's first,

25   really first crack at this since they were brought into
```

1                                    PROCEEDINGS                           11

2    this, their first Motion to Dismiss.  And all of the

3    defendants have moved to dismiss all the claims.

4              THE COURT:  So now we have a proposed Third

5    Amended Complaint. So the purpose of the proposed Third

6    Amended Complaint is to address which claimed defects in

7    the current motion, all of them, some of them? Let me ask

8    the plaintiff's side -- let me ask on plaintiff's side,

9    what is the purpose of the Third Amended Complaint? Is it

10   to address for the first time the arguments being made by

11   the new defendant, MVI Industries, or is it to address the

12   contract claim again; or what is its purpose?

13             MR. REINITZ:  The bulk of the -- your Honor, the

14   bulk of the amendments that are included in the Third

15   Amended Complaint, proposed Third Amended Complaint, are

16   addressed to, I would say, primarily to plead additional

17   facts, to further, you know, I would say moot or narrow the

18   issues raised by the other respective defendants in their

19   most recent motions to dismiss.

20             THE COURT:  Well, we're not going to go around and

21   around on a carousel forever. Are these the same arguments

22   that were made on the first Motion to Dismiss, or is it to

23   address new arguments being raised for the first time in

24   the current Motion to Dismiss?

25             MR. REINITZ:  The bulk of them are raised to

```
 1                    PROCEEDINGS                    12
 2   address the new arguments and specifically, I would say,
 3   the bulk of them identify, because there is a new defendant
 4   that's appearing, this MVII, MVI Industries, to address the
 5   liability or the, you know, the liability we're alleging
 6   with respect to each of the respective causes of action,
 7   how MVI Industries specifically is, you know, their
 8   liability, again as they are newly appearing, to clarify
 9   and to further -- and, again, plead additional facts with
10   respect to them.
11        THE COURT:  Now, on defendants' side, if I were to
12   say I'm allowing this pleading because it's addressing what
13   you've raised in your motion -- and let's not have
14   unnecessary motion practice -- so if it addresses anything
15   that you've raised in the motion, maybe it moots out some
16   of your arguments, if not all, I'll allow it. If I were to
17   allow it, would you look at the Third Amended Complaint and
18   say, "In our view, it is still defective, and we would
19   again move to dismiss -- all of us would again move to
20   dismiss this in its entirety"?
21        MR. ENGEL:  Your Honor -- and, you know, not to be
22   litigious just for the sake of it, we would still move to
23   dismiss all of the claims. I don't think there's really --
24   I believe there is a redline version that Mr. Reinitz ended
25   up filing that shows the changes.  And they're very slight.
```

```
1                          PROCEEDINGS                    13
2    You know, for example, there was -- almost all of the
3    claims against MVII, the fraudulent conveyance claims,
4    which really bring them into the case, those are all pled
5    on information and belief in the Second Amended Complaint.
6    The only change in the Third Amended Complaint is just
7    deleting that. There is no additional detail, there's no
8    explanation of where those, you know, facts came from or,
9    you know, the explanation or indication of how the
10   plaintiff moved from only having information and belief to
11   now having a solid basis to allege those facts.  And I
12   think there's a few phrases added to the causes of action
13   that, you know, have already been heavily litigated in
14   this case.  And to me it seems unfair at this point to put
15   us to the briefing, which was significant briefing, from
16   both sides of the defendants, to move to dismiss this and
17   then just sort of skip past it and say I'm just going to
18   amend it again. And I don't want to engage in unnecessary
19   motion practice either, but for purposes of Rule 15, I
20   think that oftentimes the Court may allow amendments, but
21   part of the, you know, sort of justice still requires
22   analysis includes making it fair to the moving party, who
23   had to brief a bunch of things that are now maybe muted,
24   maybe had to brief them twice, whatever the case may be. I
25   think that my view is that that is possibly addressed in a
```

1                               PROCEEDINGS                    14

2   Rule (indiscernible) motion, which may be sort of an

3   alternative motion that could be included with an

4   opposition to our Motion to Dismiss.  But I --

5               THE COURT:  Okay, let me ask another question. You

6   know, generally, when a party moves to dismiss, you know,

7   we allow the plaintiff to try to cure the defects by

8   amendment and then moot out the motion or at least narrow

9   the issues.  We have a new defendant who has never before

10  had claims against it, never before moved to dismiss, may

11  be making some arguments about the claims that had been

12  asserted against it specifically, why not allow the

13  amendment at least as to that?  And if you're going to

14  allow the amendment at least as to that new defendant, why

15  have a partial amendment and confused motion practice? Why

16  not just allow the amendment? It doesn't sound like, from

17  what counsel just said -- you know, I really should have

18  you saying your names each time you speak in case anybody's

19  going to try to transcribe this, by the way. Please just do

20  that so that if anyone does try to give you a transcript,

21  they know who's speaking. Okay?

22              But, anyway, why not, since it sounds like what

23  you were just saying is that it's really very slightly

24  different, it sounds like the motion papers, the Motion to

25  Dismiss papers, could be edited slightly and would

```
 1                          PROCEEDINGS                    15
 2    still -- you know, it wouldn't be a lot of work. You've
 3    done a lot of work putting together a motion, but if you
 4    say the changes are so minimal, it sounds like what you
 5    have to say about them would change only minimally, and it
 6    wouldn't be a lot of burden to revise the motion papers and
 7    get the best pleading that plaintiffs can do and motion
 8    papers that are clearly addressed to that, and that's it.
 9    We're not going to have any more amendments after that, you
10    know, without a really good showing that there's a reason
11    for it on a deadline for motions, not for anything as of
12    right. Why would that not make the most sense?
13              MR. ENGEL:  I take your point. I don't think it
14    involves a complete reworking and throwing away ten pages
15    of our brief.  And so I'm going to take your point on that.
16              I do think, however, it is somewhat unfair to put
17    us through another round of briefing where what I might
18    suggest and respectfully ask from the Court is in any
19    revised Motion to Dismiss directed at the Third Amended
20    Complaint, which hopefully the Court would say, you know,
21    has to be the last version unless good cause, like new
22    discovered information and those sorts of things, that we
23    could raise some of these issues in our Motion to Dismiss.
24              So I understand the parties are supposed to, you
25    know, litigate the case on the merits, but most of the
```

PROCEEDINGS                 16

1

2   changes that I think came in the Third Amended Complaint

3   relate to information that the plaintiff has had since the

4   inception of this case or, you know, at least from early,

5   you know, early January.  And they just never made it into

6   the Second Amended Complaint. And so I think as long as we

7   have the opportunity to maybe address those, maybe it will

8   turn out there's nothing much there.

9           But, you know, to address the unfairness issues in

10  our Motion to Dismiss, you know, so almost sort of raised

11  arguments that are similar to an opposition to a Motion to

12  Amend and just reserve that right. If there are things that

13  are seriously prejudicial to us, I would just like to be

14  able to include that.

15          THE COURT:  Anyone else want to be heard on this?

16          MR. STEIN:  This is David Stein, your Honor, on

17  behalf of MVII. We believe that the amendment is futile. We

18  were prepared to address what purports to be a motion by

19  plaintiff for leave to amend. We have cited in our letter

20  brief the deficiencies with that, quote/unquote, "motion,"

21  but never got direction from the Court as to how it should

22  be handled.  We did, as Mr. Engel pointed out, move with

23  respect to the complaint, the Second Amended Complaint, in

24  its entirety and would be moving with respect to the Third

25  Amended Complaint in its entirety.

```
 1                        PROCEEDINGS                    17

 2              THE COURT:  And would your brief also be only very

 3   slightly different because you think that the changes are

 4   only slightly different, or do you think the changes are

 5   major?

 6              MR. STEIN:  Well, the changes are not substantial

 7   in a substantive sense. For example, as pointed out by

 8   Mr. Engel, those claims that are based on fraud went

 9   miraculously from being alleged entirely on information

10   and belief to being alleged outright with the information

11   and belief caveat stricken from all those paragraphs. The

12   deficiencies in the pleading remain.

13              THE COURT:  Why would that be a futile amendment?

14              MR. STEIN:  Well, we think it finalized the lack

15   of a basis for the claim; there's not sufficient

16   particularity in the claim to withstand scrutiny, we

17   believe.  The allegations are conclusory.  The --

18              THE COURT:  Is one of the things that you argued

19   in the pending motion that it was not sufficiently

20   particular because it was on information and belief?

21              MR. STEIN:  That is among the points that we

22   raised, yes, your Honor.

23              THE COURT:  Okay.

24              MR. STEIN:  But there is a question as to how

25   plaintiff could go from lacking to --
```

```
 1                          PROCEEDINGS                    18
 2            THE COURT:  Well, that's a discovery issue.
 3            MR. STEIN:  Okay.
 4            THE COURT:  That's a discovery issue. Plaintiff
 5   pleads what plaintiff pleads, and then you can determine
 6   whether the plaintiff is credible or not and whether
 7   there's something that's a basis for it when you do
 8   discovery.
 9            Look, there are any number of things that are
10   coming out here that are leading me to think that the
11   amendment should be allowed.  First, the way in which the
12   Scheduling Order was phrased.  Even if you think with the
13   passage of time it should be read differently, it doesn't
14   read as a deadline for Motions to Amend. As I said, when I
15   do a Scheduling Order, it says Motions to Amend. It doesn't
16   say, you know, Deadline to Amend Without Leave of Court.
17   Those are two very different things.  Second, you know,
18   there are at least some ways in which plaintiff has
19   addressed arguments raised in the Motion to Dismiss. So my
20   view is let them address it. Do the best you can. Get the
21   best pleading you can. At this point, it ought to be the
22   best pleading plaintiff can come up with, having heard all
23   the criticism. Third, we have a new defendant making
24   arguments for the first time.  And generally we let a party
25   amend once after facing arguments from a party for the
```

PROCEEDINGS                    19

first time. And so even though the argument is a little

less persuasive with respect to the previously existing

defendants, you don't want to have it done piecemeal; and

so since we have a new defendant with new arguments against

new claims, it seems to me an amendment would be

appropriate for that. But -- but -- what I plan to say is

that I will reset a schedule, and I will have -- I'm

assuming there are going to be no further amendments. If

there is a request for a further amendment or joinder of

any other parties, it's going to have to be based on a

motion. It will have to be fully briefed.  And it's not

that I'm going to impose a new standard that's not the

Rule 15 standard, but all of the questions that come in,

futility, the prejudicial timing, you know, all of the

issues that can defeat an amendment, because Rule 15 is not

an absolute right.  When there's a motion, you know, you

give leave freely, but -- there's always a "but" -- you

take a look at some of these issues -- I would look at

those issues.  And the motion would be before me, and it

would have to be, you know, something that really seems

justified in the circumstances, given this path so far. All

right?

           And with respect to the Motions to Dismiss, I will

tell Judge Abrams that the pending motions should be denied

1                        PROCEEDINGS                    20

2  without prejudicial. You can get them back on the docket

3  quickly with modest changes, and we'll have new motions and

4  so be it.  We'll have a nice, finalized pleading that

5  plaintiff thinks it's its best effort, and we'll have

6  motions that speak clearly to what plaintiff is now saying,

7  including allegations that are not on information and

8  belief. And if you still think it's not particular enough,

9  you'll explain why.  And then we'll move on from there. All

10 right?

11          Now, with respect to a stay, I am assuming there

12 will be a new Motion to Dismiss, two Motions to Dismiss, so

13 I am taking that into account. But in this court the

14 default rule is not that a Motion to Dismiss will stay

15 discovery; the default rule is that it does not.  There has

16 to be good reason to stay discovery, and it has to be by

17 order of the Court.  And I will, on occasion, stay

18 discovery when there's a Motion to Dismiss, depending upon

19 the nature of the motion, whether it would be fully

20 dispositive or partially dispositive if granted, whether

21 there are certain types of defenses that lend themselves to

22 a stay. For example, if somebody is claiming an immunity

23 defense, qualified immunity, sovereign immunity, something

24 like that, that means they should be immune from discovery

25 as well as from, I mean, this entire litigation process if

```
 1                          PROCEEDINGS                    21
 2  they're right, as well as from, you know, just having to
 3  face the claims as a general matter.  And so it makes sense
 4  to have a stay in that kind of context.  And there may be
 5  other issues on the other side that ought to be considered.
 6              The main problem with a stay is delay.  The
 7  problem with a stay is that it may be harder to retrieve
 8  relevant documents; memories may fail; witnesses, I hate to
 9  say it, but especially right now in this day and age, may
10  become ill, you know, or even pass away; they may move out
11  of the jurisdiction. Things can happen with the passage of
12  time that can make it harder to stay a case and so -- to
13  litigate a case if there's a stay. And so before I issue a
14  stay, I look at the whole picture. I ask what kind of
15  motion we have, what kind of defenses are raised, how
16  strong or weak is the motion, although I don't really want
17  to get into the merits if it's not one I'm deciding, what
18  are we -- how many witnesses are we talking about in the
19  case, who are they, does anyone have any particularized
20  concerns about what the delay could cause.
21              I saw somewhere floating around in here an
22  arbitration reference. That's another thing. If some claim
23  is potentially a claim that should be arbitrated and if
24  that argument is being made that something should not be in
25  this case but should go to arbitration, that can be an
```

```
 1                          PROCEEDINGS              22
 2  argument to stay discovery because the discovery you get in
 3  arbitration may be different or less or you may not get it
 4  at all, and that may be a reason, you know, that may be
 5  reason to consider a stay.
 6          So, you know, there's a whole host of issues that
 7  come up. It is certainly not automatic that, oh, there's a
 8  Motion to Dismiss, so there should be a stay. Quite the
 9  contrary. So assuming the Motion to Dismiss -- Motions,
10  plural, to Dismiss are back on the docket in short order,
11  let me hear from defendants, either one or both, as to why
12  you think a stay -- and I'm not sure if you're both seeking
13  it or only the new defendant -- but why you think a stay in
14  these circumstances would be appropriate.
15          MR. ENGEL:  Adam Engel, your Honor, for MVIS.
16  There are several arguments in favor of a stay. I wanted to
17  get the motion on file today because I know Mr. Reinitz has
18  filed several letters regarding, you know, sort of the
19  details, the minutia of the discovery. And I sort of think
20  that's putting the cart before the horse in this case.
21          One of the issues is that we do have a Motion to
22  Dismiss that will be pending soon. Some of the issues
23  raised in there preclude a federal preemption under the
24  patent laws, which to me, in my mind, that means that, you
25  know, we're in the wrong forum; and it doesn't seem fair to
```

```
 1                        PROCEEDINGS                    23
 2   engage in discovery in any forum when the claims probably
 3   belong somewhere else, whether that's arbitration or before
 4   the USPTO or whatever the case may be.  A lot of the state
 5   law claims I think are, you know, here on supplemental
 6   jurisdiction, and they may --
 7              THE COURT:  I'm sorry, wait a second. You're
 8   saying that there's a claim that is actually a patent
 9   claim, a patent infringement claim or something like that?
10              MR. ENGEL:  It's a Correction of Inventorship
11   claim.  And we briefed this fairly heavily in our Motion to
12   Dismiss. And our argument is that the statute that it's
13   brought under does not apply in these circumstances. It
14   only applies to sort of teams or groups of people that were
15   working on something that resulted in a patentable
16   invention. And that can be corrected if there's sort of a
17   mistake of one person was listed as an inventor and
18   shouldn't have been or vice versa.
19              So we think that the statute that the plaintiffs
20   are relying on is inapplicable here, and their, really,
21   their only route is through the USPTO. The Court can't
22   correct the inventorship here under these circumstances.
23   And those are based not on lack of pleading but on the
24   affirmative pleading of the plaintiffs. We think that --
25              THE COURT:  Okay. Now tell me about --
```

```
 1                          PROCEEDINGS              24
 2           MR. ENGEL:  -- they've pled themselves out of this
 3  court.
 4           THE COURT:  And tell me about the arbitration
 5  issue.
 6           MR. ENGEL:  And the arbitration issue -- and I
 7  tried to lay it on as best I can -- it is a bit confusing.
 8  But, clearly, if a party moves to compel arbitration based
 9  on a written contract that everyone agrees is sort of at
10  issue, then the Court will typically stay discovery pending
11  resolution of that motion. Here the plaintiff has filed or
12  will file, if the Third Amended Complaint is allowed, you
13  know, four versions of the Complaint that include numerous
14  quotes from an alleged contract.  The contract is the terms
15  of service or terms of conditions found on GateGuard, the
16  plaintiff's, website. Through informal discovery we found
17  various iterations of that contract or those terms of
18  service.  And that's one of the issues in this case, the
19  fact that it changes all the time, that it's -- you know,
20  one of the terms says it can be changed at the sole
21  discretion of the plaintiff whenever it feels like it, and
22  you just ought to check back often to see what contract
23  you're under now. But every iteration that I found in that
24  contract, including ones that sort of predate my client's
25  involvement with GateGuard and postdate my client's
```

1                                PROCEEDINGS                        25

2  involvement with GateGuard, all of those iterations include

3  a dispute resolution policy that has arbitration

4  provisions. And we've raised that with Mr. Reinitz. I think

5  his position is that there was no such clause in the

6  contract that his client is relying on.

7          What we're asking for is a limited stay of

8  discovery. I think it makes sense, and I think it's fair to

9  everybody.  And I don't think this is a case where we have

10 witnesses who may become unavailable or documents that may

11 go missing or overseas parents of companies and all those

12 sorts of things.  The discovery is not going anywhere; none

13 of the documents are leaving or at risk.

14         I think it makes sense to proceed with limited

15 discovery on the arbitration issue and just get to what are

16 the terms that supposedly apply here.  And then we would,

17 you know, on a very short time frame because we've, you

18 know, essentially researched all of these issues, take

19 those documents, make what decisions we're going to make on

20 whether we want to move to compel arbitration. I believe

21 there's a choice of forum, choice of law causes, you know,

22 so that's part of --

23         THE COURT:  Okay. I'm not quite sure I'm

24 understanding this.  The Complaint -- this Third Amended

25 Complaint has in it a contract claim?

```
 1                        PROCEEDINGS                    26

 2            MR. ENGEL:  Correct.

 3            THE COURT:  Okay. And the contract claim is based

 4   on a defined contract which, because it is a contract

 5   claim, presumably is integral to the Complaint, if it's not

 6   incorporated by reference it's integral to the Complaint.

 7   But it's not been attached to the Complaint?

 8            MR. REINITZ:  That's correct.

 9            MR. ENGEL:  Correct, your Honor. So there is a

10   gray area --

11            THE COURT:  Okay.

12            MR. ENGEL:  -- your Honor, where, you know, I

13   think that's allowed, but --

14            THE COURT:  Wait, wait. So on plaintiff's side,

15   just let me ask Mr. Reinitz on plaintiff's side, so you

16   have a contract claim based on a contract. And in discovery

17   to date, which has been ongoing, right -- and presumably

18   you've done Rule 26(a) disclosures that include the

19   documents that you may be relying on to support your

20   claim -- you have not produced the contract or you have?

21            MR. REINITZ:  Your Honor, I've made clear to

22   defendants on several times we're more than happy to

23   produce any, including the contract that's at issue here.

24   We haven't received any requests, we've made our initial

25   disclosures --
```

```
1                      PROCEEDINGS                    27

2              THE COURT:  Hold on. Your initial disclosures did

3   not include the contract? You're planning to bring a

4   contract claim, you're basing it on a contract; on your

5   initial  Rule 26(a) disclosures you didn't produce the

6   contract?

7              MR. REINITZ:  We didn't produce any --

8              THE COURT:  Is it difficult to produce the

9   contract?

10             MR. REINITZ:  It is not difficult to produce the

11  contract, your Honor.

12             THE COURT:  Produce the contract. Does the

13  contract have an arbitration clause in it?

14             MR. REINITZ:  The contract includes -- I will have

15  to double-check it. Later iterations of the contract

16  included -- and that's what specifically defendants were

17  referring to --

18             THE COURT:  I don't care about a later iteration.

19  I care about the contract you're relying on for your claim.

20  Does it have an arbitration clause in it?

21             MR. REINITZ:  It includes, to my knowledge, a

22  permissive arbitration clause which allows the plaintiff to

23  opt out at any time, which as it has exercised its right to

24  pursue claims in district court.

25             THE COURT:  Okay. Produce the contract you're
```

```
 1                          PROCEEDINGS                    28
 2  relying on. It seems to me --
 3              MR. ENGEL:  Your Honor --
 4              THE COURT:  -- elementary that if you -- hold on a
 5  second.  It seems to me elementary that, if you have a
 6  contract claim and you're trying to prove that there was
 7  performance by you of the contract and lack of performance
 8  by the other side of the contract and you've been damaged
 9  under the contract and so on, you have a contract claim,
10  that the contract is something that you're going to need to
11  rely on to support your claims.  And under Rule 26(a)(1),
12  it should be produced. So produce the contract.
13              If there is no claim that -- if there's no clause
14  in the contract on which plaintiff is relying -- okay, not
15  a contract that defendant thinks it ought to be relying on,
16  but the claim on which plaintiff is relying -- if there's
17  no clause in that contract that says plaintiff must
18  arbitrate the claim, that defendants can demand arbitration
19  and that plaintiff must arbitrate, then I'm not sure I
20  understand the argument why discovery should be stayed
21  because it is likely to go to arbitration.
22              MR. ENGEL:  Your Honor, that was my point is that
23  we should have that thing in our hands, and we should have
24  had it in our hands a long time ago.
25              And may I just quickly address the issue arising
```

2   from later iterations of the contract? I understand your

3   Honor's point the plaintiff gets to plead its own case, but

4   like I said, there's later iterations of that contract.

5   And that contract itself has terms that say this can be

6   amended by the plaintiff without notice to anybody else at

7   the plaintiff's sole discretion and that those later terms

8   shall be binding upon anybody subject to these terms. And

9   so even if that iteration that the plaintiff has

10  selectively chosen to rely on includes language favorable

11  to the plaintiff, there's an argument to be made that later

12  iterations of the contract would apply even sort of

13  retroactively.  And we just want to at least get those

14  documents in our hands, make a decision on how to proceed.

15  So I would ask that your Honor order them to produce all

16  iterations of those terms and conditions.

17          THE COURT:  All right, well, not as part of

18  initial disclosures. They would have no obligation to do

19  that.  That turns us to discovery disputes, which I'll get

20  to in a moment.  That has to do with whether somebody

21  should be compelled to respond to a discovery request

22  that's been made.  And that's a two-way street.

23          So let's go back to this Complaint and the reasons

24  for a potential stay. How many claims are in this Third

25  Amended Complaint? There's a contract claim, there's some

```
 1                         PROCEEDINGS                    30
 2   kind of patent-related claim involving inventorship.  What
 3   other claims are there?
 4            MR. REINITZ:  Yes, your Honor. This is Ariel
 5   Reinitz for GateGuard. Your Honor, the claims include two,
 6   one under federal, one under state law, for trade secret
 7   misappropriation; correction of inventorship, as the
 8   defendants noted, of two different U.S. patents; the breach
 9   of contract as to -- I just want to clarify that's a claim
10   solely as to Mr. Taub, the individual defendant -- tortious
11   interference claims against each of the defendants; unfair
12   competition claim; two claims for fraudulent conveyance
13   against the corporate defendants. I believe that covers it.
14            THE COURT:  Okay, so look, here is what I'm going
15   to do with respect to whether there should be a stay or
16   there shouldn't be a stay.  I'm not going to stay
17   discovery. However, I'm going to urge the parties to work
18   together within the discovery schedule, which I'll modify
19   if you all think that that's appropriate and you can show
20   me why. Work within that schedule to prioritize the
21   discovery that you think will potentially help save you
22   money and make this an efficient litigation and put back on
23   the calendar the discovery that you think, all right, if
24   everything goes forward, you know, and every claim goes
25   forward here, we're going to have to do this eventually
```

```
 1                          PROCEEDINGS                      31
 2   before the end of the discovery period, but there's a
 3   decent possibility we may not be doing that, either in this
 4   forum or at all, or at least we feel strongly about that,
 5   and we think this particular discovery should come a little
 6   bit later on the calendar, and sort of map out a plan to do
 7   discovery and to be doing work that is meaningful in the
 8   case to move the ball forward while, you know, putting your
 9   heads together as to which discovery should come a little
10   bit later in the day where it's possible you might be able
11   to save the money on it if it turns out that -- if it turns
12   out the contract claim goes to arbitration and there's
13   discovery that is unique to the contract claim that is not
14   relevant to a tortious interference claim, which might not
15   exist. I mean, it may all be the same discovery, anyway.
16   But if there's something unique to that that would be
17   particularly burdensome and therefore particularly
18   expensive, you know, you want to -- I'm making this up --
19   you want to depose the person who was involved with the new
20   iterations of the contract and how the changes were made
21   over time -- not that that's necessarily relevant to
22   anything -- but, you know, but then only speak to how those
23   changes were made.
24            All right, look, if the contract claim goes, you
25   don't need that particular discovery. I'm making that up
```

PROCEEDINGS                    32

1

2  because I don't actually think that would be good and

3  relevant discovery for anybody, but I'm trying to think of

4  something that would be illustrative (indiscernible). Or

5  maybe on the patent front, you know, if there's something,

6  you know, particularly burdensome, costly, certain document

7  requests that would require you to dig into certain files

8  that you could put off for a little bit later relating to a

9  claim where there's a decent chance or at least an argument

10 that it might be in the wrong forum, so maybe you put that

11 off a little bit later.

12         But a lot of these claims, the tortious

13 interference claims, I haven't heard, other than that

14 there's a motion to dismiss them, I haven't heard a well-

15 articulated reason as to why discovery should grind to a

16 halt on them.  And it sounds like there's a lot going on in

17 this pleading and a broad range of discovery that would be

18 appropriate in this case, and the case is already almost a

19 year and a half old.  And I think it's time you really got

20 on with it and, you know, got seriously engaged in this

21 discovery.

22         So put your heads together and map out --

23 cooperatively map out a plan. I don't want to hear that

24 somebody is absolutely refusing to respond to

25 interrogatories or absolutely refusing to respond to

PROCEEDINGS                              33

1

2  document requests or refusing to negotiate or refusing to,

3  you know, respond except for boilerplate objections. I

4  mean, that's silly. Just do the discovery. And if there are

5  certain things that -- a particular deposition that would

6  cost money and that, you know, if the Motion to Dismiss is

7  granted, you know, maybe in part, maybe that particular

8  witness wouldn't be needed, put that person a little

9  farther down the road; map out the plan; sketch everything

10 in; do it in an intelligent way with an eye toward the

11 bottom-line dollars that you're spending to try to be

12 efficient and sensible as you go forward. I mean, if

13 there's a potential for arbitration, yeah, serve the

14 request, which I gather you've done, for the different

15 iterations of the agreement. Produce them. It's not hard.

16 Produce them. Look at it, you know, and if you think that

17 that might lead to a decent argument for arbitration of

18 that claim, think about whether there is discovery that is

19 unique to that claim that could be held off on until the

20 Motion to Dismiss is decided; whereas, other discovery

21 maybe goes forward.

22          MR. STEIN:  Your Honor, if I may? This is David

23 Stein speaking. On the issue of discovery, one of the

24 reasons for defendants not having served discovery requests

25 is to the extent that there is an applicable arbitration

PROCEEDINGS                    34

1

2    provision, we didn't want to encounter an argument that the

3    right to arbitration had been waived by participating in

4    discovery. You saw our --

5              THE COURT:  Well, look, it sounds to me like the

6    arbitration issue -- well, okay, if there were a right to

7    arbitrate, how many of the claims asserted in this case

8    would get pulled into arbitration?

9              MR. REINITZ:  This is I Ariel Reinitz, your Honor.

10   As far as -- and this is, you know, something I've conveyed

11   to the defendants on multiple -- even assuming everything

12   they say is true -- obviously, we don't -- it would

13   address, it would cover a single claim, the breach of

14   contract claim, as to a single defendant, Mr. Taub. You

15   know, the remaining claims, trade secret misappropriation,

16   all the patent issues, the correction of inventorship, the

17   tortious interference, all these other claims, you know,

18   again, as they relate to certainly the corporate entities,

19   who we've never claimed were parties to the contract that's

20   at issue, it wouldn't change them at all.

21             THE COURT:  Are you willing to stipulate --

22             MR. ENGEL:  Your Honor --

23             THE COURT:  Hold on a second. Is plaintiff willing

24   to stipulate that if you go forward with discovery and

25   defendant participates in discovery, that defendant -- you

 1

 2    will not take the position that defendant has waived its

 3    potential arbitration right?

 4         MR. REINITZ:  Yes. Yes, your Honor.

 5         THE COURT:  Okay. So now we're on the record and

 6    you said that you might put it in a letter, as well, so

 7    it's clear.  And then on defendants' side, you don't have

 8    that worry.

 9         MR. ENGEL:  Right. Your Honor, may I address the

10    scope of the arbitration clause?

11         THE COURT:  Who is speaking, please?

12         MR. ENGEL:  This is Adam Engel. Sorry. From what I

13    have seen -- and, again, these are iterations that

14    purportedly don't apply.  But it says all claims, etc.,

15    etc., etc., arising from or relating to the relationship

16    between the parties. So that's a -- it has a very broad

17    scope. And the plaintiff has pled several of its claims,

18    including unfair competition, tortious interference, etc.,

19    tortious interference requires wrongdoing other than just

20    basic market competition.  And these two companies are

21    competitors.  The alleged wrongdoing is the breach of the

22    contract. So the contract really bleeds into many of the

23    other claims. It's not just a standalone -- you know,

24    there's also an invoice that went unpaid, and then there's

25    all these other claims. The contract pervades everything,

```
 1                           PROCEEDINGS                    36
 2   and the arbitration clause that I've seen is quite broad.
 3   So I don't think it's accurate to say that only one
 4   potential claim could go to arbitration.
 5            And may I also address regarding the scope of
 6   discovery --
 7            THE COURT:  Well, do you think that --
 8            MR. ENGEL:  -- at --
 9            THE COURT:  -- do you think that all claims in the
10   case would go to arbitration if the arbitration clause
11   applies?  And would you be demanding arbitration?  Would
12   you -- I mean, you would have to actively say we, you know,
13   we want to arbitrate these claims.
14            MR. ENGEL:  Right. Well, one is I don't have the
15   document, so I'm not sure exactly what we would do with it.
16   I just want to have it in front of me so we can properly
17   analyze the case and make some strategic decision to move
18   forward. I'm not trying to stall this.
19            THE COURT:  Well, you obviously know what the
20   arbitration clause says because you just quoted it to me,
21   the one that you think exists, at least in some iteration.
22   So based on that, would you think that all of the claims in
23   the case would belong in arbitration?
24            MR. STEIN:  This is David --
25            MR. ENGEL:  No. It's probably true that the patent
```

PROCEEDINGS                                 37

1

2    claims wouldn't. I'm not sure about the fraudulent

3    conveyance claims against the other defendant.

4          But the other issue as to the scope of discovery

5    from the outset and our request for a stay, many of these

6    claims have been dismissed already by the Court, and

7    there's an attempt to revive them in these Second and Third

8    Amended Complaints --

9          THE COURT:  Okay, well, that's a good --

10         MR. ENGEL:  -- which we think --

11         THE COURT:  -- reason -- that's a good reason to

12   talk seriously to each other, one another, as counsel, as

13   officers of the court, in a civil and cooperative way

14   because, you know, there's no reason why you have to be

15   reflexive so that if one says yes, the other has to say no.

16   You can talk cooperatively together about a way to

17   structure the case intelligently. And if there is discovery

18   that is unique to a claim that has already been dismissed

19   where you think that there may be a greater chance that

20   that claim will be dismissed again because the arguments

21   are similar, you don't -- you know, whatever, if there is

22   discovery unique to that claim, if it is expensive

23   discovery, if it makes sense to put it further down the

24   road, as you talk about what discovery to do now and what

25   discovery to do later, you talk cooperatively. If you can't

agree on something, you can come back to me, and I hope
you're able to work through issues.

I just want to say something about the notion of
working well together. The fact that there are this many
letters and this many motions and this many disputes at
this stage of the game tell me that you're having trouble
with the good-faith conference and with the concept of
working well together. You may be having conferences, you
may be spending time on the phone with one another, but
it's not yielding fruit; it's not working well for you in
working out your differences.

So here is my pitch on that front as to what that
means and, you know, just think about it. There's been a
lot of turnover on the bench lately among magistrate
judges, as many have retired and new ones have come on
board.  There's a lot of attention that's been paid to the
process for becoming a magistrate judge, and there will be
more openings coming up because every year it looks like
there are going to be more retirements in that group until
that bench is pretty well remade in the court. And one of
you, who knows, might want to apply for this job; it's a
great job. But even if you don't, it's worth thinking about
what that process is. Because what they ask for, the
screening committee asks for, is information about every

```
 1
 2    case that you've litigated over the last however many
 3    years, and they ask for everyone you've worked with as
 4    counsel and as co-counsel on these cases.  And they ask you
 5    to identify all of your adversaries.  And they will call
 6    them, and they will say, "What was it like to litigate
 7    against this person, opposite this person?" And if you
 8    think about it, it's not the only time in life when your
 9    adversary may end up being a reference for you. There may
10    be a lot of things that you might want to do in life where
11    someone who you've come across professionally may be asked
12    to say what he or she thinks of you as a lawyer.  And if
13    you know how to work cooperatively with someone so they
14    come away respecting you and saying, "This is a good
15    lawyer.  This person knows how to listen, knows how to work
16    cooperatively, stands up for his client when it's important
17    but bends when it is in his client's interest to bend for a
18    smooth running of a case, saves client money by not making
19    us go through all these disputes," and so on and so forth,
20    it ends up being to your advantage. And even if it's not a
21    matter of, you know, referring you for something, it may be
22    if you both are on both sides of the aisle, do the same
23    kind of work; you're knowledgeable about trade secrets,
24    you're knowledgeable about patents, you're knowledgeable
25    about unfair competition, you know, (indiscernible) kind of
```

PROCEEDINGS                    40

1
2  stuff, there may be a day when one of you or the other of
3  you is conflicted on a case and needs to refer a client to
4  somebody and may refer to somebody you worked against on
5  another case who is in the same field. And, you know, if
6  you think about that and you think about it through that
7  sort of lens, you will always understand what good-faith
8  conference is about or cooperation is about because just
9  think, how would I want this person to talk about me behind
10 my back. Right?

11             And there are an awful lot of things here that
12 look kind of nonsensical to me when I read them. You should
13 have been able to work out some of the issues that you put
14 in front of the Court. And I'm hoping, as you go down the
15 line, you will be able to work out more issues in the
16 future. If you can't, you now have me overseeing the case,
17 and I'll make myself available, and it will be at
18 reasonable intervals, if need be, to say, "All right, you
19 win this one. You win that one. You have to produce this.
20 No, you don't have to produce that," and so on.  But I'm
21 really hoping that you can sit down together on the phone,
22 you know, in person should the day allow, where you can
23 say, "All right, look, let's focus on this discovery first.
24 Then let's do this. But let's really do it. And then let's
25 hold off on these depositions and put them in the calendar.

```
 1                        PROCEEDINGS                41
```

 2  You know, let's say we have another three or four months to

 3  get things done, let's put that in month four or put that

 4  in month three." You know, "Let's block out some time where

 5  we know it will happen if we have to, so we don't have to

 6  come back and ask for another extension. But we're not

 7  going to do it right now. Let's focus on this right now." I

 8  mean, getting out the arbitration agreements, you know, the

 9  original contract and the future iterations if the person

10  remained employed and was governed by this at different

11  points in time during employment, produce them. Okay? And

12  then look at them together and say, "All right, what would

13  be within the scope of this arbitration clause should we

14  prevail on that?" Would you in fact demand arbitration on

15  this if that's where this is going? You know, is this

16  something that is clearly not covered by that and is

17  something that would be very helpful to move the case

18  forward? Is there discovery that's going to need a long

19  lead time because it's electronic discovery and we're just

20  going to have to get started on it?  Because if we put it

21  off, we're never going to get it done.  We're going to need

22  to get started on that. But how do we talk together to

23  avoid do-overs and avoid things that are more costly? All

24  right?

25              So I'm going to not stay discovery. I will extend

PROCEEDINGS                    42

your schedule if necessary. You're going to talk first

among you and figure out what the best plan is for

everything. For briefing the new Motions to Dismiss, you're

going to propose jointly a briefing schedule to get those

fully briefed. For all fact discovery, you're going to talk

together and sort of map it out and try to figure it out

and figure out a plan. And if, you know, you come back to

me and tell me here's the plan we've come up with jointly,

if it looks sensible, I'll approve it. If it looks like

it's stretching things out to the 12th of never, I might

say, let's tighten that up a bit. And get going on it in a

way that is sensible and that listens to what the other one

is saying. All right? And that means both sides serve

discovery requests, both sides serve responses. If in the

discovery requests you've asked for ten items and numbers

nine and ten are particularly burdensome and you think it

makes sense to hold off on those for a discernible reason

that you can express, you express it, and maybe the other

side agrees, okay, give me one to eight and then let's talk

about when we would do nine and ten. Right? You have those

kind of conversations.

          Now, are there particular discovery disputes where

you feel, not in terms of whether something should be done

at all, but a particular discovery dispute where you feel

PROCEEDINGS                    43

1

2   you have fully conferred in good faith, you are at impasse

3   on that, you cannot go any further in trying to narrow it

4   or resolve it -- and, by the way, good-faith conference

5   which I require and enforce does not mean you sent an

6   email, you didn't get a response; it means you pick up the

7   phone, you talk to each other, you really try to work it

8   out.  And, like I said, you listen to what the other is

9   saying and you see what you can do. But is there any issue

10  where you feel like you've gotten to the end of the road on

11  it and it would be really helpful if I were to say, yes, I

12  find this relevant or, no, you don't have to produce this,

13  or, yes, you need whatever it might be?

14          MR. ENGEL:  Yes, your Honor -- I'm sorry, go

15  ahead.

16          MR. REINITZ:  Your Honor --

17          THE COURT:  Who is speaking? Who is speaking?

18          MR. REINITZ:  Ariel Reinitz here for plaintiff,

19  your Honor. Thank you. And I just want to pick up on what

20  you said and to give some credit to my colleague, Mr. --

21  Adam, what's your last name? I'm sorry?

22          MR. ENGEL:  Mr. Engel.

23          MR. REINITZ:  Yeah, see, we're on a first-name

24  basis.  But, your Honor, you know, again, just to complete

25  the record, I want to be clear Adam and I did confer really

```
 1                          PROCEEDINGS                      44
 2   along the lines that you outlined.  And with respect to the
 3   issues that I know he flagged a few minutes ago regarding
 4   certain claims that were, you know, had been dismissed with
 5   leave to amend, and, you know, again, they would be moving
 6   to dismiss or have moved to dismiss again, and as far as
 7   I'm concerned -- I'll let Adam speak for himself -- you
 8   know, I thought we had in good faith come to a resolution
 9   in terms of exactly as your Honor proposed, you know,
10   staging some of the requests. You know, we had outlined and
11   identified specifically, you know, a subset of the request
12   that, you know, he and I agreed, as I understood it at the
13   time, you know, were directed to causes of action that
14   would proceed in the case; it would be reasonable for those
15   to be prioritized.  And, again, this is going back to,
16   like, April and May of this year, you know, we had an
17   understanding -- I had an understanding that we had an
18   understanding that those would go forward.
19             You know, my concern again -- and those, you know,
20   to your Honor's question if there were specific disputes,
21   you know, my concern is regarding, obviously, you know, all
22   the discovery that's outstanding but specifically those
23   requests -- you know, again, he and I had agreed at the
24   time, again going back to April and May, were reasonable to
25   prioritize, that were addressed to and specifically, you
```

PROCEEDINGS                    45

1
2  know, focused on causes of action that Judge Abrams had
3  already ruled would proceed as at least as they relate to
4  his clients, Taub and MVIS, I think it's reasonable to
5  assume they'll proceed against MVI, as well, but we can put
6  that aside; and, you know, Mr. Engel then, you know, there
7  was sort of an about-face a few weeks or a month or so
8  later when they decided, you know, he and his co-defendants
9  decided that they were going to seek a stay and didn't want
10 to cooperate in producing any discovery.
11         So that's what I would propose starting with. And,
12 again, specifically, I think yes, you know, in terms of
13 where we're at today -- I don't know if their positions
14 have changed in light of our conference now -- but, you
15 know, I would -- you know, certainly, again we were
16 expecting those, and I think it was even in writing. You
17 know, we were expecting those responses back towards the
18 end of May and haven't gotten anything.  And, you know, I'd
19 like to revisit that, if we can, now and understand when at
20 least we can start -- you know, they can start producing,
21 you know, the documents that are responsive at least to
22 those requests we already agreed to.
23         THE COURT:  On defendants' side, you know, you're
24 saying we've got to get those arbitration agreements, it's
25 really important.  Well, but it also sounds like you

```
 1                        PROCEEDINGS                 46
 2   haven't engaged in discovery.  So the first order of
 3   business is make the requests. Make the document requests,
 4   talk with each other about can something be expedited, can
 5   something else sit for a little bit longer, you know, and
 6   cooperate in a not just unilateral but bilateral, you know,
 7   everybody's cooperating with everybody with respect to
 8   discovery, to do what is sensible and to hold off a bit on
 9   what is not, all within the time frame that I bless. Any
10   reason on defendants' side that what plaintiff's counsel
11   has just said can't be a workable model?
12             MR. ENGEL:  Your Honor, this is Adam Engel. For
13   the most part, I have the same recollection of our
14   conversation as Mr. Reinitz except that it was always a
15   caveat that whatever claims we were moving to dismiss we
16   would not be interested in producing documents on. And that
17   was prior to our filing the Motion to Dismiss.  And when we
18   filed the Motion to Dismiss all of the claims, I said,
19   well, now that we've done that --
20             THE COURT:  Okay, okay, so that's the history.
21             MR. ENGEL:  -- you know -- but we had a general
22   agreement of what made sense to go first; it was just a
23   question of when "first" was.
24             THE COURT:  Okay, so first is now is now.
25             MR. ENGEL:  Right.
```

```
 1                        PROCEEDINGS                    47
 2              THE COURT:  Okay, as of now, it is now. And if you
 3    were able to sort of work together before to think about
 4    what made more sense to go first, second, third, that's
 5    exactly what I'm talking about; time to put those talks
 6    back on the table, time to figure it out. You've got on the
 7    record here, and I'm asking counsel to put it in writing
 8    that they're not going to argue that you waived a right to
 9    arbitrate any claim based on participating in discovery
10    with respect to that claim.  And I expect everybody to
11    participate in discovery in good faith in an intelligent
12    way to conserve costs but yet to move the case forward. All
13    right?
14              So I'm sending you back to the well.  And here is
15    the plan. All right? The plan is, number one, I tell Judge
16    Abrams that I'm allowing the amendment and, therefore, the
17    two motions that are pending should be disposed of as
18    denied without prejudice. They may have already done work
19    on those motions; if they've already done work, I'm going
20    to tell them save the work because probably the motion's
21    not going to be all that different when it resurfaces, it
22    will be refiled -- they will be refiled.
23              The second order of business, the Amended
24    Complaint, you submitted a proposed Amended Complaint, I
25    assume with the motion to -- I'm sorry, you just filed it.
```

```
 1                          PROCEEDINGS                    48

 2    Did you just file it?

 3              MR. REINITZ:  That's right, your Honor.

 4              THE COURT:  All right, so you've filed it --

 5              MR. STEIN:  It was -- I'm sorry, your Honor.

 6    David Stein. Ariel will correct me if I'm wrong, but I

 7    believe it was presented as an exhibit to a perfunctory

 8    Motion for Leave to Amend. I don't believe it's actually

 9    been filed.

10              THE COURT:  All right, well, so file it by -- I'll

11    do a text order today; and when you see the text order,

12    file it, because that will make clear that you have the

13    permission to file it. Okay? And that way, the docket won't

14    bounce it or something. All right?  So I'll do a text

15    order, I'll say you can file it.  Then file it.

16              And then negotiate a briefing schedule for the

17    Motions to Dismiss. Hopefully, both motions get filed at

18    the same time. And, you know, you might want to combine

19    opposition -- I mean, I don't know if you can do a combined

20    motion. If you want to do separate motions, that's fine.

21    But hopefully you can do a combined opposition to limit the

22    number of papers that are out there. I don't mind giving

23    you more pages if there's a page-limit issue, but it would

24    be nice just to have a more limited set of papers. If that

25    doesn't make sense because the arguments are distinct and
```

PROCEEDINGS                49

 1    it makes sense to do two separate briefs or two separate

 2    declarations that address the motions, you know, use your

 3    judgment. But if it can be one filing with different

 4    sections just so that, you know, it's fewer things on the

 5    docket, that might be nice.  But I'll leave it to your

 6    judgment to do whatever you think makes the most sense in

 7    opposition.  And then have a date that's, again, uniform

 8    for replies so we're on one schedule and we know when those

 9    will be fully briefed. Okay?

10          With respect to the discovery schedule, put your

11    heads together about whether the existing calendar still

12    works for you, the existing schedule still works for you;

13    or if you need more time under the circumstances, I will

14    understand if you need more time under the circumstances. I

15    don't remember when the discovery cutoff was.

16          MR. STEIN:  Your Honor, it's David Stein speaking.

17    This is really a subject for discussion among the parties,

18    but I would just note that, as my client, MVI Industries

19    was only recently joined in the case, we were not a party

20    to the original Scheduling Order --

21          THE COURT:  Talk among yourselves.

22          MR. STEIN:  -- since those dates were first fixed,

23    so I think there will need to be some adjustment to that.

24    But, obviously, we'll work cooperatively with everyone in

```
 1                        PROCEEDINGS                    50
 2  working out agreeable new dates.
 3           THE COURT:  Okay, so you're going to work on
 4  agreeable dates. All of you are going to work together with
 5  a proposal for dates. What I'm going to want to see in
 6  those dates, to the extent discovery has not even started
 7  for anybody, you should have a date for the initial
 8  disclosures, you should have a date for getting out your
 9  first sets of interrogatories and document requests. You
10  should have a date -- and much as defendants don't want
11  it -- you should have a date for any further Motions to
12  Amend or for Joinder. Logically, that should be after the
13  responses come in to the initial document requests because
14  it may be there's something that you're asking for where
15  you see the responses that tell you something new that you
16  didn't know. And you should think about it in terms of,
17  okay, I've served my document requests; I've got in my
18  responses; I say, oh, my God, there's something in here
19  that makes me want to join another party, or something.
20  You do up the proposed amended pleading, you send it to
21  your adversary, you say would you consent to this or
22  not -- actually, not "consent" -- would you oppose this.
23  You don't have to consent; it's just a question of whether
24  there'd be an opposition.  Would you oppose this or not?
25  If the answer is no, you tell me; I accept it for filing.
```

```
 1                        PROCEEDINGS                    51
 2   If the answer is we'd oppose it, you have to sit there and
 3   write up a motion. Okay? So you're thinking about
 4   deadlines in terms of the time it will take you to ask
 5   your adversaries for their review, and the adversaries go
 6   back and talk to their clients, they come back and say,
 7   "We would absolutely oppose this. You're going to have to
 8   prepare the motion." That's going to be the deadline, the
 9   motion deadline. You don't want it so far in that it's a
10   month before the close of discovery because God forbid we
11   do this again and everything gets set back all over again.
12   And hopefully there are no more amendments. Okay?
13            So it's the earliest reasonable date.  And then
14   that's going to be a date where if you miss it, then forget
15   the standards of Rule 15 altogether.  Then you're under
16   Rule 16 for missing a deadline in a Scheduling Order.  And
17   then you have to show good cause for sure under Rule 16 as
18   to why you couldn't have anticipated this sooner and done
19   this sooner.  So just be aware this deadline is going to be
20   an important one. Do not miss it. And if you really think
21   there's something going on that, oh, my God, there really
22   is a basis here; I couldn't have known about it before --
23   well, if you really, really couldn't have known about it
24   before and that's the reason you miss a deadline, then
25   you're going to have a good cause. If it's just a matter
```

```
 1                        PROCEEDINGS                52
 2    of, "I need another week on that deadline, oh, my God," put
 3    your hand in the air before the deadline runs, not after,
 4    and explain the situation and ask for more time.
 5            I am hoping there are no more amendments. Okay?
 6    I'm hoping that, after all these amendments, you've got as
 7    best as you can get it and you know who the parties are
 8    and, you know, fiddling and tweaking is not the issue; the
 9    issue is something that really gives reason for yet another
10    pleading and yet another go-round. But, nonetheless, when
11    you propose a modified schedule, have a date in there for
12    any motions, any further Motions to Amend or for Joinder.
13    And that will be that deadline.
14            And close of fact discovery -- and if you think
15    there's going to be expert discovery -- do you think
16    there's going to be expert discovery, by the way?
17            MR. ENGEL:  I do, your Honor.
18            THE COURT:  Somebody said yes.  Who was that?
19            MR. ENGEL:  Adam Engel for --
20            THE COURT:  All right, so on expert discovery,
21    generally what I do -- and you can talk about whether
22    there's some reason it doesn't make sense -- but generally
23    what I do is I say if you've got the affirmative burden of
24    proof on some issue where you want to have an expert, then
25    your expert report would be due thirty days after the close
```

1                          PROCEEDINGS                    53

2   of fact discovery; rebuttal reports, thirty days after

3   that; and a couple of weeks you plan for in advance to get

4   the experts deposed and then you're done. So if there's

5   some reason why you think simultaneous experts makes more

6   sense here, fine. But I don't want to see a schedule that

7   stretches out more than what I just described, okay? Unless

8   what Judge Abrams did was really different, in which case

9   if she had a different concept in mind, I'll go with that.

10  But, generally, this is the way I would do it. Okay?

11          So I'm going to expect on the docket from you

12  within, let's say, a week, a proposed briefing schedule on

13  any new Motions to Dismiss and a proposed modification of

14  the discovery schedule with those interim dates. I will let

15  you stipulate to modify any interim dates on the schedule

16  without coming back to me. You can just let me know, as

17  long as the end dates don't change, the end date for fact

18  discovery, the end date for expert discovery.  And for

19  initial interrogatories, if you still haven't even served

20  your first interrogatories, I'll tell you know I'll let you

21  go outside of Local Rule 33.3(a). You know, that rule has

22  used different categories of interrogatories. You can go to

23  the second category, which are more the middle-of-the-

24  litigation kind of category. At this stage of the game,

25  enough already; let's move it. That doesn't mean contention

PROCEEDINGS                    54

interrogatories. But the initial interrogatories permitted
by the local rule look a lot like initial disclosures.  And
I really hate those objections that, "We're not answering
this because it goes outside the local rule," because then
they can just serve a second set, and then you have to
answer it. So it just seems like a waste. Okay? Everybody
got all that?

        If you need me on a discovery dispute, confer in
good faith fully; if you really cannot resolve it, put a
letter on the docket. I'll wait for a response. If I can
deal with it by text order or memo endorsement, I will. If
I need -- or a short order -- if I need another conference,
I'll schedule one.

        And I also am going to want just a general overall
status report in not more than a couple of months; just a
letter on the docket telling me how it's going generally.
The ideal status report is, we're doing fine, and we
propose another status report by a certain date. If that
status report is filled with discovery disputes, that tells
me you've saved them up for the status letter instead of
raising them when they arise.  And that's not a good way to
do it because that will slow you down instead of moving you
along.

        And finally -- so it's a couple of months, right?

```
 1                        PROCEEDINGS                  55
```

 2  A couple of months is when? This is now August something.

 3  What's today, August 4, August 5; what is this, August 4?

 4            MR. ENGEL:  August 4, your Honor.

 5            THE COURT:  August 4. So let's just say October 2

 6  for a status letter on the docket, joint.  And the status

 7  letter should also discuss in general terms how you're

 8  doing with potential settlement discussions.  That is

 9  something else that's part of general pretrial supervision,

10  which is the reference that I have.  Do not put on the

11  docket your confidential settlement positions and make the

12  other side get all upset. Just, you know, if you want to

13  talk to me privately about settlement, we can do that

14  separately. For the purpose of ECF it should say, "We've

15  been talking.  We think we're doing well with that," or,

16  "We think it would be helpful to do a little bit more

17  discovery first." Bear in mind that the longer you to talk

18  about potential settlement, the harder it is to settle the

19  case. I don't care what kind of case it is. The plaintiff

20  says you've made me put all this time into this; I want

21  this much more; whether I'm entitled to attorney's fees or

22  not, my client wants me to be covered; and the demand is

23  going up. The defendant says you've put us through all of

24  this; I could have put the money toward settling the case,

25  and instead you made me spend it and now I want to pay you

```
 1                         PROCEEDINGS                    56
 2   less.  And the wedge is -- you know, it drives a greater
 3   and greater wedge between you. So are there counterclaims
 4   in this case?
 5           MR. ENGEL:  Not yet, your Honor.
 6           THE COURT:  Not yet. You think there might be.
 7           MR. ENGEL:  There might be.
 8           THE COURT:  It's rare that a case gets driven in
 9   settlement by counterclaims. It can happen, but it's rare.
10   But you should be talking because the reality is that most
11   civil cases do settle.  And the question is when. And the
12   longer you go, the harder it is, the more costly it is to
13   your clients, and so on. You should talk early and often.
14   You should talk now. If you say, all right, well, we're not
15   quite ready now; we need clarity on this Motion to Dismiss,
16   we need to brief it, we need to do it, we need to have the
17   Court decide it, we can't settle without it, all right, if
18   you have to, you have to. Okay?
19           Or maybe we have to have it out there; we have to
20   have the brief, the opening brief and the opposing brief
21   and look at those and talk to our clients. Maybe we can,
22   you know, talk seriously before reply. Or maybe once the
23   brief is filed, we can go back and talk seriously on
24   plaintiff's side, you know, with it in mind. Or maybe you
25   don't have to file it. But what you're looking for is the
```

1
2    earliest possible window where settlement is possible where
3    you've spent the least but you've gotten to the point where
4    you're ready to talk and you can and you can advance that
5    ball. Right?  And you should revisit that. So if it's, all
6    right, it can't be until this motion is decided, but maybe
7    it's after these documents are produced and before we do
8    more; or maybe it's after this one deposition but not, you
9    know, all of them; or certainly it's before experts.

10            You know, each point along the way you should be
11    talking; and if I can help you, you're going to let me
12    know. I hold a lot of settlement conferences where I go
13    back and forth with the parties, including by phone. But
14    I'm not going to do it until you tell me that you've tried
15    as hard as you can on your own and you're really stuck,
16    you're at impasse. You know, lawyers know how to settle
17    cases. You've got a lot of skills in your skill set, a lot
18    of tools in your toolbox, whatever language you want to
19    use. You know, you pride yourselves on your ability to
20    settle cases. Use those skills. And if you get to the point
21    where you say, well, we've exhausted our abilities here, we
22    don't know what else to do, but everybody's interested in
23    settlement, you come to me, and you're at the point where
24    you understand each other's positions well, you've gotten
25    as far as you can.  And I try to figure out where that

1                          PROCEEDINGS                    58

2    impasse is and how to break through and how to help you get

3    there.

4           But you should, if there's been no settlement talk

5    yet, there should be.  There should be some kind of demand.

6    It doesn't have to be entirely monetary.  There should be

7    some kind of proposal, there should be some kind of

8    counter. If you think a proposal is outrageous, so you make

9    an offer that you think is not outrageous, and you say,

10   okay, here's our position. As long as there's nothing on

11   the table on one side, there's nothing to talk about, you

12   know.  And you tell your client not to be offended by

13   anything, and you tell them how costly litigation is, and

14   you tell them that I'm making you litigate, then you're not

15   going to be able to save all the money with a stay, and you

16   want to try to save the money then by resolving the case.

17   All right?

18          So put that in the mix, put something in your

19   status letter about how that's going.  And understand that

20   if you want me for settlement, leave a message on my

21   voicemail, put a letter on ECF requesting a settlement

22   conference. I would probably start just with the lawyers to

23   hear what's going on, and then I would schedule something

24   with the clients if I think it's a good idea. Okay?

25          MR. ENGEL:  Understood, your Honor.

```
1                          PROCEEDINGS                       59

2            THE COURT:  Got all that?

3            MR. REINITZ:  Thank you.

4            THE COURT:  Okay? All right. I'm not even asking

5   if there have already been talks. I'm assuming there have

6   been and they haven't been successful yet.  But if there

7   haven't been, it's time to start with that, too.  And if

8   you already have had some discussions, it's time to go back

9   to it and try harder. All right? Because it's really --

10  especially with the pandemic, you know, it's just a good

11  idea to try to see if you can make sense of -- I mean,

12  that's a little bit maybe even a non sequitur, but I will

13  tell you that there were two points in time since I've been

14  on the bench where cases were settling like magically, just

15  settling. One was right after September 11th, where a lot

16  of people were saying why are we fighting, aren't there

17  more important things in life. And the other was in the

18  last major financial crisis we had where I had CEOs in my

19  robing room crying about not being able to meet payroll and

20  everybody understood on plaintiff's side, and the cases

21  were settling.  And this, with this pandemic, with the

22  economic upheaval and the health crises, you know, and the

23  need for remote depositions wearing masks and all of this,

24  I mean, it's like everything seems on steroids. It's like

25  if this weren't a good backdrop for talking about settling
```

```
 1                        PROCEEDINGS                    60
 2   differences, I don't know what is. So, you know, it affects
 3   how much money people have available, it makes people
 4   anxious about their futures, it's -- you know, it's just --
 5   it creates a whole overlay of issues for lawyers as they
 6   litigate about how to do things remotely. It's just a time
 7   where it seems to me that priorities should be reassessed.
 8   So tell your clients that, too.
 9            Okay, everybody? Enough talking by me.
10            MR. ENGEL:  thank you.
11            THE COURT:  Time for a break from my chatter. One
12   week for a proposed schedule for everything. All right?
13   And I'll do a text order with what I said.
14            MR. ENGEL:  Thank you, your Honor.
15            MR. REINITZ:  Thank you, your Honor.
16            THE COURT:  All right. You're welcome. Take care,
17   everybody.
18            (Whereupon, the matter is adjourned.)
19
20
21
22
23
24
25
```

61

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of GateGuard, Inc. v.

MVI Systems LLC et al, Docket #19-cv-02472-JPC-DCF, was

prepared using digital transcription software and is a true

and accurate record of the proceedings.

Signature_____*Carole Ludwig*_____

                Carole Ludwig

Date:    November 5, 2020