THE ENGEL LAW GROUP, PLLC
280 Madison Avenue – Suite 705
New York, NY  10016
(212) 665-8095
aee@elgpllc.com

*Counsel  for Defendants MVI Systems,*
 *Samuel Taub, and MVI Industries*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GATEGUARD, INC.,<br><br>                              Plaintiff,<br><br>           - against -<br><br>MVI SYSTEMS LLC; SAMUEL TAUB; and MVI INDUSTRIES, LLC<br><br>                              Defendants. | Civil Action No.:  19-cv-02472 (JPC)(DCF)<br><br>**ENGEL REPLY DECLARATION IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS ON SUBSTANTIVE GROUNDS** |

Adam Engel, an attorney duly admitted to the Bar of the United States District Court for

the Southern District of New York, hereby declares as follows:

1.      I am over 18 years of age, have no personal interest in this lawsuit, and have

personal knowledge of the facts set forth herein.  I am a principal at The Engel Law Group,

PLLC, attorneys for Defendants MVI Systems LLC, Samuel Taub, and MVI Industries, LLC and

submit this Declaration in support of their Motions to Compel Arbitration or, in the Alternative,

Dismiss on Substantive Grounds.

2.      Attached hereto as Exhibit A is a true and correct copy of the "Affirmation and

Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction," filed by

Plaintiff's counsel Ariel Reinitz in a New York State Court case entitled *660 Broadway BCR, et*

*al. v. Gateguard, et ano.*, presently pending before Justice Andrew Borrok under Index No.

654105/2019 (the "BCR Litigation").

3.      Attached hereto as Exhibit B is a true and correct copy of the "Affirmation in Support of Motion to Compel Arbitration and Stay Action," filed by Plaintiff's counsel Ariel Reinitz in the BCR Litigation.

4.      Attached hereto as Exhibit C is a true and correct copy of the "Decision and Order on Motion" rendered by Justice Borrok granting GateGuard's "Motion to Compel Arbitration and Stay Action" in the BCR Litigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Bondville, Vermont
        February 8, 2021

_____
            Adam E. Engel

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

660 BROADWAY BCR, LLC, 3750 BROADWAY
BCR, LLC, 2363 ACP PINEAPPLE, LLC, 145
PINEAPPLE LLC, 3440 BROADWAY BCR LLC,
3427 BROADWAY BCR, LLC, 605 WEST 151 BCR,
LLC, 633 WEST 152 BCR, LLC, 603-607 WEST 139
BCR, LLC, MGJ REALTY CORP., 559 WEST 156 BCR
LLC, 535-539 WEST 155 BCR, LLC, 510-512 YELLOW
APPLE, LLC, 513 YELLOW APPLE, LLC, 408-412
PINEAPPLE, LLC, 106-108 CONVENT BCR, LLC, 110
CONVENT BCR, LLC AND 580 ST. NICHOLAS BCR,
LLC,

|  |  |
|---|---|
| *Plaintiffs*, | Index No. 654105/2019 |
| v. | Hon. Andrew Borrok |
| GATEGUARD, INC. AND ARI TEMAN, | |
| *Defendants*. | |

-------------------------------------------------------------------x

**AFFIRMATION AND MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Ariel Reinitz
FisherBroyles, LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
(646)494-6909
Ariel.Reinitz@FisherBroyles.com
*Attorneys for GateGuard, Inc. and
Ari Teman*

ARIEL REINITZ, ESQ., an attorney duly admitted to practice law in the Courts of the State of New York, hereby affirms the following under penalty of perjury:

I am a partner with the law firm of FISHERBROYLES, LLP, attorneys for GateGuard, Inc. ("GateGuard") and Ari Teman ("Teman") (collectively, "Defendants") in this action. I am fully familiar with the facts and proceedings described herein.

I submit this Affirmation and Memorandum of Law in opposition to Plaintiff's motion, pursuant to CPLR § 6301, for a preliminary injunction.

## PRELIMINARY STATEMENT

Plaintiffs (collectively, "Big City Realty" or "BCR") own and/or manage 22 properties in New York City. BCR employs Justin Graniero ("Graniero") as the Property Manager of their properties.

GateGuard is a technology company that provides video intercom devices and related services to multi-tenant apartment buildings.

On behalf of BCR, Graniero ordered GateGuard intercom devices and services for each of the 22 BCR buildings he (Graniero) manages.

GateGuard expended significant effort and resources to fulfill BCR's order and began installation of the devices on each of BCR's buildings in accordance with the order.

After GateGuard commenced installation on each of BCR's properties, BCR falsely accused GateGuard of "damaging" the BCR properties and demanded GateGuard "cease and desist" from further installation activities.

BCR now moves this Court to grant it a preliminary injunction against GateGuard. However, preliminary injunctions are drastic remedies and Plaintiff's request fails to meet the required legal standard on several grounds.

First, BCR's request can only be granted if success on the merits is likely. However, BCR's claim rests on an implausible premise – that Graniero, its Property Manager, had no actual or apparent authority to bind BCR. This premise is rebutted by BCR's own papers which demonstrate Graniero's authority to order GateGuard devices and services for the BCR properties he (Graniero) manages. For this reason alone, the preliminary injunction must be denied.

Second, GateGuard's terms – which BCR accepted – require disputes to be settled via arbitration. Accordingly, this Court is not the proper forum for BCR to seek relief.

Third, GateGuard has already represented it will not enter or install devices on BCR's property, nor communicate with representatives of BCR. Any "harm" alleged by BCR is therefore speculative and inappropriate for injunctive relief.

Fourth, BCR's Complaint acknowledges that any alleged "harm" caused by GateGuard can be compensated by money damages. Injunctive relief is inappropriate in such circumstances.

Fifth, the "harm" alleged by BCR is nothing more than installation of devices ordered by BCR themselves. BCR's request for a preliminary injunction is a transparent attempt to deflect attention from BCR's breach of the agreement they entered into.

Sixth, BCR inexplicably refuses to acknowledge that GateGuard has performed installation work on all 22 BCR buildings. BCR's pursuit of an injunction therefore appears to be motivated by improperly leveraging such a court order against GateGuard, rather than preventing "property damage."

3

Seventh, Defendants are not believed to have been personally served with the Summons and Complaint in the present action (Defendant Teman is a resident of Miami, Florida). This Court therefore lacks jurisdiction to enter a preliminary injunction against Defendants

## RELEVANT FACTS

On February 8, 2019, BCR's property manager, Justin Graniero ("Graniero"), accessed GateGuard's website and ordered GateGuard intercom devices, installation, and related services for 22 buildings. This order – like all others placed through GateGuard's site – required Graniero to acknowledge and accept GateGuard's terms, conditions, and fees.

On the same date, GateGuard sent BCR a confirmation email (via the email address provided by Graniero) with the subject line "**RECEIPT: Your order of GateGuard with add-ons (OrderID #q4qouq5t)**" (the "Confirmation Email").

The Confirmation Email included the text:

Thanks Justin. Your order ID is q4qouq5t.
Order Date: 02/08/2019 10:17
We will notify you about installation, and send you additional instructions.

The Confirmation Email also included details of the 22 buildings for which Graniero had ordered devices and a PDF document containing a screenshot of the interface through which the order was placed, the contents of the order, and the associated terms. *See* NYSCEF Doc. No. 6 at p. 1 (screenshot of sign up interface, through which Graniero indicated he "read and accept[s] the terms & conditions & fees" and clicked "SIGN UP!"), p. 5-7 (confirming order details, including 22 addresses for device installation), and p. 6-38 (GateGuard's 'Terms & Conditions,' 'Payment Terms,' and 'Governing Law and Dispute Resolution' documents).

4

On February 26, 2019, Graniero replied to the Confirmation Email with a question regarding installation of the GateGuard devices. *See* NYSCEF Doc. No. 12 at p. 65 (Graniero: "Hi Mr Teman ,…We spoke a few weeks ago about removing the hardlne internet to the boiler room. I never received the updated receipt showing that.").

Over several emails on February 26, 2019, Graniero and Teman discussed the specifics of BCR's GateGuard order, including pricing, billing, and device installation. *See* NYSCEF Doc. No. 12 at p. 71-72:

> **Graniero**: "How does it work when it comes time for payment meaning when do I get the bills to pay? Do you also supply key fobs…?"
> **Teman**: "…We'll invoice you after installation. We offer boxes of fobs…"
> **Graniero**: "Awesome you're the man thank you. I am truly looking forward to this."
> **Graniero**: "Sorry one more question for today. I see $4200 per building.is that the definite price I am paying per building and if so what is the break down of that $4,200. Thank you"

On April 2, 2019, Graniero attended the 'BuildingsNY' trade show as an "OWNER PROPERTY MANAGER" of "BIG CITY REALTY." At this show, Graniero publicly confirmed he had "***already ordered [GateGuard] devices for all my buildings***" and was "excited to get them." Graniero also expressed a preference for one of GateGuard's installers to perform installation of the devices. *See* NYSCEF Doc. No. 14 (declaration of Katerina Yedidim).

Graniero's email signature also identifies him as a "Property Manager" of "Big City Realty Mgmt, LLC" at "555 West 151st street, #Bsmt New York, NY 10031." *See*, e.g., NYSCEF Doc. No. 8 at p. 1 (email correspondence from Graniero).

On or about April 8, 2019, Graniero provided additional information requested by GateGuard to complete installation of the GateGuard devices for each of BCR's 22 buildings. The information provided by Graniero included contact information for the superintendent for

Case 1:19-cv-02472-JLR   Document 155   Filed 02/09/21   Page 9 of 26

each of the 22 buildings. Graniero instructed GateGuard to coordinate installation of the ordered devices with each respective superintendent.

During May and June 2019, at Graniero's instruction, GateGuard representatives coordinated with building personnel at each of BCR's 22 properties to perform installation services and other upgrades in fulfillment of BCR's order.

On July 3, *after GateGuard had initiated installation on each of the 22 properties*, Graniero emailed Teman requesting "Please remove intercom from 408 W 129." *See* NYSCEF Doc. No. 7 at p. 3 (email from Graniero to Teman, July 3, 2019).

On July 15, 2019, counsel for BCR sent a "Notice to Cease and Desist" to Teman, alleging GateGuard had "unlawfully entered" and "caused damage" to BCR's properties. The notice further demanded that GateGuard and Teman cease and desist from entering BCR's properties. *See* NYSCEF Doc. No. 10 (Notice to Cease and Desist, July 15, 2019).

GateGuard representatives have not entered BCR's properties since receipt of the Notice to Cease and Desist. Counsel for GateGuard has represented to BCR's counsel that GateGuard personnel have no intention of entering BCR's properties or taking any further action without BCR's permission.

Defendant Teman is a resident of Miami, Florida and has not been served with any papers associated with the present action. Specifically, Teman has not been served with the Order to Show Cause dated July 19, 2019. *See* NYSCEF Doc. No. 19 (Order to Show Cause, July 19, 2019, requiring the Summons and Complaint to be "served today" and indicating "Plaintiff must acquire jurisdiction.").

Defendant GateGuard, a Delaware corporation, is also believed not to have been served with any papers in the present action.

6

## ARGUMENT

To obtain a <mark>preliminary injunction</mark> under CPLR § 6301, the movant must demonstrate a probability of success on the merits, the likelihood of irreparable harm in the absence of an injunction, and a balance of the equities in favor of granting the injunction. *Nobu Next Door, LLC v. Fine Arts Hous., Inc.*, 4 N.Y.3d 839, 840, 833 N.E.2d 191, 192 (2005); *Aetna Ins. Co. v. Capasso*, 75 N.Y.2d 860, 862, 552 N.E.2d 166, 167 (1990); *see also* N.Y. C.P.L.R. § 6301 (McKinney).

Preliminary injunctions are "drastic remedies" which should not be granted unless plaintiff has clearly satisfied all three elements. *Scotto v. Mei*, 219 A.D.2d 181, 182 (1st Dep't 1996).

## I.    BCR Has No Likelihood of Success on the Merits

### A.  Graniero Had Actual or Apparent Authority to Contractually Bind BCR

BCR acknowledges they employed Graniero as their Property Manager at all relevant times (Complaint ¶ 9 - NYSCEF Doc. No. 1). BCR provided Graniero with the email account "Justin@bcrny.com" and authorized his use of the account with an email signature identifying him as a "Property Manager" of "Big City Realty Mgmt, LLC" at "555 West 151st street, #Bsmt New York, NY 10031." (*See* NYSCEF Doc. No. 8 at p. 1).

BCR also lists Graniero as the 'Site Manager' on public records associated with each of the 22 properties associated with this action, including those maintained by the New York City Department of Housing Preservation and Development ("HPD"). This conduct, at minimum, gives rise to the appearance and reasonable belief that Graniero possessed authority to enter into

7

a transaction – here, ordering GateGuard devices and services – for the 22 BCR properties Graniero manages.

 As BCR's Property Manager, Graniero had actual or, at minimum, apparent authority to bind BCR by ordering GateGuard devices for installation on the BCR properties he (Graniero) managed. "Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Hallock v. State of New York*, 64 N.Y.2d 224, 231 (N.Y. 1984).

 Here, BCR's conduct – including by employing Graniero as a Property Manager, providing him with an email account that identified him as "Property Manager" of "Big City Realty Mgmt, LLC," and listing him in public records as the "Site Manager" of each of BCR's 22 buildings – gave rise to the appearance and reasonable belief by GateGuard that Graniero possessed authority to enter into the GateGuard transaction on behalf of BCR.

 BCR argument for a preliminary injunction is premised on their purported likelihood of success on the merits (Plaintiffs' Memorandum of Law ¶ 47 - NYSCEF Doc. No. 4). However, as outlined above, BCR's own papers document Graniero's actual or, at minimum, apparent authority to enter into the transaction at issue. ***Graniero's authority is fatal to BCR's claims***. On this basis alone, the preliminary injunction must be denied.

### B. This Dispute Is To Be Resolved in Arbitration

 BCR acknowledges that GateGuard's terms provide, *inter alia*, "…you and GateGuard agree that any dispute, claim or controversy arising out of or relating to the Terms or the breach,

Case 1:19-cv-02472-JLR    Document 155    Filed 02/09/21    Page 12 of 26

termination, enforcement, interpretation or validity thereof, or to the use of the Site **will be settled by binding arbitration**…" (NYSCEF Doc. No. 6 at p. 37, emphasis added).

"A written agreement to submit any controversy… to arbitration is enforceable without regard to the justiciable character of the controversy." CPLR § 7501. "[T]his State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties…" *Harris v. Shearson Hayden Stone, Inc.*, 82 A.D. 2d 87, 91-93 (1st Dep't), aff'd, 56 N.Y.2d 627 (1981).

GateGuard anticipates filing a Motion to Compel Arbitration pursuant to CPLR § 7503 in due course. Whatever the outcome of such arbitration, **the merits of BCR's claims will not be heard in this Court**. Accordingly, Plaintiffs' preliminary injunction – which can only be granted when success on the merits is likely – must be denied.


## II.    BCR Will Not Suffer Irreparable Harm

### A.  Defendants Have Not Entered BCR's Premises and Agree Not to Do So

In a telephone conversation and subsequent correspondence on July 19, 2019, counsel for Defendants confirmed to counsel for BCR that GateGuard and Teman were already in compliance with the terms of the proposed preliminary injunction. Counsel for Defendants further represented that GateGuard and Teman had no intention of entering BCR's premises, performing further installation work on BCR's property, or communicating with representatives of BCR.

At this juncture, *any "harm" alleged by BCR is speculative at best*. Preliminary injunctive relief – which is appropriate only in cases of direct and concrete injury – must

9

Case 1:19-cv-02472-JLR    Document 155    Filed 02/09/21    Page 13 of 26

therefore be denied. *See Rowland v. Dushin*, 82 A.D.3d 738 (2d Dept, 2011) (preliminary

injunctive relief inappropriate where the irreparable harm claimed is remote or speculative).

### B. Plaintiffs Concede the Alleged Harm is Compensable with Monetary Damages

A preliminary injunction should not be granted where the party seeking the injunction

also seeks monetary damages for the same alleged misconduct. *See Mar v. Liquid Mgt.

Partners, LLC*, 62 A.D.3d 762, 763, 880 N.Y.S.2d 647, 648 (2d Dep't 2009) (no irreparable harm

where plaintiff "effectively acknowledged that they will be fully compensated" by money

damages).

In their Complaint, BCR admits that any alleged "harm" caused by GateGuard can be

compensated by money damages. (Complaint ¶¶ 32, 43, 55, 64 – NYSCEF Doc. No. 1 – e.g.,

"Defendants' property damage will require… replacement of the intercom systems…, the

reasonable cost of repair being valued at $1,000,000.00…").

Because Plaintiffs have alleged ***both*** irreparable harm ***and*** a claim for money damages,

the preliminary injunction should be denied.

## III.    The Balance of Equities Favors Defendants

### A. GateGuard Has Done Nothing But Perform Work Requested By BCR

As outlined above, BCR (via Graniero) contracted with GateGuard for the purchase and

installation of intercom devices. Since placing their order, BCR has confirmed their contractual

relationship with GateGuard on multiple occasions. For example, BCR's representatives have

publicly announced their order of GateGuard devices, confirmed payment and other logistical

arrangements with GateGuard, and facilitated installation of the devices at each of BCR's 22 buildings.

BCR's papers alone demonstrate that the "property damage" they allege is nothing more than installation of devices BCR themselves ordered. BCR all but acknowledges they entered into a binding agreement with GateGuard, and that any arising dispute must be resolved under terms of the agreement. ***BCR's request for a preliminary injunction is a transparent attempt to cast GateGuard in a bad light when, in reality, it is BCR who is brazenly breaching the agreement they entered into***.

### B.  Plaintiffs Appear Likely to Improperly Wield the Proposed Preliminary Injunction as a Weapon Against Defendants

In conversation and correspondence between counsel for Defendants and BCR's counsel on July 19, counsel for Defendants explained how GateGuard had initiated installation on each of BCR's 22 buildings. BCR, however, maintains installation was performed on only four buildings (see Complaint ¶¶ 12, 17 – NYSCEF Doc. No. 1 – referencing installation at only four addresses).

Counsel for Defendants has requested that any prospective injunction or stipulation acknowledge all work performed by GateGuard to date at each of the 22 buildings. Such acknowledgment is necessary because GateGuard has admitted performing installation work at each of the buildings. Evidence of such installation exists at each property and is uniquely in the possession of BCR. Accordingly, without acknowledgment of the installation work performed to date, BCR can easily "discover" further evidence of installation and allege GateGuard has

11

violated terms of the injunction (when, in reality, such installation had been previously performed).

To satisfy the requirements for a preliminary injunction, plaintiff must show by clear and convincing evidence, "that the irreparable injury to be sustained is more burdensome to the plaintiff than the harm caused to defendant through imposition of the injunction." *McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co., Inc.*, 114 A.D.2d 165, 174, 498 N.Y.S.2d 146, 163 (2d Dep't 1986) (quoting *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*, 70 A.D.2d 1021, 1022, 418 N.Y.S.2d 216, 218 (3d Dep't 1979)).

BCR inexplicably refuses to acknowledge the installation work to which GateGuard has already admitted. By ignoring GateGuard's admission and demanding a preliminary injunction while only acknowledging work on four buildings, BCR demonstrates the bad-faith nature of their request. ***BCR's pursuit of a preliminary injunction is motivated not by preventing "property damage" but rather by the ability to improperly leverage such a court order against GateGuard***. Imposing the present injunction would therefore cause far greater harm to Defendants than any potential injury to Plaintiffs. Accordingly, the preliminary injunction should be denied.

## IV.    The Court Has Not Yet Established Personal Jurisdiction Over Defendants

To date, Defendants are not believed to have been personally served with the Summons and Complaint in the present action. Moreover, Defendant Teman is a resident of Miami, Florida. In absence of service, this Court lacks jurisdiction to enter a preliminary injunction against Defendants. *See, e.g., Kaplan v. Kaplan*, 94 A.D.2d 788, 463 N.Y.S.2d 36 (2d Dep't

1983) (court lacks authority to issue preliminary injunction against defendant not served with the summons and complaint).

Accordingly, Plaintiffs' request for a preliminary injunction should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for preliminary injunction in its entirety and grant Defendants such other and further relief as the Court may deem just, proper and equitable.

RESPECTFULLY SUBMITTED,

New York, NY
July 22, 2019

/s/ Ariel Reinitz
Ariel Reinitz
FISHERBROYLES, LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
(646)494-6909
Ariel.Reinitz@FisherBroyles.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via email to counsel of record via NYSECF.

13

EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------x
3660 BROADWAY BCR, LLC, 3750 BROADWAY
BCR, LLC, 2363 ACP PINEAPPLE, LLC, 145
PINEAPPLE LLC, 3440 BROADWAY BCR LLC,
3427 BROADWAY BCR, LLC, 605 WEST 151 BCR,
LLC, 633 WEST 152 BCR, LLC, 603-607 WEST 139
BCR, LLC, MGJ REALTY CORP., 559 WEST 156 BCR
LLC, 535-539 WEST 155 BCR, LLC, 510-512 YELLOW
APPLE, LLC, 513 YELLOW APPLE, LLC, 408-412
PINEAPPLE, LLC, 106-108 CONVENT BCR, LLC, 110
CONVENT BCR, LLC AND 580 ST. NICHOLAS BCR,
LLC,

        *Plaintiffs*,                    Index No. 654105/2019

    v.

                                        **AFFIRMATION IN SUPPORT
                                        OF MOTION TO COMPEL
                                        ARBITRATION AND STAY
                                        ACTION**

GATEGUARD, INC. AND ARI TEMAN,

        *Defendants*.

-----------------------------------------------------------------------x

    ARIEL REINITZ, an attorney duly admitted to practice law in the Courts of the State of

New York, hereby affirms the following under penalty of perjury:

    1.      I am counsel to Defendants GateGuard, Inc. ("GateGuard") and Ari Teman

("Teman") (collectively, "Defendants") in this action. I am fully familiar with the facts and

proceedings described herein.

    2.      I submit this Affirmation in support of Defendants' motion to compel arbitration

and stay the present action pending completion of the arbitration proceedings.

    3.      On February 8, 2019, Plaintiffs (collectively, "BCR"), through their property

manager, Justin Graniero ("Graniero"), ordered GateGuard intercom devices, installation, and

related services for 22 buildings via GateGuard's website.

4.      In placing this order, BCR acknowledged and accepted the terms, conditions, and fees posted on GateGuard's website (collectively, the "Terms").[1] A copy of BCR's order confirmation, including the text of the Terms, is attached hereto as **Exhibit A**.

5.      Between February and July 2019, representatives of BCR and GateGuard were in ongoing communication regarding the fulfillment of BCR's order.[2] Specifically, during May and June 2019, GateGuard representatives coordinated with personnel at each of BCR's properties to perform installation services and other upgrades in fulfillment of BCR's order.

6.      On July 3, 2019, *after GateGuard had initiated installation on each of BCR's 22 properties*, BCR requested that GateGuard remove an intercom it had already installed. *See* NYSCEF Doc. No. 7 at p. 3.

7.      In response, GateGuard's representatives noted that the Terms accepted by BCR and the fees due remained in effect.[3] Teman, GateGuard's CEO, also sent invoices to BCR reflecting these amounts and proposed options through which the parties could resolve their dispute.[4]

8.      On July 19, 2019, in a transparent attempt to prevent GateGuard from collecting amounts due pursuant to the Terms, BCR initiated the present action, in violation of the "Governing Law and Dispute Resolution" section of the Terms (see below). BCR's complaint

---

[1] BCR's own papers memorialize BCR's acceptance of GateGuard's terms. *See* NYSCEF Doc. No. 6 at p. 1 (screenshot of sign up interface), p. 5-7 (confirming order details, including 22 addresses for device installation), and p. 6-38 (GateGuard's 'Terms & Conditions,' 'Payment Terms,' and 'Governing Law and Dispute Resolution' documents).

[2] BCR's papers also memorialize many of these communications. *See* NYSCEF Doc. No. 12 at p. 65 (email from BCR to GateGuard re: order installation) and at p. 71-72 (further emails between BCR to GateGuard re: pricing, billing, and installation), and NYSCEF Doc. No. 14 (in April 2019, BCR confirmed it had "already ordered [GateGuard] devices for all [its] buildings" and was "excited to get them.").

[3] *See* NYSCEF Doc. No. 7 at p. 2.

[4] *See* NYSCEF Doc. No. 12 at p. 1-2, 5-26.

2

(falsely) claimed that GateGuard's installation activities pursuant to BCR's order constitute "property damage" and "trespass."

9.    As BCR's own papers demonstrate, the Terms accepted by BCR include a "Governing Law and Dispute Resolution" section. *See* NYSCEF Doc. No. 6 at p. 37-38. This section provides that:

> …[Y]ou and GateGuard agree that any dispute, claim or controversy arising out of or relating to the Terms or the breach, termination, enforcement, interpretation or validity thereof, or to the use of the Site will be settled by binding arbitration… The arbitration will be administered by the American Arbitration Association ("AAA")…

10.    According to CPLR § 7503(a), "A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. Where there is no substantial question whether a valid agreement was made or complied with, and the claim sought to be arbitrated is not barred by limitation under subdivision (b) of section 7502, the court shall direct the parties to arbitrate." "A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it ..." CPLR § 7501.

11.    Additionally, "[i]f the application is granted, the order shall operate to stay a pending or subsequent action..." *See* CPLR §7503. This reflects the strong policy of New York courts to favor and encourage arbitration as a means for expedited resolution of disputes and conserving judicial resources. See *Nationwide Gen. Ins. Co. v. Inv'rs Ins. Co. of Am.,* 37 N.Y.2d 91, 95, 332 N.E.2d 333, 335 (1975) (noting "[o]ne way to encourage the use of the arbitration forum we recently noted would be to prevent parties to such agreements from using the courts as a vehicle to protract litigation.").

3

12.     BCR's complaint in this action purports to assert claims for damages resulting from device installations performed by GateGuard pursuant to BCR's request, in accordance with the Terms accepted by BCR. These claims – which Defendants emphatically dispute - arise out of installation activities performed by GateGuard pursuant to BCR's order and the Terms which govern it, as well as claims raised by GateGuard regarding BCR's breach of the Terms. Accordingly, BCR's claims in this action arise out of the same nucleus of operative facts that must be resolved in arbitration pursuant to the Terms.[5]

13.     As demonstrated above, BCR's own papers include a copy of the Terms, which incorporate the "Governing Law and Dispute Resolution" section requiring "any dispute, claim or controversy arising out of or relating to the Terms… be settled by binding arbitration."

14.     Accordingly, there cannot be any substantial dispute that the parties entered into a valid written arbitration agreement unequivocally mandating they resolve disputes arising out of or relating to the Terms by binding arbitration (as administered by the AAA). A copy of Defendants' Notice and Demand for Arbitration, is attached hereto as **Exhibit B**.

15.     There also cannot be any reasonable dispute BCR is refusing to comply with the arbitration agreement in that it has commenced this action, in violation of the Terms requiring BCR to provide Defendants with a written demand for arbitration.

---

[5]  "[T]he factual allegations in the complaint," not the "legal causes of action asserted," determine whether claims fall within the scope of an arbitration agreement." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2d Cir. 1987) at 846. "If the allegations underlying the claims 'touch matters' covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Id.*  Thus, "[o]nce the courts have determined that there is a reasonable relationship between the arbitration contract/clause and the subject matter of the dispute . . . the court's inquiry ends." *Olympia & York OLP Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 214 A.D.2d 509, 511, 626 N.Y.S.2d 69, 71 (1st Dep't 1995).

4

16.     Accordingly, it is respectfully submitted this Court must issue an Order directing the parties to proceed with arbitration in accordance with the "Governing Law and Dispute Resolution" section of the Terms.

17.     Moreover, no judicial determination of the scope of arbitrability is required, as the Terms delegate questions of arbitrability to the arbitrator.  ("The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules…").[6]  The applicable AAA rules delegate questions of jurisdiction and arbitrability to the arbitrator.[7]  See Am. Arbitration Assoc., Commercial Arbitration Rules and Mediation Procedures (October 1, 2013), at R-7, a copy of which is attached hereto as **Exhibit C**.

18.     Additionally, a complete stay of this action pending arbitration is necessary to prevent conflicting rulings on "overlapping issues and common questions of fact."  *NAMA Holdings, LLC v. Greenberg Traurig, LLP*, 62 A.D.3d 578, 579, 880 N.Y.S.2d 34, 35 (1st Dep't 2009) (granting stay where "[t]here [were] overlapping issues and common questions of fact").

---

[6] Incorporating defined arbitral rules that delegate questions of arbitrability evidences the parties' intent to delegate that question.  *Matter of Smith Barney Shearson v. Sacharow*, 91 N.Y.2d 39 at 46-47, 689 N.E.2d at 888, 666 N.Y.S.2d at 994 (1997).

[7] R-7: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim…. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part."

5

# CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their

motion pursuant to CPLR § 7503(a) to compel arbitration and to stay all proceedings in the

action pending arbitration.[8]

RESPECTFULLY SUBMITTED,

New York, NY
February 25, 2020

/s/ Ariel Reinitz
Ariel Reinitz
FISHERBROYLES, LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
(646)494-6909
Ariel.Reinitz@FisherBroyles.com
Attorneys for Defendants

---

[8] Defendant Teman (GateGuard's CEO) – in his individual capacity - can join the arbitration even though he is not a party to the Terms governing the relationship between GateGuard and BCR. See Hirschfeld Prods., Inc. v. Mirvish, 88 N.Y.2d 1054, 1056 (1996) (individual defendants as officers and owners of entities that were signatories to arbitration agreement could compel arbitration of action alleging misconduct in their official capacities); see also Nardi v. Povich, 12 Misc. 3d 1188(A), 2006 N.Y. Slip Op. 51487(U) (Sup. Ct. N.Y. Cty. 2006) (Fried, J.) (individual defendants, as agents of corporation, are considered parties to the agreement for purposes of arbitration).  And "the law is clear that a signatory may be bound to arbitrate claims it brings against a non-signatory based on the "close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations."  Hong v. Belleville Dev. Grp., LLC, No. 15-cv-5890 (RJS), 2016 WL 4481071, at *4 (S.D.N.Y. Aug. 17, 2016) (Sullivan, J.) (citation omitted); see also Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 404 (2d Cir. 2001) (signatory "is estopped from avoiding arbitration with a non-signatory 'when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed'") (citation omitted); Merrill Lynch Intern. Finance, Inc. v. Donaldson, 27 Misc. 3d 391, 396-97, 2010 N.Y. Slip. Op. 20034, at *4 (Sup. Ct. N.Y. Cty. 2010) (finding "relational sufficiency justifying invocation of the doctrine of equitable estoppel" because "[t]here exists a close and connected relationship between" the signatories and non-signatories "to the arbitration agreement, justifying adherence to the obligation to arbitrate'").

6

EXHIBIT C

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:**    **HON. ANDREW BORROK** | **PART**    **IAS MOTION 53EFM** |
| *Justice* | |

-------------------------------------------------------------------------------X

3660 BROADWAY BCR, LLC,3750 BROADWAY  BCR, LLC,2363 ACP PINEAPPLE, LLC,145  PINEAPPLE LLC,3440 BROADWAY BCR LLC,3427 BROADWAY BCR, LLC,605 WEST 151 BCR, LLC,633 WEST 152 BCR, LLC,603-607 WEST 139  BCR, LLC,MGJ REALTY CORP., 559 WEST 156 BCR LLC,535-539 WEST 155 BCR, LLC,510-512 YELLOW APPLE, LLC,513 YELLOW APPLE, LLC,408-412 PINEAPPLE, LLC,106-108 CONVENT BCR, LLC,110 CONVENT BCR, LLC,580 ST. NICHOLAS BCR, LLC

**INDEX NO.**    654105/2019

**MOTION DATE**    02/25/2020

**MOTION SEQ. NO.**    002

Plaintiff,

**DECISION + ORDER ON MOTION**

- v -

GATEGUARD INC.,ARI TEMAN,

Defendant.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 002) 32, 33, 34, 35, 36

were read on this motion to/for      COMPEL ARBITRATION      .

Upon the foregoing documents, defendants' motion to compel arbitration is granted as

unopposed and the parties are directed to proceed to arbitration before the American Arbitration

Association or another arbitrator of their choosing.

Accordingly, it is

ORDERED that defendant's motion to compel arbitration and to stay this action is granted; and it

is further

**654105/2019  3660 BROADWAY BCR, LLC vs. GATEGUARD INC.**
**Motion No.  002**

**Page 1 of 2**

ORDERED that plaintiffs shall arbitrate their claims against defendants in accordance with the parties' agreement; and it is further

ORDERED that all proceedings in this action are hereby stayed, except for an application to vacate or modify said stay; and it is further

ORDERED that either party may make an application by order to show cause to vacate or modify this stay upon the final determination of the arbitration.

20200512074140ABORROK11629EAB7F04832B9EBAFC24EF3FA56

| 5/11/2020 | | | | |
|---|---|---|---|---|
| **DATE** | | | **ANDREW BORROK, J.S.C.** | |
| CHECK ONE: | X   CASE DISPOSED | | NON-FINAL DISPOSITION | |
| | X   GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**654105/2019   3660 BROADWAY BCR, LLC vs. GATEGUARD INC.**        Page 2 of 2
Motion No.  002

2 of 2