# Fisher Broyles

**Ariel Reinitz**
*Partner*
FisherBroyles, LLP
445 Park Avenue
Ninth Floor
New York, NY 10022

Ariel.Reinitz@fisherbroyles.com
Direct: 646.494.6909

July 13, 2021

**VIA ECF**

Honorable Debra Freeman
United States District Court
Southern District of New York
500 Pearl St.
New York, New York 10007

      Re:    *GateGuard, Inc. v. MVI Systems LLC; Samuel Taub; MVI Industries, LLC*
               Case No.: 1:19-cv-02472-JPC-DCF

Dear Judge Freeman:

      I represent Plaintiff GateGuard, Inc. and write to update the Court regarding discovery to date (*see* ECF No. 162).

***Status of Discovery***

      Plaintiff has issued over 100 document requests, as well as numerous interrogatories and requests for admission. These requests concern issues in this case including:

1. Defendants' acquisition and use of Plaintiff's technical and business trade secrets (relevant to trade secret misappropriation, breach of contract, unfair competition, and tortious interference claims);
2. Defendants' dealings with Plaintiff's prospective and actual customers (relevant to trade secret misappropriation, unfair competition, and tortious interference claims);
3. Defendants' purported development of the technologies they sell (relevant to trade secret misappropriation, breach of contract, and correction of patent inventorship claims);
4. Defendants' purported conception and reduction to practice of the technologies encompassed by the two patents at issue (relevant to trade secret misappropriation and correction of patent inventorship claims); and
5. The creation of MVII and the transfer of assets from MVIS to MVII (relevant to fraudulent conveyance claims).

**Fisher Broyles**

July 13, 2021 | Page 2 of 5

With a handful of exceptions, Defendants object to substantively responding to these requests, claiming their pending motions to dismiss/stay excuse their cooperation.

Plaintiff anticipates 7-10 depositions will be necessary to cover the above topics. These include 2-4 depositions concerning Defendants' technology and technical development (relevant to trade secret misappropriation, correction of patent inventorship, breach of contract, and unfair competition claims), 2-4 depositions concerning Defendant's business activities (relevant to trade secret misappropriation, breach of contract, unfair competition, and tortious interference claims), and 1-2 depositions concerning the formation of MVII and the transfer of assets from MVIS to MVII (relevant to fraudulent conveyance claims). Plaintiff estimates 120 days will be needed to complete fact discovery.

Plaintiff has produced documents relating to the contract at issue and provided Defendants with an updated set of initial disclosures. Defendants have produced certain documents responsive to one of Plaintiff's document requests (concerning Defendants' dealings with one of Plaintiff's customers). Plaintiff issued a Rule 45 subpoena seeking to depose this customer. Defendants sought to quash this deposition on the basis that they have moved to stay discovery.

Months ago, the parties exchanged proposals regarding the sequence and timing of various discovery activities. Specifically, the parties discussed organizing discovery into topics and collecting, exchanging, and reviewing discovery on a topic-by-topic basis during agreed upon two-week intervals. While negotiations towards such a framework were progressing, Defendants abruptly abandoned these efforts and blindsided Plaintiff by seeking a stay of discovery (ECF Nos. 137, 139). Since then, Defendants insist they will not conduct further discovery until their pending motions are resolved.

The parties recently discussed completing a document exchange the parties agreed to before Defendants sought to stay discovery. Plaintiff expressed its willingness to do so and awaits clarification from Defendants regarding the scope of this exchange.

***Defendants' Letter***

Earlier today, I forwarded a draft of the above letter to Defendants' counsel, asking that he provide Defendants' portion of what was to be a joint submission. In lieu of responding to me, Defendants independently filed their own letter (ECF No. 167).

Broadly, Defendants' letter seeks (a) to lay all blame for the lack of progress in discovery at Plaintiff's feet, and (b) to litigate issues in an unrelated case.

After several pages seeking to ascribe all blame to Plaintiff, Defendants concede (at the end of their letter – *see* ECF No. 167 at 3) that *Plaintiff* has proposed resolving the stay Defendants seek without the Court's intervention. In this context, Plaintiff proposed that the parties present the Court with an even-handed outline of the status of discovery to date, what remained outstanding, and how such discovery relates to various claims in the case, *without* ascribing "blame" or "fault" to either party. This position was informed in part by the Court's

Fisher Broyles

July 13, 2021 | Page 3 of 5

prior admonition regarding its lack of interest in sorting out which party is at fault. In this spirit, Plaintiff prepared an initial draft of the joint letter, which intentionally avoiding advocacy for either side.[1]

Defendants then provided a draft of their portion of the letter which included lengthy digressions seeking to re-litigate prior discovery disputes and to raise new ones on which the parties have yet to meaningfully confer (e.g., regarding purported deficiencies in Plaintiff's initial disclosures). *See* ECF No. 167 at 31-32.

In response, Plaintiff suggested that the parties focus on 'what' had transpired in discovery while avoiding ascribing blame to one another. *See id*. at 12 ("[T]he Court seems uninterested in [the parties blaming one another]…. [Defendants] included considerable… advocacy re: substantive issues in the case… [T]here are two sides to every story and we are not without considerable gripes re: Defendants' conduct in discovery to date."). Defendants effectively agreed. *Id.* at 11 ("I can revisit my side of the draft and reduce the advocacy…").

Plaintiff then sought clarification regarding two discrete issues, to enable the parties to finalize the resolution they discussed. Despite several requests, Plaintiff has yet to receive direct responses. Plaintiff then updated its portion of the joint letter (based on Defendants' feedback) and forwarded it to Defendants asking them to provide their portion of the submission. Rather than provide it, Defendants filed their letter independently, as outlined above.

***The* Goldmont *Case***

Defendants dedicate nearly half their letter seeking to litigate a (not yet ripe) discovery dispute *in another case*. In *Goldmont*, Plaintiff brings claims against its customer, Goldmont Realty, for failure to pay amounts owed under its contract with Plaintiff, and for defrauding Plaintiff with false investment offers.

Plaintiff's claims in the *Goldmont* case have no apparent connection to this case or Defendants. But on April 29, 2021, Goldmont produced numerous communications between Mr. Taub – a defendant in this case – and the Goldmont parties concerning Plaintiff and Plaintiff's dealings *with Goldmont. See GateGuard, Inc. v. Goldmont Realty Corp.*, et al. No. 1:20-cv-01609-AJN-GWG (S.D.N.Y. Feb. 24, 2020), Dkt. Nos. 45-1, 50-2, 50-4 (correspondence between Taub and Goldmont).

---

[1] Defendants spend several paragraphs attempting to blame Plaintiff for "delays" in drafting the joint letter, suggesting Plaintiff was intent on "undermining" Defendants' position. ECF No. 167 at 2-3. But the emails Defendants attach tell a different story: any such delays were no more than a misunderstanding. Plaintiff drafted its portion of the letter expecting Defendants to provide their portion, which Plaintiff would incorporate and file. *See id.* at 18 ("Hi Adam… can you forward your part of the referenced joint letter?"), 17 ("Sorry, I must have misunderstood when we spoke (was expecting you to forward your ½ and I'd drop into a letter and file tonight).").

Fisher Broyles

July 13, 2021 | Page 4 of 5

This revelation came as no less than a shock to Plaintiff. But these documents establish Mr. Taub as a fact witness in the *Goldmont* case. On that basis – and *only* on that basis – Plaintiff issued subpoenas to Mr. Taub (dated May 6, 2021).

Instead of conferring with Plaintiff to understand the basis for the subpoenas to Mr. Taub in *Goldmont*, Defendants' counsel asserted (falsely) that Plaintiff was improperly seeking to use these subpoenas to obtain evidence relevant to this action. *See GateGuard v. Goldmont* at Dkt. 49. Judge Gorenstein denied Mr. Taub's attempts to quash these subpoenas and directed the parties to attempt to resolve any issues among themselves.

I have since conferred and corresponded at length with Mr. Engel regarding these subpoenas. On multiple occasions I have reinforced to him, the *Goldmont* defendants, and Judge Gorenstein, that these subpoenas are only for purposes of the *Goldmont* case (to which Mr. Taub is a fact witness), and nothing is being sought for purposes of this litigation.

Defendants now repeat the same claims, suggesting Plaintiff is "abusing" discovery in *Goldmont* and seeking an "end-run" around this Court's discovery rulings. Defendants raise these (baseless) claims while omitting the extensive discussions and negotiations between myself and Mr. Engel in the *Goldmont* case. During these communications, I have demonstrated how Mr. Taub is a fact witness to issues in the *Goldmont* case and provided substantial assurances that the discovery sought from Mr. Taub will relate only to the issues in *Goldmont*.

Additionally, Defendants' (baseless) claim that Plaintiff is using discovery in *Goldmont* as an "end run" to benefit this case doesn't add up: Defendants' filed their motions to stay discovery in this case in November 2020. *See* ECF Nos. 137, 139. If – as Defendants claim – Plaintiff was seeking to "abuse" discovery in *Goldmont* to "harass" them, why would Plaintiff wait over *six months* (until May 2021) to do so? The answer is simple: Plaintiff had no clue Mr. Taub had any connection to the *Goldmont* case. And when – and *only* when – Plaintiff learned that Mr. Taub was a fact witness, did Plaintiff subpoena him (together with other fact witnesses) solely for purposes of the *Goldmont* case.[2]

***Conclusion***

Notwithstanding the parties' differences of opinion, Plaintiff maintains that the parties were – and are – well positioned to resolve the issue of Defendants' stay without the Court's intervention.

Respectfully submitted,
By: /s/ Ariel Reinitz

---

[2] Though the Court need not reach this issue, Defendants also misstate Judge Gorenstein's ruling in the *Goldmont* case in numerous respects. Judge Gorenstein *never* addressed the subpoenas to Mr. Taub (or any other third party). He ruled that the *Goldmont* defendants' communications – including with third parties – concerning Plaintiff's dealings with Goldmont were relevant for discovery in the *Goldmont* case.

# Fisher Broyles

July 13, 2021 | Page 5 of 5

                                                                 Ariel Reinitz

cc:      Counsel of Record (via ECF)